IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACCELERATION BAY LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 16-453 (RGA) |
| | ) |
| ACTIVISION BLIZZARD, INC. | ) |
| | ) |
| Defendant. | ) |
| ACCELERATION BAY LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 16-454 (RGA) |
| | ) |
| ELECTRONIC ARTS INC., | ) |
| | ) |
| Defendant. | ) |
| ACCELERATION BAY LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 16-455 (RGA) |
| | ) |
| TAKE-TWO INTERACTIVE SOFTWARE, | ) |
| INC., ROCKSTAR GAMES, INC. and | ) |
| 2K SPORTS, INC., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS,
STAY, OR TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF CALIFORNIA**

Jack B. Blumenfeld (#1014)
Stephen J. Kraftschik (#5623)
MORRIS, NICHOLS, ARSHT &TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
skraftschik@mnat.com

*Attorneys for Defendants*

OF COUNSEL:

Michael A. Tomasulo
Gino Cheng
David K. Lin
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071
(213) 615-1700

David P. Enzminger
WINSTON & STRAWN LLP
275 Middlefield Road
Menlo Park, CA 94025
(650) 858-6580

Daniel K. Webb
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600

## TABLE OF CONTENTS

**Page**

I.      NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

II.     SUMMARY OF ARGUMENT .................................................................................2

III.    STATEMENT OF FACTS .......................................................................................3

      A.      The Parties Have Meaningful Connections to California ......................................3

      B.      The History Of The Alleged Inventions..................................................................5

      C.      Boeing's Efforts To License The Asserted Patents ...............................................5

      D.      The Dismissed Actions ..........................................................................................7

IV.     ARGUMENT ........................................................................................................7

      A.      The "First-To-File" Rule Supports Dismissal Of These Actions ..........................7

      B.      Alternatively, These Cases Should Be Transferred Pursuant To Section 1404(a) ...................................................................................................................9

            1.      These cases could have been brought in the Northern District of California ..................................................................................................10

            2.      The private and public interest factors favor transfer..............................11

            3.      The balance of the factors favors transfer................................................15

V.      CONCLUSION ...................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
  946 F.2d 622 (9th Cir. 1991) ...................................................9

*Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*,
  C.A. 12-139 (GMS), 2013 WL 3293611 (D. Del. June 28, 2013).........................................10

*Cellectis S.A. v. Precision Biosciences, Inc.*,
  881 F. Supp. 2d 609 (D. Del. 2012) ...................................................9

*E.E.O.C. v. Univ. of Penn.*,
  850 F.2d 969 (3d Cir. 1988) ...................................................7, 8

*Elecs. for Imaging, Inc. v. Coyle*,
  394 F.3d 1341 (Fed. Cir. 2005)...................................................8

*EMC Corp. v. Bright Response, LLC*,
  No. C-12-2841 EMC, 2012 WL 4097707 (N.D. Cal. Sept. 17, 2012)...................................................9

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009)...................................................14

*Genentech, Inc. v. Eli Lilly & Co.*,
  998 F.2d 931 (Fed. Cir. 1993) *abrogated on other grounds by Wilton v. Seven
  Falls Co.*, 515 U.S. 277, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995) ...................................................7, 8

*Intravascular Research Ltd. v. Endosonics Corp.*,
  994 F. Supp. 564 (D. Del. 1998) ...................................................1

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995) ...................................................2

*Link_A_Media Devices In Corp.*,
  662 F.3d at 1124...................................................2, 11, 14

*Mannie & Catherine Jackson Descendant Trust v. Rizzo*,
  No. 15-659-RGA, 2015 WL 6449149 (D. Del. Oct. 26, 2015) ...................................................11

*Microsoft Corp. v. Geotag Inc.*,
  847 F. Supp. 2d 675 (D. Del. 2012) ...................................................13

*Nexans Inc. v. Belden Inc.*,
  966 F. Supp. 2d 396 (D. Del. 2013) ...................................................8

*OpenLCR.com, Inc. v. Rates Tech., Inc.*,
    112 F. Supp. 2d 1223 (D. Colo. 2000) ................................................................8

*Save Power Ltd. v. Syntek Fin. Corp.*,
    121 F.3d 947 (5th Cir. 1997) ..............................................................................9

*Semcon Tech, LLC v. Intel Corp.*,
    C.A. No. 12-531-RGA, 2013 WL 126421 (D. Del. Jan. 8, 2013) ..................................*passim*

*Signal Tech, LLC v. Analog Devices, Inc.*,
    C.A. No. 11-1073-RGA, 2012 WL 1134723 (D. Del. Apr. 3, 2012)....................................12

*In re TC Heartland LLC*,
    No. 2016-105, 2016 WL 1709433 (Fed. Cir. Apr. 29, 2016)...............................................10

*In re Telebrands Corp.*,
    No. 2016-106, 2016 WL 3033331 (Fed. Cir. Feb. 24, 2016) ................................................9

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
    917 F.2d 1574 (Fed. Cir. 1990)..........................................................................11

*In re Verizon Bus. Network Servs. Inc.*,
    635 F.3d 559 (Fed. Cir. 2011)............................................................................16

*Wacoh Co. v. Kionix Inc.*,
    845 F. Supp. 2d 597 (D. Del. 2012) (Andrews, J.) .............................................................13

**Statutes**

28 U.S.C. § 1404(a) .................................................................................. 1, 9, 10, 16

## I.       NATURE AND STAGE OF THE PROCEEDINGS

Defendants Activision Blizzard, Inc. ("Activision"), Electronic Arts Inc. ("EA"), Take-Two Interactive Software, Inc. ("Take-Two"), 2K Sports, Inc. ("2K Sports"), and Rockstar Games, Inc. ("Rockstar") (collectively, "Defendants") move jointly and separately to dismiss or stay, or in the alternative transfer these actions.[1]  For the reasons explained below, this Court should dismiss or stay these actions pursuant to the "first-to-file" rule, or in the alternative, transfer them to the Northern District of California pursuant to 28  U.S.C. § 1404(a).

On June 16, 2016, Defendants each filed a declaratory judgment action for non-infringement of the Asserted Patents[2] in the United States District Court for the Northern District of California against Plaintiff Acceleration Bay.  D.I. 1, No. 3:16-CV-3375 (Activision); D.I. 1, No. 4:16-CV-3377 (Take-Two Interactive Software); D.I. 1, No. 3:16-CV-3378 (Electronic Arts Inc.) (collectively "California Actions," Exs. 1-3 hereto).  The next day, Plaintiff Acceleration Bay filed these three cases claiming that Defendants infringe the same Asserted Patents.  D.I. 1, No. 16- 453 (Activision); D.I. 1, No. 16- 455 (Take-Two Interactive Software); D.I. 1, No. 16- 454 (Electronic Arts Inc.) (collectively "Delaware Actions").  Both the California Actions and these Delaware Actions involve the same Asserted Patents, the same parties, and the same accused products.  Under the well-established first-to-file rule, these cases should be dismissed or stayed in favor of the California Actions.  Alternatively, these cases should be transferred under 28 U.S.C. § 1404(a) because these cases could have been brought in the Northern District of California, Acceleration Bay is headquartered in the Northern District of California, and the parties' and third-parties' relevant witnesses and documents are located in California.

---

[1]       The filing of this motion to dismiss tolls the time period for Defendants to answer. *Intravascular Research Ltd. v. Endosonics Corp.*, 994 F. Supp. 564, 567 n.3 (D. Del. 1998) (explaining that motions to stay also toll the time period for answering).

[2]       U.S. Patent Nos. 6,701,344; 6,714,966; 6,732,147; 6,829,634; 6,910,069; and 6,920,497.

## II.    SUMMARY OF ARGUMENT

The "first-to-file" rule, absent exceptional circumstances not present here, controls the forum in which a case will proceed.  The California Actions are plainly the first filed actions because Defendants filed the California Actions before Acceleration Bay filed these Delaware Actions.  The California Actions and these Delaware Actions involve the same patents, the same parties, and the same accused products.  Thus, following the first-to-file rule, these Delaware Actions should be dismissed or stayed in favor of the California Actions.[3]

In the alternative, these cases should be transferred to the Northern District of California. These cases involve disputes between companies with offices in California involving facts, evidence, and witnesses that are closely tied to—and located in—California.   The only connection to Delaware is that Acceleration Bay and Defendants are Delaware companies, but none has a regular place of business here.  Of course, "[n]either § 1404 nor *Jumara* list a party's state of incorporation as a factor for a venue inquiry."  *re Link_A_Media Devices In Corp.*, 662 F.3d at 1124 (referencing *Jumara v. State Farm Ins. Co*., 55 F.3d 873 (3d Cir. 1995)).  Litigating in California would be less burdensome than doing so in Delaware for Acceleration Bay, Defendants, and likely third party witnesses.  The factors strongly favor transferring these cases to the Northern District of California.

---

[3]    Plaintiff Acceleration Bay's three previously filed patent infringement suits were dismissed without prejudice on June 20, 2017 for lack of subject matter jurisdiction (collectively "Dismissed Actions").  The Dismissed Actions are not germane to the "first to file" analysis because they are no longer pending and because this Court never had jurisdiction over them,  The Dismissed Actions were *Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. 15-228 (D. Del. Filed Mar. 11, 2015), *Acceleration Bay LLC v. Electronic Arts Inc.*, No. 15-282 (D. Del. Filed March 30, 2015), and *Acceleration Bay LLC v. Take-Two Interactive Software, Inc. et al.*, No. 15-311 (D. Del. Filed April 13, 2015).

## III.    STATEMENT OF FACTS

### A.    The Parties Have Meaningful Connections to California

Plaintiff Acceleration Bay, a patent assertion entity, purports to have its principal place of business at 370 Bridge Parkway, Redwood City, California 94065 and was only recently incorporated in Delaware (on August 27, 2014).  Ex. 4 (Recordation).  Acceleration Bay's CEO Joe Ward works and resides in the Northern District of California.  *See* Ex. 5.  Acceleration Bay claims to be the owner of the six Asserted Patents.

Defendants are developers and publishers of video games.[4]  Defendants Activision, EA, and 2K Sports have their principal places of business in California.[5]  Defendants Take-Two and Rockstar are affiliated with Defendant 2K Sports.  *See* Ex. 9 (Take-Two Decl.), ¶ 4.

The Accused Games[6] are video game software played on third party hardware platforms, such as a PC or game console.  In the gaming industry, games are initially developed by a studio – referred to as the "developer" of the game, which creates the concept for the game and the software.  The games are sold and distributed by the game's "publisher."  The Complaints identify 15 Accused Games.  Defendants are the publishers for each of these games.  And, with one exception (the accused product *Destiny*), each of these games is developed by Defendants or their affiliates.

---

[4]    *See* Ex. 6 (Decl. of Jesse Meschuk ("Blizzard Decl.")), ¶ 7; Ex. 7 (Decl. of Betsy Contro ("Activision Decl.")), ¶ 7; Ex. 8 (Decl. of Betsy Contro ("EA Decl.")), ¶¶ 7-11; *and* Ex. 9 (Decl. of Linda Zabriskie ("Take-Two Decl.")), ¶¶ 4-8.

[5]    *See* Ex. 7 (Activision Decl.), ¶ 4; Ex. 8 (EA Decl.), ¶ 4; *and* Ex. 9 (Take-Two Decl.), ¶ 6.  Blizzard, which is an affiliate of Defendant Activision, is also headquartered in California.  Ex. 6 (Blizzard Decl.), ¶¶ 1, 4.

[6]    The Accused Games are *Call of Duty: Black Ops 3, Call of Duty: Advanced Warfare, World of Warcraft, Tiger Woods 14, Rory McIlroy PGA Tour, Plants vs. Zombies: Garden Warfare 1 & 2, FIFA 15, FIFA 16, NHL 15, NHL 16, NBA 2K15, NBA 2K16, Grand Theft Auto 5 and Grand Theft Auto Online.*

**Activision.**  Defendant Activision is the parent corporation of Activision Publishing, Inc. and Blizzard Entertainment, Inc. ("Blizzard").  Treyarch Corporation ("Treyarch") is a wholly-owned subsidiary of Activision Publishing, Inc., and is located in Santa Monica, California.  *See* Ex. 7 (Activision Decl.), ¶ 8.  Treyarch is a primary developer for the Accused Game *Call of Duty: Black Ops 3*.  Sledgehammer Games ("Sledgehammer") is a wholly-owned subsidiary of Activision Publishing, and is headquartered in Foster City, California, which is located in the Northern District of California.  Sledgehammer is a primary developer for the Accused Game *Call of Duty: Advanced Warfare*.  *See id.* at ¶ 9.  Bungie, Inc. is a privately held Delaware corporation and has headquarters in Bellevue, Washington.  Bungie was responsible for developing the Destiny game, which is published and distributed by Activision.  *See id.* at ¶ 10.  Blizzard is responsible for the development, publication, and distribution of *World of Warcraft*, and these activities all took place in California.  *See* Ex. 6 (Blizzard Decl.), ¶ 7.

**EA.**  Defendant EA is headquartered in Redwood City, California, which is located in the Northern District of California.  *See* Ex. 8 (EA Decl.), ¶ 5.  Primary development of the accused on-line multiplayer technology for all of the EA Accused Games occurred at EA's offices in Redwood City, California and Burnaby, Canada, close to Washington State.  *See id.* at ¶¶ 7-9.[7]

**Take-Two, 2K & Rockstar.**  Take-Two publishes and develops products through its wholly owned labels, including Defendants 2K Sports and Rockstar.  *See* Ex. 9 (Take-Two

---

[7]     Other development for the Accused EA games occurred: at the following locations:

1.     *Tiger Woods 14, Rory McIlroy PGA Tour*: EA Tiburon, Orlando, Florida

2.     *Plants vs. Zombies: Garden Warfare 1 & 2*: EA Canada, Burnaby, British Columbia, Canada

3.     *NHL 15, NHL 16*: EA Canada, Burnaby, British Columbia, Canada

4.     *FIFA 15, FIFA 16*: EA Canada, Burnaby, British Columbia, Canada & EA Romania, Bucharest, Romania.

Decl.), ¶ 4.  2K Sports is headquartered in Novato, California, which is located in the Northern District of California.  2K Sports designed and developed *NBA 2K15* and *NBA 2K16*.  *See id.* at ¶ 7.  2K's Visual Concepts studio in Novato, California is a primary developer of NBA 2K15 and NBA 2K16.  *See id.*  Visual Concepts worked on many aspects of the game, including on-line multiplayer.  *See id.*  Rockstar's Rockstar North studio (Edinburgh, Scotland) and Rockstar San Diego studio (Carlsbad, California) are primary developers of *Grand Theft Auto 5* and *Grand Theft Auto Online*.  *See id.* at ¶ 8.  Rockstar San Diego worked on many aspects of the game, including the game engine and on-line multiplayer functionality.  *See id.*

Defendants each sell, market, and/or distribute the Accused Games in the Northern District of California.  *See* Ex. 7 (Activision Decl.), ¶ 15; Ex. 8 (EA Decl.), ¶ 4; Ex. 9 (Take-Two Decl.), ¶¶ 7-8.

### B.    The History Of The Alleged Inventions

The Asserted Patents were filed on July 31, 2000.  The patents list Fred Holt and Virgil Bourassa as the inventors (collectively the "Inventors").  They were both working as employees within the Phantom Works R&D division of The Boeing Company ("Boeing") in the Seattle, Washington area.  Ex. 10 (Press Release).  Dr. Holt and Mr. Bourassa are still located in Washington State.  According to Boeing's website, Phantom Works is located in Seal Beach, California.  Ex. 11 (http://www.boeing.com/contact-us.page).  Dr. Holt, Mr. Bourassa, and Boeing referred to the technology of the Asserted Patents as "Small-world Wide Area Networking" (or "SWAN").  *Id.*

### C.    Boeing's Efforts To License The Asserted Patents

Beginning in the early 2000s, Boeing started efforts to license the patents.  In July 2002, Boeing gave the Inventors, through a company they formed named Panthesis, Inc., "an exclusive right to commercialize" Boeing's SWAN technology.  Ex. 10.  Panthesis was located in

5

Washington State, and the former CEO of Panthesis Linda Magnotti is still located in Washington State.  Panthesis made multiple efforts over the years to produce products using the technology of the Asserted Patents and to license the Asserted Patents.

After Panthesis failed to achieve any commercial success with the Asserted Patents, Boeing sought other opportunities to license or sell the Asserted Patents.  Based on publicly available information only, it appears that Sony Entertainment may have acquired Panthesis or other rights which may be relevant to this lawsuit.  Ex. 12 ("Panthesis (sold to Sony Entertainment 2006").  Sony's PlayStation division has its U.S. headquarters in San Mateo, California, which is in the Northern District of California.  Ex. 13, (https://www.playstation.com/en-us/corporate/about/).  Defendants have license agreements with Sony that allow Defendants to develop and publish games for the Sony PlayStation platform. For this and other reasons, Sony's personnel in San Mateo are potential witnesses.

Additional licensing efforts occurred no later than the fall of 2009 when Boeing employees located in California reached out to Acorn Technologies Inc. ("Acorn"), which is located in California.  Ex. 14, Acorn Website Excerpts.  Acorn is a patent broker and is believed to have contacted numerous potential purchasers of the Asserted Patents including RPX, Corporation, which is located in the Northern District of California.

Boeing employees located in California are believed to have worked with Acorn to identify potential purchasers of the Asserted Patents.  Ultimately, in December 2014, Boeing entered into a transaction with Acceleration Bay's predecessor, described as a "Patent Purchase Agreement."   Ex. 15, Public Version Declaration of Natasha Radovsky In Support of Acceleration Bay's Opposition To Defendants' Motion To Dismiss Filed in *Acceleration Bay LLC v. Activision Blizzard, Inc.*, No. 15-228-RGA, D.I. 116 (D. Del. Mar. 25, 2016).  Natasha

Radovsky, who is a Boeing employee located in California, claims to have been involved in the negotiation of this transaction.  *Id.*

### D.    The Dismissed Actions

In the spring of 2015, Acceleration Bay sued Defendants in the Dismissed Actions.  On June 20, 2016, those cases were dismissed for lack of subject-matter jurisdiction because Boeing still owned the patents and therefore Acceleration Bay lacked standing.  *See, e.g.*, D.I. 148 at 10; D.I. 149, No. 15-CV-228 (Activision Blizzard).  The Dismissed Actions were at an early stage. While some discovery had occurred, the Court had not addressed claim construction, infringement, or validity of the Asserted Patents.  The parties filed no substantive briefing on claim construction.  Indeed, the Court's ruling on the motion to dismiss did not include any analysis or discussion of the technical aspects of the Asserted Patents.

## IV.    ARGUMENT

### A.    The "First-To-File" Rule Supports Dismissal Of These Actions

The first-to-file rule applies to situations where, as here, two cases are filed in different federal district courts involving the same issues and the same parties.  "The general rule favors the forum of the first-filed action, whether or not it is a declaratory action."  *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S. Ct. 2137, 132 L. Ed. 2d 214 (1995); *E.E.O.C. v. Univ. of Penn.*, 850 F.2d 969, 971 (3d Cir. 1988) ("[I]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it.").  The rule counsels that a later-filed action involving the same controversy should be dismissed, transferred, or otherwise enjoined in favor of the first-filed action.  *See Genentech,* 998 F.2d at 937-38.

The California Actions are the first filed actions.[8] They were filed on June 16, 2016—the day before these cases were filed. Further, the California Actions and these cases involve the same six Asserted Patents, the same parties, and the same accused products. The Delaware Actions should therefore be dismissed.

Enforcement of the first-to-file rule is the norm. *Nexans Inc. v. Belden Inc.*, 966 F. Supp. 2d 396, 401 (D. Del. 2013); *see also Univ. of Penn.*, 850 F.2d at 976.[9] Even if Acceleration Bay were to argue that an exception to the first-to-file rule applies, it must do so in the Northern District of California. The Federal Circuit has held that the court of the first-filed case should resolve any alleged exceptions explaining that: "[w]here the overlap is complete or nearly

---

[8]   The Dismissed Actions cannot, as a matter of law, be considered the first-filed actions because those cases are no longer pending. *OpenLCR.com, Inc. v. Rates Tech., Inc.*, 112 F. Supp. 2d 1223, 1230 (D. Colo. 2000). In a similar case, a district court considered whether a prior case that was dismissed could serve as the first filed case and rejected the argument as "unwarranted." Similarly, here, it is unwarranted to consider the Dismissed Actions as the first-filed cases. This Court found that Acceleration Bay lacked standing to assert those cases, and at Acceleration Bay's request, the Dismissed Actions were dismissed. The Court never had jurisdiction over those cases. As the Third Circuit has explained, "[i]n all cases of federal **concurrent jurisdiction**, the court which first has possession of the subject must decide it." *Univ. of Penn.*, 850 F.2d at 971 (emphasis added). Here, because this Court never had jurisdiction over the Dismissed Actions, those actions no longer exist, this Court did not and does not have "possession of the subject" of the Dismissed Actions and they therefore cannot be the first-filed cases for these purposes.

[9]   Recognized exceptions are narrow and include, in the Third Circuit, bad faith, "anticipatory filing" and forum shopping and, in the Federal Circuit, "sound reason that would make it unjust or inefficient." *Univ. of Penn.*, 850 F.2d at 976; *Genentech, Inc.*, 998 F.2d at 938. Although anticipatory filing is an exception, the Federal Circuit has declined to reject the first-to-file rule solely on the basis of an anticipatory filing. *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1348 (Fed. Cir. 2005) (discussing *Genentech, Inc.*, 998 F.2d at 938). Instead, the focus of the analysis has to be "the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Genentech*, 998 F.2d at 938 (citing *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081-83 (Fed. Cir. 1989). Here, the "convenience and availability of witnesses" staunchly supports the adjudication of these parties' dispute in the Northern District of California, as explained in greater detail in §§ IV.B.2 and B.3, *infra*.

complete, the usual rule is for the court of first jurisdiction to resolve the issues [or exceptions]." *In re Telebrands Corp.*, No. 2016-106, 2016 WL 3033331, at *2 (Fed. Cir. Feb. 24, 2016). The deference occurs to avoid the "risk inconsistent results, exactly the outcome to be avoided by the rule in the first place." *EMC Corp. v. Bright Response, LLC*, No. C-12-2841 EMC, 2012 WL 4097707, at *3 (N.D. Cal. Sept. 17, 2012) (collecting cases); *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) ("The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed."); *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) (explaining that "normally [this argument] should be addressed to the court in the first-filed action"). Indeed, Judge Robinson applied this same rationale to stay proceedings in a second-filed case to permit the court in the first-filed case to determine whether any exceptions to the first-to-file rule apply. *Cellectis S.A. v. Precision Biosciences, Inc.*, 881 F. Supp. 2d 609, 612 (D. Del. 2012). That same rationale should apply here: if Acceleration Bay attempts to advance an exception to the first-to-file rule, this Court should stay these cases so that the issue can be decided by the California Court.

Even if this Court were to consider the exceptions to the first-to-file rule, none of the recognized exceptions apply. The California Actions were not filed in bad faith or for forum-shopping. Indeed, as explained in detail below, sound reasons of convenience for the parties justify deferring to the California Actions.

### B.    Alternatively, These Cases Should Be Transferred Pursuant To Section 1404(a)

"For the convenience of parties and witnesses, in the interest of justice," a district court may "transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). After demonstrating that the action "might have been brought" in the

proposed destination venue, courts in the Third Circuit consider the factors enumerated in § 1404(a) and other private and public interest factors. *Semcon Tech, LLC v. Intel Corp.*, C.A. No. 12-531-RGA, 2013 WL 126421, at *1 (D. Del. Jan. 8, 2013). Specifically, the private interest factors include: "(1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the [forums]; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citing *Jumara*, 55 F.3d at 879-80 (3d Cir. 1995)). The public interest factors include: "(7) the enforceability of the judgment; (8) practical considerations that could make the trial easy, expeditious, or inexpensive; (9) the relative administrative difficulty in the two [forums] resulting from court congestion; (10) the local interest in deciding local controversies at home; (11) the public policies of the [forums]; and (12) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.*

### 1. These cases could have been brought in the Northern District of California

Under 28 U.S.C. § 1404(a), the court first decides whether the action could have been brought in the transferee district. *Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, C.A. 12-139 (GMS), 2013 WL 3293611, at *1 (D. Del. June 28, 2013). There can be no dispute that this case could have been brought in the Northern District of California. Acceleration Bay is headquartered in the Northern District of California. Further, the Northern District of California has personal jurisdiction over Defendants because Defendants each sell, market and/or distribute the Accused Games in the Northern District of California. *See supra* III.A. In addition, EA and 2K Sports have their principal places of business in the district and Activision's Sledgehammer studio, a

primary developer for the accused *Call of Duty: Advanced Warfare* game, is located in the district. *In re TC Heartland LLC*, No. 2016-105, 2016 WL 1709433, at *2 (Fed. Cir. Apr. 29, 2016); *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990).

## 2.    The private and public interest factors  favor transfer

On balance, the private and public interest factors weigh strongly in favor of transferring these cases to the Northern District of California.  Although this dispute is between companies organized in Delaware, the convenience of the witnesses, the parties, the location of the alleged infringement, and the location of the documents all favor the Northern District of California.

Plaintiff's Forum Preference.  The first factor—Acceleration Bay's preference for this forum—should be afforded little, if any, weight.  Although Acceleration Bay is a Delaware company, it was formed just before the original purchase of the Asserted Patents (less than two years ago), and it has no other ties—much less longstanding ties—to Delaware.  When a party's only connection with Delaware is its place of organization, the Federal Circuit has cautioned that it is "inappropriate" to place "heavy reliance" on that party's incorporation in Delaware.  *In re Link_A_Media*, 662 F.3d at 1223.  As place of organization is not a factor in the venue inquiry, "[i]t is certainly not a dispositive fact in the venue transfer analysis, as the district court in this case seemed to believe."  *Id.* at 1224.  In a similar case, this Court has recognized that "[w]hile [the first factor] is an important consideration, it must give way in consideration of the other relevant factors."  *Mannie & Catherine Jackson Descendant Trust v. Rizzo*, C.A. No. 15-659-RGA, 2015 WL 6449149, at *2 (D. Del. Oct. 26, 2015).  Plaintiff's choice of form is also entitled to minimal weight in light of the fact that the California Actions are first filed.

Defendants' Forum Preference.  The second factor is Defendants' forum preference. Given Defendants' significant connections to California, this factor favors transfer.  In similar circumstances where a defendant was seeking to litigate in a forum in which it had a business

11

presence, this Court found that the defendant's forum choice, which was its headquarters, was "rational and legitimate." *Semcon Tech*, 2013 WL 126421, at *2. Here, all Defendants have substantial longstanding ties to California and prefer to litigate this matter there. Defendants 2K and Electronic Arts have long had their respective headquarters in the Northern District of California. Defendant 2K is a subsidiary of Defendant Take-Two, and Defendant Take-Two is the publisher and distributor of the *NBA 2K15* and *NBA 2K16* games, which are developed by Defendant 2K in the Northern District of California. Defendant Rockstar has a studio in San Diego, California, and that studio developed a significant portion of the accused online multiplayer technology for the Accused Game *Grand Theft Auto Online*. Defendant Activision Blizzard has also had its headquarters for a long time in Santa Monica, California, which is much closer to the Northern District of California to Delaware. *See supra* III.A. Given Defendants' physical presence in and near the Northern District of California, Defendants' forum preference is rational and legitimate and should be given substantial weight.

Where The Claim Arose. The location where the claims arose favors the Northern District of California. As this Court has recognized, "[t]o some extent, the claims arose where the allegedly infringing products were designed and manufactured." *Signal Tech, LLC v. Analog Devices, Inc.*, C.A. No. 11-1073-RGA, 2012 WL 1134723, at *2 (D. Del. Apr. 3, 2012). In this case, the allegedly infringing products are multi-player games, and none of the Accused Games were designed, developed, or manufactured in Delaware. In contrast, significant development activities for 11 Accused Games occurred in the Northern District of California.[10] The claims arose, to at least some extent, in the Northern District of California and more

---

[10]     Those games include: *NBA 2K15, NBA 2K16, Call of Duty: Advanced Warfare*, *FIFA 15*, *FIFA 16*, *Tiger Woods PGA 14*, *Rory McIlroy PGA Tour*, *NHL 15*, *NHL 16*, *Plants v. Zombies* and *Plants v. Zombies 2*.

generally in California and not at all in Delaware.  Thus, this factor favors transfer to California.

The Convenience Of The Parties.  The convenience of the parties strongly favors California.  *See, e.g.*, *Microsoft Corp. v. Geotag Inc.*, 847 F. Supp. 2d 675, 678 (D. Del. 2012) (Andrews, J.) (finding that convenience of the parties slightly favored transfer when the plaintiff Delaware corporation's "business is primarily litigation" and with "its principal and only place of business" in the transferee district).  Likewise, here, Acceleration Bay and its CEO Joe Ward are located in the Northern District of California.  No party witnesses are located in Delaware. The Northern District of California is also more convenient for Defendants.  Defendants Activision Blizzard, Electronic Arts, and 2K are all located in California.  Although Defendants Take-Two and Rockstar are not located in the Northern District of California, that forum is more convenient for Take-Two because the accused *NBA 2K15* and *NBA 2K16* games were developed by Take-Two's affiliate Defendant 2K in the Northern District of California and because Rockstar's San Diego studio is a primary developer of the accused on-line multiplayer technology.  Thus, this factor strongly favors California.

The Convenience Of The Witnesses.  The convenience of the witnesses strongly favors California over Delaware.  *See, e.g.*, *Wacoh Co. v. Kionix Inc.*, 845 F. Supp. 2d 597, 602-603 (D. Del. 2012) (Andrews, J.) (finding this factor favored transfer where "[n]o witnesses from Delaware have been identified, and it is unlikely that any such witnesses exist").  From the initial disclosures in the Dismissed Actions and other information, Defendants have identified more than 30 potential witnesses, who are all located closer to the Northern District of California than Delaware.  *See* Appendix.  Aside from the parties' witnesses, these witnesses include the Inventors and other current and former Boeing employees, who are expected to be located in California and Washington State.  Similar to *Wacoh*, no known party or third-party witnesses are

located in Delaware.  Instead, the vast majority of these witnesses including the Inventors—Dr. Holt and Mr. Bourassa—reside much closer to the Northern District of California than to Wilmington.

Location Of Books And Records.  The location of the books and records favors transfer. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quotation omitted).  Defendants do not have any offices in Delaware, let alone offices that were involved in the development or testing of the Accused Games or that house documents related to the sale or marketing of those Accused Games.  None of the relevant documents are located in Delaware.[11] Acceleration Bay's documents are believed to be located in California.  Source code for at least 14 of the Accused Games is located and has been made available in California.  Further, Defendants expect significant documents from Boeing and the named inventors.  As the inventions were originally conceived in Washington and in conjunction with a Boeing division that is currently located in Seal Beach, California, Defendants expect that the bulk of Boeing's and the named inventors' documents to be on the West Coast.  Recognizing that the Federal Circuit has cautioned that it is improper to ignore this factor, *In re Link_A_Media*, 662 F.3d at 1224, the factor has some weight in favor of transfer.  *See Semcon Tech*, 2013 WL 126421, at *3 ("To the extent it has any marginal impact, however, it favors transfer.").

Practical Considerations.  These factors, which also favor transfer, consider any "[p]ractical considerations that could make the trial easy, expeditious, or inexpensive." *Semcon Tech*, 2013 WL 126421, at *3.  Here, the costs of a trial in the Northern District of California

---

[11] *See* Ex. 6 (Blizzard Decl.), ¶ 7; Ex. 7 (Activision Decl.), ¶ 5; Ex. 8 (EA Decl.), ¶ 13; *and* Ex. 9 (Take-Two Decl.), ¶ 9.

will be less than the costs of trial in Delaware.  The vast majority of the identified witnesses are located in or substantially closer to the Northern District of California, and both Acceleration Bay's and Defendants' principal lawyers are located in California.  Moreover, each of the Defendant groups have physical offices in the Northern District that they could use to help minimize business disruptions in the event of a trial there.  None of the parties has business facilities in Delaware. This factor thus favors transfer.

<u>Court Congestion</u>.  The court congestion factor slightly favors the Northern District of California.  The Northern District of California only has about 250 pending patent cases, and the District of Delaware has 799 pending patent cases.  Ex. 16 (Lex Machina Reports for ND Cal. and D. Del.)  The median time to termination for patent cases and time for claim construction hearing are shorter in the Northern District of California than in Delaware.  *Id.*

<u>Local Interest</u>.  The local interest factor either weighs in favor of the Northern District of California or is neutral.  Although generally considered inapplicable in a patent case, *Semcon Tech*, 2013 WL 126421, at *4, the alleged infringement in terms of the design and development of the Accused Games has occurred in California and for a number of games in the Northern District of California.  Thus, the local interest is in determining whether local activity is infringing and favors the Northern District of California.

<u>Enforceability Of The Judgment/The Court's Familiarity With the State Law</u>.  The enforceability of the judgment and the Court's familiarity with state law are not pertinent in this patent infringement case.  Thus, these factors are neutral.

### 3.   The balance of the factors favors transfer

All of the factors either favor transfer or are neutral.  Further, four of the factors—Defendants' forum choice, location where the claims arose, the convenience of the parties, and the convenience of the witnesses—very strongly favor transfer.

In contrast, the only facts not supporting transfer are that Acceleration Bay is a Delaware company and that this Court presided over the Dismissed Actions until determining that it lacked subject matter jurisdiction.  As explained above, organization in Delaware for the purpose of forum selection, particularly for a young company with its headquarters and CEO located in the Northern District of California, does not support denying transfer to the Northern District of California.  Further, although this Court ruled on the motion to dismiss in the Dismissed Actions, it did not engage in any claim construction, technological tutorial, or other substantive analysis of the Asserted Patents.  Further, most of the discovery disputes were handled by a Special Master.  In such circumstances, the Federal Circuit has cautioned against giving too much weight to prior litigations.  Specifically, the Federal Circuit noted that: "To interpret § 1404(a) to hold that any prior suit involving the same patent can override a compelling showing of transfer would be inconsistent with the policies underlying § 1404(a)."  *In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011).  These facts make this case similar to this Court's decision to transfer in *Semcon Tech*, 2013 WL 126421, at *8, where both plaintiff and defendant Texas Instruments were Texas companies.  Just as in that case, transfer here is warranted.

## V.    CONCLUSION

Defendants respectfully request that these cases be dismissed or stayed pending resolution of any exception to the first-to-file rule by the Northern District of California.

In the alternative, these cases should be transferred to the Northern District of California.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____
Jack B. Blumenfeld (#1014)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
skraftschik@mnat.com

*Attorneys for Defendants*

OF COUNSEL:

Michael A. Tomasulo
Gino Cheng
David K. Lin
WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA  90071
(213) 615-1700

David P. Enzminger
WINSTON & STRAWN LLP
275 Middlefield Road
Suite 205
Menlo Park, CA 94025
(650) 858-6500

Daniel K. Webb
Kathleen B. Barry
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL  60601
(312) 558-5600

July 8, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 8, 2016, upon the following in the manner indicated:

Philip A. Rovner, Esquire                                   *VIA ELECTRONIC MAIL*
Jonathan A. Choa, Esquire
POTTER ANDERSON & CORROON LLP
1313 North Market Street, 6th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Paul J. Andre, Esquire                                      *VIA ELECTRONIC MAIL*
Lisa Kobialka, Esquire
James R. Hannah, Esquire
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
*Attorneys for Plaintiff*

Aaron M. Frankel, Esquire                                   *VIA ELECTRONIC MAIL*
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY  10036
*Attorneys for Plaintiff*


/s/ *Jack B. Blumenfeld*
Jack B. Blumenfeld (#1014)

Appendix

| No. | Witness | Role/Relevant Information | Location | Source |
|---|---|---|---|---|
| 1. | Fred Holt | Inventor and former Boeing and Panthesis employee. | Seattle, WA | Ex. 17 Accurint Report |
| 2. | Virgil Bourassa | Inventor and former Boeing and Panthesis employee. | Seattle, WA | Ex. 18 Accurint Report |
| 3. | Joseph Ward | CEO and Founder of Acceleration Bay LLC. Mr. Ward also signed the Patent Purchase Agreement. | Redwood City, CA | Ex. 19 Accurint Report |
| 4. | Natasha Radovsky, Director | Global Patent and Technology Licensing, Boeing Intellectual Property Licensing. | Orange County, CA | Ex. 20 Accurint Report |
| 5. | Linda Magnotti | Former CEO Of Panthesis. | Seattle, WA | Ex. 21 Accurint Report |
| 6. | Former Boeing Employees | Former Boeing employees familiar with the SWAN technology. | Seattle, WA | |
| 7. | Joe Daniele | COO of Acorn Technologies, Inc. Mr. Daniele attempted to sell the Asserted Patents to numerous companies. | La Jolla, CA | Ex. 22 Accurint Report |
| 8. | Steve Caliguri | Vice President, Telecom, Acorn Technologies, Inc. Mr. Caliguri analyzed potential infringing products and the prior art. | La Jolla, CA | Ex. 23 Accurint Report |
| 9. | Patrick Dawson | Blizzard's Lead Server Engineer for World of Warcraft | Irvine, CA | Ex. 6 (Blizzard Decl.), ¶ 8. |
| 10. | Jay Lauffer | Matters related to the operation of accused features of World of Warcraft. | Irvine, CA | Ex. 6 (Blizzard Decl.), ¶ 8. |
| 11. | Neal Hubbard | Marketing And Distribution Of World of Warcraft. | Irvine, CA | Ex. 6 (Blizzard Decl.), ¶ 8. |

| No. | Witness | Role/Relevant Information | Location | Source |
|---|---|---|---|---|
| 12. | Andrew Amadi | Revenue And Costs Associated With World of Warcraft. | Irvine, CA | Ex. 6 (Blizzard Decl.), ¶ 8. |
| 13. | Pat Griffith | Design, Development And Operations Of Call of Duty: Advanced Warfare. | Los Angeles, CA | Ex. 7 (Activision Decl.), ¶ 13. |
| 14. | Rob Kostich | Marketing And Distribution Of Call of Duty: Advanced Warfare. | Los Angeles, CA | Ex. 7 (Activision Decl.), ¶ 13. |
| 15. | Andy Yoon | Revenue And Costs Associated With Call of Duty: Advanced Warfare. | Los Angeles, CA | Ex. 7 (Activision Decl.), ¶ 13. |
| 16. | Tony Hsu | Marketing And Distribution Of Destiny. | Los Angeles, CA | Ex. 7 (Activision Decl.), ¶ 13. |
| 17. | Ben Stagnell | Design, Development And Operations Of Call of Duty: Advanced Warfare. | Los Angeles, CA | Ex. 7 (Activision Decl.), ¶ 13. |
| 18. | John Bojorquez | Design, Development And Operations Of Call of Duty: Advanced Warfare. | Los Angeles, CA | Ex. 7 (Activision Decl.), ¶ 13. |
| 19. | Heather Polubinski | Design, Development And Operations Of Call of Duty: Advanced Warfare. | Los Angeles, CA | Ex. 7 (Activision Decl.), ¶ 13. |
| 20. | Brian Huber | Design, Development And Operations Of *Tiger Woods PGA Tour 14*, *Rory McIlroy PGA Tour*, And/Or Prior Art. | Orlando, FL | Ex. 8 (EA Decl.), ¶ 10. |
| 21. | Ryan Simmons | Marketing And Distribution Of *Tiger Woods PGA Tour 14* and *Rory McIlroy PGA Tour*. | Orlando, FL | Ex. 8 (EA Decl.), ¶ 10. |
| 22. | Mike Smith | Design, Development And Operations Of *NHL 15*, *NHL 16*, And/Or Prior Art. | Burnaby, Canada | Ex. 8 (EA Decl.), ¶ 10. |

| No. | Witness | Role/Relevant Information | Location | Source |
|---|---|---|---|---|
| 23. | David Le | Marketing And Distribution Of *NHL 15* and *NHL 16*. | Burnaby, Canada | Ex. 8 (EA Decl.), ¶ 10. |
| 24. | Alan Poon | Design, Development And Operations Of *FIFA 15*, *FIFA 16*, And/Or Prior Art. | Burnaby, Canada | Ex. 8 (EA Decl.), ¶ 10. |
| 25. | Matt Mckie | Marketing And Distribution Of *FIFA 15* and *FIFA 16*. | Burnaby, Canada | Ex. 8 (EA Decl.), ¶ 10. |
| 26. | Ling Lo | Design, Development And Operations Of *Plants vs. Zombies: Garden Warfare 1 and 2* And/Or Prior Art. | Burnaby, Canada | Ex. 8 (EA Decl.), ¶ 10. |
| 27. | Gary Clay | Marketing And Distribution Of *Plants vs. Zombies: Garden Warfare 1 and 2*. | Seattle, WA | Ex. 8 (EA Decl.), ¶ 10. |
| 28. | David O'Neill | Design, Development And Operations Of Certain Networking Features Of The Accused Products And/Or Prior Art. | Burnaby, Canada | Ex. 8 (EA Decl.), ¶ 10. |
| 29. | Previously designated Rockstar technical Rule 30(b)(6) witness | Development and operation of the following games as they relate to the claims in this lawsuit: *Grand Theft Auto V, Grand Theft Auto Online*, And/Or Prior Art. | San Diego, CA | Ex. 9 (T2 Decl.), ¶ 10. |
| 30. | Previously designated technical Rule 30(b)(6) witness and other engineers | Development and operation of the following games as they relate to the claims in this lawsuit: *NBA 2K15* And *NBA 2K16* And/Or Prior Art. | Novato, CA | Ex. 9 (T2 Decl.), ¶ 10. |
| 31. | Christopher Butcher | Design, Development, and Operations of *Destiny*. | Seattle, WA | Ex. 24 (Bungie Decl.), ¶ 13. |

| No. | Witness | Role/Relevant Information | Location | Source |
|-----|---------|---------------------------|----------|--------|
| 32. | Sony PlayStation licensing personnel | Existence and nature of any rights acquired by Sony from Panthesis; licenses between Defendants and Sony re PlayStation platform | San Mateo, CA | Exs. 12 and 13. |