IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ACCELERATION BAY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 16-453 (RGA) |
| | ) | |
| ACTIVISION BLIZZARD, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| ACCELERATION BAY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 16-454 (RGA) |
| | ) | |
| ELECTRONIC ARTS INC., | ) | |
| | ) | |
| Defendant. | ) | |
| ACCELERATION BAY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 16-455 (RGA) |
| | ) | |
| TAKE-TWO INTERACTIVE SOFTWARE, | ) | |
| INC., ROCKSTAR GAMES, INC. and | ) | |
| 2K SPORTS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS
REGARDING U.S. PATENT NOS. 6,701,344, 6,714,966, AND 6,829,634**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
skraftschik@mnat.com

*Attorneys for Defendants*

OF COUNSEL:

David P. Enzminger
Michael A. Tomasulo
Gino Cheng
David K. Lin
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071
(213) 615-1700

Dan K. Webb
Kathleen B. Barry
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600

Michael M. Murray
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-3510

October 4, 2016

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

I.     NATURE AND STAGE OF THE PROCEEDINGS ......................................................1

II.    SUMMARY OF THE ARGUMENT ...........................................................................1

III.   STATEMENT OF FACTS ........................................................................................4

IV.    APPLICABLE LAW ................................................................................................6

       A.     Legal Standard for Motion to Dismiss .................................................6

       B.     Legal Standard for Patent-Eligible Subject Matter ...............................7

V.     ARGUMENT .........................................................................................................8

       A.     Claim 1 from Each of the '344, '966, and '634 Patents is Representative and is Directed to the Same Abstract Idea ...................................8

       B.     Alice Step 1: The Broadcast Claims are Directed to an Abstract Idea ..................9

       C.     Alice Step 2: The Broadcast Claims Lack An Inventive Concept.......................13

              1.     The Broadcast Claims are Insufficiently Transformative........................13

              2.     The Additional Claims Are Also Not Transformative. ............................17

              3.     The Dependent Broadcast Claims Are Also Not Transformative............18

VI.    CONCLUSION ....................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. Amazon.Com Inc.*,
  No. 2015-2080, 2016 WL 5335502 (Fed. Cir. Sept. 23, 2016) .................................... 13, 15

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
  No. 2015-1845, 2016 WL 5335501 (Fed. Cir. Sept. 23, 2016) ..........................9, 11, 12, 18

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) .......................................................................................... *passim*

*Bilski v. Kappas*,
  561 U.S. 593 (2010) ....................................................................................................7

*buySAFE, Inc. v. Google Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014)........................................................................ 14, 18, 19

*Callwave Commc'ns, LLC v. AT&T Mobility, LLC*,
  No. 12-1701-RGA, 2016 WL 4941990 (D. Del. Sept. 15, 2016)........................... 10, 12, 15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014).....................................................................................7

*Cyber-Source Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011).................................................................................. 18

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*,
  558 F. App'x 988 (Fed. Cir. 2014)................................................................................9

*Dealertrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012).......................................................................... 9, 10, 16

*Electric Power Grp., LLC v. Alstom S.A.*,
  No. 2015-1778, 2016 WL 4073318 (Fed. Cir. Aug. 1, 2016) ...........................................11

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016)............................................................................ 7, 10, 11

*Gottschalk v. Benson*,
  409 U.S. 63 (1972) ......................................................................................................2

*Intellectual Ventures I LLC v. Symantec Corp.*,
  No. 2015-1769, 2016 WL 5539870 (Fed. Cir. Sept. 30, 2016) ..........................3, 10, 11, 15

-ii-

*Inventor Holdings, LLC v. Gameloft, Inc.*,
    135 F.Supp.3d 239 (D. Del. 2015) ......................................................................6

*IpLearn, LLC v. K12 Inc.*,
    76 F.Supp.3d 525 (D. Del. 2014) .....................................................................19

*McRO, Inc. v. Bandai Nameco Games Am.*,
    No. 2015–1080, __ F.3d __, 2016 WL 4896481 (Fed. Cir. Sept. 13, 2016) ................ 10, 11

*OIP Techs., Inc. v. Amazon.Com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015)..........................................................................6

*Parus Holdings, Inc. v. Sallie Mae Bank et al.*,
    137 F.Supp.3d 660 (D. Del. 2015) .....................................................................9

*Personalized Media Commc'ns, LLC v. Amazon.Com, Inc.*,
    161 F. Supp. 3d 325 (D. Del. 2015) ...................................................................9

*Pragmatus Telecom LLC v. Genesys Telecommunications Labs., Inc.*,
    114 F. Supp. 3d 192 (D. Del. 2015) .................................................................10

*Sound View Innovations, LLC v. Facebook, Inc.*,
    No. 16-116-RGA, 2016 WL 4535345 (D. Del. Aug. 30, 2016) ........................................13

*Two-Way Media Ltd. v. Comcast Cable Commc'ns*,
    Case No. 14-1006-RGA, 2016 WL 4373698 (D. Del. Aug. 15, 2016)........................ 12, 13

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)........................................................................15

**Statutes**

35 U.S.C. § 101...........................................................................................*passim*

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Defendants Activision Blizzard, Inc., Electronic Arts Inc., Take-Two Interactive Software, Inc., Rockstar Games, Inc., and 2K Sports, Inc. (collectively, "Defendants"), are each leading developers, publishers, and distributors of video game products.  The currently pending actions against Defendants were filed on June 17, 2016.  Defendants have not answered.

Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim as to three of the six asserted patents because those three patents do not claim patent-eligible subject matter under 35 U.S.C. § 101.[1]  This is Defendants' Opening Brief in support of that motion.

## II.    SUMMARY OF THE ARGUMENT

Plaintiff Acceleration Bay LLC ("Acceleration"), through related patent infringement actions, seeks to enforce three patents directed to the computerization of an age-old abstract method of using message-forwarding to broadcast information among a group of participants. Message forwarding has long been used to broadcast information where no single participant can send (or is expected to send) the message to all intended recipients.  In such cases, where the connections among the participants are "incomplete," message forwarding has been a traditional and necessary component of broadcasting information to large or dispersed groups.  And indeed, society has engaged in this basic practice for centuries to broadcast information through such "incomplete networks" of dispersed participants—whether through spreading news by word of mouth ("Pass the word! Tell your neighbors!"); flags or semaphores to broadcast instructions

---

[1] Plaintiffs have accused Defendants of infringing six patents.  Defendants believe that asserted claims of the remaining three patents are also invalid under 35 U.S.C. § 101, but that those issues may be sharpened during claim construction.  Defendants specifically reserve all rights to file additional motions challenging whether the other asserted patent claims cover patent-eligible subject matter.

through a dispersed naval fleet; a chain letter that requires each recipient to write and send a copy of the letter to a specified number of people; or an organized phone tree for distributing information throughout a group.[2]   In each of these cases, message forwarding is used to broadcast a message through an "incomplete network" of participants where no single participant can or is expected to broadcast the message to all of the intended recipients.   The computerization of message-forwarding to broadcast information using generic computer equipment is not patent-eligible under Supreme Court precedent, including *Alice*.

It is a bedrock principle of our patent system that "'[a]n idea of itself is not patentable.'" *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) (quoting *Rubber-Tip Pencil Co. v. Howard*, 87 U.S. 498, 507 (1874)).   The Supreme Court confirmed this fundamental principle in today's digital world in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, holding that claims that implement an abstract idea through the use of generic computer technology are not patent-eligible.   134 S. Ct. 2347, 2358 (2014).   Instead, patent claims directed to an abstract idea must include an *inventive concept*, which is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Id*. at 2355 (internal quotations omitted).

This motion addresses U.S. Patent Nos. 6,701,344 ("the '344 patent"), 6,714,966 ("the '966 patent"), and 6,829,634 ("the '634 patent") (collectively, "Broadcast Patents") and, in particular, all claims of the '344 and '966 patents, as well as claims 1-18 of the '634 patent (collectively, "Broadcast Claims").   Each of the Broadcast Claims recites either the limitation (i)

---

[2]   A chain letter is a letter sent to several persons with a request that each person send copies of the letter to an equal number of persons.   In the telephone game, players are arranged in a circle and one person whispers a message to another, who then passes the message through the circle of people.   A phone tree is a network of people organized to quickly and easily spread information amongst each other.   Participants in the phone tree network receive a call with information, and then make calls to pass along that information to other participants, who in turn pass that information along to still other participants.   Each of these are well-known methods of communication.

"each participant sends data that it receives from a neighbor participant to its neighbor participants";[3] (ii) "each participant sends data that it receives from a neighbor participant to its other neighbor participants"[4]; or (iii) "a broadcast component that receives data from a neighbor participant using the communications network and that sends the received data to its other neighbor participants."[5]   The claims also include the statement that the computers and their connections form an "$m$-regular, incomplete" graph.

The Broadcast Claims do not specify ways—much less inventive ways—of message-forwarding among incomplete networks of participants.  The Broadcast Claims claim generic computers connected via known methods for sending and receiving messages using known communication protocols.  Thus, the networking requirements of the claims are nothing more than standard implementation details that do not provide any inventive contribution or improve or change the way a computer functions.

The specified "m-regular, incomplete" network of the Broadcast Claims also does not save the claims from abstractness or otherwise render them patentable.  M-regular, incomplete graphs were well-known in graph theory (a field of mathematics) as well as computer networking.  In graph theory, a graph (or network) is "regular" if each participant has the same number ("$m$") of neighbors; a graph (or network) is "incomplete" where not all participants in the network are directly connected to all other participants.  Figure 1 of the patents shows a "four-regular" incomplete graph.  Even the specific "m-regular, incomplete" computer network of the Broadcast Claims was known and studied long before the patents were filed.  As the Federal Circuit has repeatedly held, "an abstract idea does not become nonabstract by limiting

---

[3] The '344 patent, claims 13 and 16; the '966 patent, claims 13 and 16.

[4] The '344 patent, claims 1 and 18; the '966 patent, claim 1; and the '634 patent, claim 1.

[5] The '634 patent, claim 10.

the invention to a particular … technological environment….." *Intellectual Ventures I LLC v. Symantec Corp.*, No. 2015-1769, 2016 WL 5539870, at *8 (Fed. Cir. Sept. 30, 2016) (internal quotations omitted).  Thus, these claims are not saved simply because the message sending and forwarding steps are performed in a specific type of computer network.  This is especially true because message forwarding is a common if not necessary method for broadcasting information where the network of participants is incomplete; with a complete network, each participant can send the message directly to every other participant without the need for forwarding.

These basic methods for disseminating information of the Broadcast Claims are abstract, and were long practiced without the use of computers or advanced technology.  Further, none of the claims provides sufficient "additional features" to make the claims patent-eligible.  *Alice*, 134 S. Ct. at 2357.  Accordingly, Defendants move to dismiss the Broadcast Claims as invalid under 35 U.S.C. § 101.

## III.   STATEMENT OF FACTS

The Broadcast Patents, which share a nearly identical specification, describe methods for broadcasting messages.[6]  The claimed broadcast technique has only two steps: a "message sending step" and a "message forwarding step."  For the message sending step, "the originating computer sends the message to each of its neighbors using its point-to-point[7] connections."  '344 patent, col. 4, ll. 30-32.  The second step—the message forwarding step—requires that "[e]ach computer that receives the message then sends the message to its three[8] other neighbors using the

---

[6] The Broadcast Patents issued from related applications filed on July 31, 2000.  For ease of reference, the '344 patent (D.I. 1-1, Ex. 1) is used when citing to the common specification.

[7] The specification background admits that a "point-to-point" connection is an old communication protocol.  *See* '344 patent, col. 1, ll. 44-57.

[8] In the example, each computer is connected to four other computers.  Thus, a computer that receives a message from one "neighbor" will send that message to its remaining three other neighbors.  This implementation is just like a chain letter or phone tree in which the information

point-to-point connections." *Id.*, col. 4, ll. 33-34.   The apparent objective of the Broadcast Patents is to use this technique to "effect the broadcasting of the message to each computer over a logical broadcast channel." *Id.*, col. 4, ll. 35-38.

The claimed message distribution employs a conventional communication technique that is implemented over existing networking infrastructure—the Internet—using generic computing devices.   The specification explains: "[t]he logical broadcast channel is implemented using an underlying network system (*e.g.*, the Internet) that allows each computer connected to the underlying network system to send messages to each other connected computer using each computer's address." *Id.*, col. 4, ll. 15-19; *see also* Abstract (summarizing the infrastructure in the same way).   The specification does not suggest that these garden-variety computers contain specialized hardware that cause the computers to function in any way other than their normal, expected, and conventional manner:

> The computers connecting to the broadcast channel may include a central processing unit, memory, input devices (e.g., keyboard and pointing device), output devices (e.g., display devices), and storage devices (e.g., disk drives).   The memory and storage devices are computer-readable medium that may contain computer instructions that implement the broadcaster component.

*Id.*, col. 15, ll. 58-64.

Thus, the Broadcast Patents merely use a standardized, preexisting protocol to implement the message distribution idea: "[i]n one embodiment, the broadcast technique establishes the computer connections using the TCP/IP communications protocol, which is a point-to-point protocol, as the underlying network." *Id.*, col. 6, ll. 25-28.

There are additional, well-known network and graph theory features used in the embodiments disclosed and claimed in the Broadcast Patents, but these only serve to delineate

---

recipient forwards the message on to its remaining neighbors except the neighbor who first sent the information.

the particular "technological environment" of the claims. For example, the networks are claimed to be "m-regular," "m-connected" (*see* '634 patent at col. 29, l. 21), and/or "non-complete." *See id.* at col. 29, ll. 24-25. These features are described in the specification in a mathematical "graph" context. *See id.* at col. 4, ll. 64-65 ("A graph in which each node is connected to four other nodes is referred to as a 4-regular graph."); *see also id.* at col. 5, ll. 1-6 (describing m-connected property). These are basic features of graphs that were long known to provide advantages in network applications. *See, e.g.*, Kuo-Jui Lin, "Routing and Broadcasting in Two-dimensional Linear Congruential Graphs of Degree Four" (Master's Thesis, Concordia University, June 1994) ("Kuo-Jui Lin") (Ex. A) at 9 (explaining that a regular graph "has all of its edges uniformly distributed; therefore, reducing the probability of the occurrence of bottlenecks."); Bondy and Murty, GRAPH THEORY WITH APPLICATIONS, 1976 (New York) ("Bondy") (Ex. B) at 11 (describing "regular" graphs) and 13 (describing "connected" graphs); Baransel et al., *Routing in Multihop Packet Switching Networks: Gb/s Challenge*, IEEE Network, May/June 1995 ("Baransal") (Ex. C) at 49, 52, 53, 55, 56 (describing various m-regular non-complete topologies).

## IV.   APPLICABLE LAW

### A.   Legal Standard for Motion to Dismiss

The test for patent-eligible subject matter is a threshold test that is particularly appropriate for resolution in a Rule 12 motion to dismiss. *See, e.g.*, *OIP Techs., Inc. v. Amazon.Com, Inc.,* 788 F.3d 1359, 1364 (Fed. Cir. 2015) (affirming motion to dismiss on § 101 grounds); *see also id.* at 1365 (Mayer, J., concurring) ("I commend the district court's adherence to the Supreme Court's instruction that patent eligibility is a 'threshold' issue by resolving it at the first opportunity.") (internal citation omitted). Whether a claim is drawn to patent-eligible subject matter under 35 U.S.C. § 101 is a question of law. *See id.* at 1362 (citation omitted). In

the absence of disputed underlying facts, this Court previously declined to extend the presumption of validity and did not require proof of invalidity by clear and convincing evidence. *See Inventor Holdings, LLC v. Gameloft, Inc.*, 135 F. Supp. 3d 239, 248 n.6 (D. Del. 2015).

**B.**     **Legal Standard for Patent-Eligible Subject Matter**

"Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 134 S. Ct. at 2354 (citation omitted). The Supreme Court has recognized a concern with patent claims that improperly tie up the future use of "the basic tools of scientific and technological work" which it found to be the basic "building blocks of human ingenuity." *Id.* (citations omitted).

The Court in *Alice* applied a two-step test to determine whether a claim is patent-eligible. First, a court must determine whether a claim is "directed to" a patent-ineligible concept, such as an abstract idea ("*Alice* Step 1"). *Alice*, 134 S. Ct. at 2355. The Federal Circuit recently explained that for "the first step of the *Alice* analysis," it is "relevant to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea…." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016).

If the claims are directed to an abstract idea, then a court must determine whether there is an "inventive concept"—that is, an element or combination of elements "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself" ("*Alice* Step 2"). *Alice*, 134 S. Ct. at 2355 (alteration in original). A claim to an abstract idea must include "additional features" which must be more than "well-understood, routine, conventional activit[ies] previously known to the industry." *Id.* at 2359 (citation omitted). Further, "[t]he prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment or adding insignificant postsolution activity.'" *Bilski v. Kappas*, 561 U.S. 593, 610-11 (2010) (citation omitted).

## V.    ARGUMENT

The Broadcast Claims are invalid under the two-step *Alice* inquiry because (i) they are directed to the abstract and age-old method of using message-forwarding to broadcast information among a group of participants; and (ii) their additional limitations are trivial and collectively do not amount to significantly more than a claim to the simple, abstract idea itself.

### A.    Claim 1 from Each of the '344, '966, and '634 Patents is Representative and is Directed to the Same Abstract Idea

It is not necessary to address every claim so long as the court identifies a representative claim and "all the claims are 'substantially similar and linked to the same abstract idea.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (internal citation omitted).  Claim 1 of the '344, '966, and '634 patents are substantially similar and are directed to the same abstract idea, *viz.* using message-forwarding to broadcast information among a group of participants.  This rudimentary, abstract practice can and was performed by humans without any computers at all.  Message forwarding has long been used to broadcast information where no single participant can send (or is expected to send) the message to all intended recipients.  In such cases, where the connections among the participants are "incomplete," message forwarding has been a traditional and necessary component of broadcasting information to large or dispersed groups.  For instance, in the schoolyard game of "telephone," a group of people forward messages to each other until the message is received by everyone; in a phone tree, each person who receives a message calls his or her designated contacts and passes along that message, with the process continuing until the message is shared with the entire group; with a chain letter, each person who receives the letter is required to forward it to an equal number of people, who are then obligated to pass along the letter to that same number of people as well.  Although not described as being m-regular and incomplete,

these pre-digital age examples were indeed incomplete as not every participant in these groups was connected directly to every other participant in the group and some would have been m-regular by having each participant connect to m other participants.  The game of telephone is a good example and is played on a two-regular incomplete graph.  Chain letters and phone trees (also known as "phone circles") are by their nature always incomplete graphs, just like the Broadcast Claims, because not every participant is directly connected to every other participant. Further, chain letters and phone trees can be constructed as m-regular.  Thus, the abstract method central to claim 1 of the '344, '966, and '634 patents is readily implemented without using computers at all, and has been implemented in m-regular, incomplete graphs.

### B.    *Alice* Step 1: The Broadcast Claims are Directed to an Abstract Idea

All of the Broadcast Claims involve some combination of the following two basic elements:

(1)  the originating participant sends data to all of its neighbors; and

(2)  each participant that receives data, in turn, forwards it on to its neighbors.

Thus, the Broadcast Claims are all generally directed to a common, age-old communication technique of using message-forwarding to broadcast information among a group of participants. Having an originating participant send the message only to its directly connected participants (i.e. an incomplete network of participants) instead of all participants is conventional and improves the speed and efficiency of the message distribution.  Moreover, this requirement of only sending to directly connected participants is a natural consequence of many groups in which not every group participant is directly connected to every other participant in the group.  For these common incomplete groups, the forwarding of information is the only way to share information with all the group participants.

Sending messages in this manner is a well-known, simple, and abstract concept. Following *Alice*, the Federal Circuit has confirmed that "[p]atents that merely claim well-established, fundamental concepts fall within the category of abstract ideas." *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 991 (Fed. Cir. 2014). The Federal Circuit very recently found that "providing out-of-region access to regional broadcast content is an abstract idea" because "[i]t is a broad and familiar concept concerning information distribution that is untethered to any specific or concrete way of implementing it." *Affinity Labs of Texas, LLC v. DirecTV, LLC*, No. 2015-1845, 2016 WL 5335501, at *3 (Fed. Cir. Sept. 23, 2016). The same holds true for the Broadcast Claims, where message-forwarding is used to broadcast information to a wider group of participants.

Furthermore, the process claimed in the Broadcast Claims can be performed by humans without computing devices at all. The fact that "there are pre-Internet analogs to the patent claims suggests methods of organizing human (business) activity and, therefore, an abstract idea." *Parus Holdings, Inc. v. Sallie Mae Bank et al.*, 137 F. Supp. 3d 660, 672 (D. Del. 2015) (citing *Intellectual Ventures I LLC v. Capital One Bank*, 792 F.3d 1363, 1368 (Fed. Cir. 2015)).

Further, the two basic elements, *supra*, which are part of the message forwarding embodied by the Broadcast Claims, are but simple acts of data transmission and retransmission, which have repeatedly been held to be abstract. For example, in *Dealertrack, Inc. v. Huber*, the Federal Circuit distilled the asserted patent—directed to receiving credit application data and forwarding that data to multiple funding sources—into three simple steps: "receiving data from one source (step A), selectively forwarding the data (step B, performed according to step D), and forwarding reply data to the first source (step C)." 674 F.3d 1315, 1333 (Fed. Cir. 2012). Here, just as retransmission is an abstract idea, retransmitting multiple times is still an abstraction. *See,*

*e.g.*, *Personalized Media Commc'ns, LLC v. Amazon.Com, Inc.*, 161 F. Supp. 3d 325, 333-34 (D. Del. 2015) ("performing an abstract idea twice in a row is not a meaningful limitation.").

This Court has previously held abstract the passing of information—in an automated call distribution network that included an intermediary server for receiving and forwarding data from a customer terminal to a call center through contact channels (*e.g.*, Internet and phone). *See Pragmatus Telecom LLC v. Genesys Telecomms. Labs., Inc.,* 114 F. Supp. 3d 192, 200-01 (D. Del. 2015); *see also Callwave Commc'ns, LLC v. AT&T Mobility, LLC*, No. 12-1701-RGA, 2016 WL 4941990, at *4 (D. Del. Sept. 15, 2016) (collecting cases similar to requesting and receiving information). Just like passing information through a customer contact channel, here forwarding information to multiple recipients or neighbors along dedicated communication lines is reflected in age-old business practices.

Further, the Federal Circuit has rejected arguments of patent eligibility due to a claim being narrowly limited to a specific field of use, application, or technological environment. *See, e.g.*, *Dealertrack*, 674 F.3d at 1334. Very recently, the court reemphasized this point again, explaining that "an abstract idea does not become nonabstract by limiting the invention to a particular … technological environment." *Symantec Corp.*, 2016 WL 5539870, at *8. In this case, limiting the claims to computer networks or m-regular, incomplete computer networks or even gaming computer networks does not change the abstract nature of these claims.

Furthermore, the claims here are not directed to the type of invention recently found by the Federal Circuit to be statutory under § 101 in *Enfish* or in *McRO*. In those cases, the Federal Circuit emphasized that the abstract idea analysis requires inquiry "to whether the claims these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes

and machinery." *McRO, Inc. v. Bandai Namco Games Am.*, No. 2015–1080, 2016 WL 4896481, at *8 (Fed. Cir. Sept. 13, 2016) (citing *Enfish, LLC*, 822 F.3d at 1336). For the claims at issue in *Enfish*, "the plain focus of the claims is on an improvement to computer functionality itself… [namely] a specific improvement to the way computers operate, embodied in the self-referential table." *Enfish, LLC*, 822 F.3d at 1336. Similarly for the claims in *McRO*, the Federal Circuit held that "the claims are limited to rules with specific characteristics. . . . The specific, claimed features of these rules allow for the improvement realized by the invention." *McRO*, 2016 WL 4896481, at *7. The Broadcast Claims are not directed to an "improvement in computer capabilities" (*Enfish*, 822 F.3d at 1336) or "limited" to a specific implementation. *McRO*, 2016 WL 4896481, at *6-7.

Instead, the instant case is more like the recent Federal Circuit decisions in *Electric Power Grp.* and *Affinity Labs*, which found patent-ineligibility. As the court explained in *Affinity Labs*, "[t]here is nothing in claim 1 that is directed to *how* to implement out-of-region broadcasting on a cellular telephone. Rather, the claim is drawn to the idea itself." 2016 WL 5335501, at *3. Similarly, in *Electric Power Grp., LLC v. Alstom S.A.*, the court explained that "[i]nquiry therefore must turn to any requirements for how the desired result is achieved." No. 2015-1778, 2016 WL 4073318, at *5 (Fed. Cir. Aug. 1, 2016); *see also Intellectual Ventures I LLC*, No. 2015-1769, 2016 WL 5539870, at *5 ("But when a claim directed to an abstract idea "contains no restriction on how the result is accomplished . . . [and] [t]he mechanism . . . is not described, although this is stated to be the essential innovation[,]" then the claim is not patent-eligible." (citation omitted)).

The Broadcast Claims cover generic message-forwarding to a group where the computers are used merely "as tools in the aid of a process focused on an abstract idea"—*i.e.,* to accomplish

the transmission of the messages. *Affinity Labs*, 2016 WL 5335501, at *7 (citing *Electric Power Grp., LLC*, 2016 WL 4073318, at *4). Nothing in the claims suggests a new method of forwarding information. Rather, the claims require nothing more than purely conventional data transmission, receipt, and retransmission, using generic, garden-variety computer functionality. Further, the Broadcast Claims merely state that the network is m-regular and incomplete, but not *how* to achieve a network with those properties as required by the Federal Circuit's recent decisions in *Electric Power Grp.* and *Affinity Labs*. Moreover, message forwarding has been used throughout history to broadcast information through ***incomplete*** networks.

This Court has also recognized that generic data transmission is not patent eligible. This Court has explained, for example, "[m]onitoring the delivery of real-time information to a user or users is similar to concepts previously found to be abstract." *Two-Way Media Ltd. v. Comcast Cable Commc'ns*, C.A. No. 14-1006-RGA, 2016 WL 4373698, at *6 (D. Del. Aug. 15, 2016). This Court has also explained that "relaying location information via an intermediary" is also abstract. *Callwave*, 2016 WL 4941990, at *4. Accordingly, the Broadcast Claims are directed to a patent-ineligible, abstract idea and *Alice* Step 1 is satisfied.

## C.   *Alice* Step 2: The Broadcast Claims Lack An Inventive Concept

### 1.   The Broadcast Claims are Insufficiently Transformative

The Broadcast Claims do not contain any additional, inventive elements sufficient to transform the abstract nature of the claims into a patent-eligible application. Instead, the additional elements merely describe a particular technical environment or add well-known networking components. None of these additional elements pass muster under *Alice* Step 2.

The Broadcast Claims are performed on a "computer network," which is not an inventive step, and use generic, functional claim language. The Federal Circuit recently found an insufficient inventive step because the claim included components "described and claimed

generically rather than with the specificity necessary to show how those components provide a concrete solution to the problem addressed by the patent." *Affinity Labs of Texas, LLC v. Amazon.Com Inc.*, No. 2015-2080, 2016 WL 5335502, at \*5 (Fed. Cir. Sept. 23, 2016); *see also Two-Way Media*, 2016 WL 4373698, at \*5 ("[T]he claims do not recite the mechanism by which those problems are solved."). Similarly, this Court has found no inventive step because "[n]one of the claims offers a meaningful limitation beyond linking the abstract idea to generic or functionally-described computer components." *Sound View Innovations, LLC v. Facebook, Inc.*, No. 16-116-RGA, 2016 WL 4535345, at \*6 (D. Del. Aug. 30, 2016). There is no meaningful limitation on these Broadcast Claims or mechanism for performing these functions. At most, the Broadcast Claims state that the network is m-regular and incomplete, but as the Federal Circuit has emphasized, nothing in the claims provides the specificity to explain *how* these well-known, basic properties are actually achieved. The Broadcast Claims have no inventive step.

The preambles of claim 1 of the '344, '966 and '634 patents recite a "game environment" ('344 patent), "an information delivery service" ('966 patent), or a "non-routing table based computer network" ('634 patent). If the preambles are limiting, it was not inventive to use networks for gaming or information delivery. The "non-routing table based computer network" of claim 1 of the '634 patent was a conventional and generic type of computer network. One example of such a network is disclosed in Peter J. Shoubridge & Arek Dadej, "Hybrid Routing in Dynamic Networks," *IEEE International Conference on Communications*, 1997 (Montreal) ("Shoubridge") (Ex. D). Shoubridge describes a network that can communicate using "flooding based routing procedures" which "do not maintain routing tables." *Id.* at 1381, ¶ 7. Another example is disclosed in Baransal, which explains that "[n]o routing tables are necessary" when using flooding procedures. *E.g.*, Ex. C at 59; *id.* at 41.

-14-

A limitation in claim 1 of each Broadcast Patent requires that "each participant hav[e] … at least three neighbor participants."  As with chain letters and phone trees, three neighbors would be the minimum number required to realize the efficiencies from having multiple participants share information at the same time.  Indeed, a chain letter or phone tree with merely two neighbors per participant results in one neighbor sending a letter to or calling the participant, and the participant then sending the letter or calling the remaining, second neighbor.  With at least three neighbors, the participant receives the letter or call and then forwards the letter or calls two other neighbors, and those two other neighbors then start duplicating the letter and making calls at the same time to their other neighbors.  Thus, as common sense bears out, a chain letter or a phone tree with at least three neighbors per participant is plainly more efficient.  Networks with at least three neighbors were also common before these patents were filed.  *See, e.g.*, U.S. Patent No. 6,122,277 to Garmire et al. (Ex. E) Fig. 1 (network wherein each node has four neighbors).

The next two limitations in the representative claims are directed to the abstract message forwarding method as addressed above, and thus do not constitute additional elements beyond the abstract method.  In any event, as the Federal Circuit observed, "a computer [that] receives and sends the information over a network—with no further specification—is not even arguably inventive."  *buySAFE, Inc. v. Google Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).  In addition, those limitations do not specify what communication network protocol is used during the transmission.  These limitations claim concepts—"sends data" and "sends data that it receives"—that are inherent in the communication of information in any technological context.  Moreover, the common specification proposes an already-existing protocol, such as TCP/IP, and the independent claims are not even limited to that, or any other, protocol.  *See* '344 patent, col.

-15-

1, ll. 44-47 and col. 6, ll. 25-28.  In a recent case, the Federal Circuit found a similar disclosure in the specification "confirm[ed] that the implementation of the abstract idea is routine and conventional." *Intellectual Ventures I LLC.*, No. 2015-1769, 2016 WL 5539870, at *7.

Sending, receiving, and resending data are routine and conventional computer functions. "[S]uch functional, result-orientated claims are a hallmark of claims commonly found invalid under § 101." *Callwave*, 2016 WL 4941990, at *5 (citing *Electric Power Grp.*, 2016 WL 4073318, at *6); *see also Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014). "[T]he claims at issue amount to 'nothing significantly more' than an instruction to apply the abstract idea . . . using some unspecified, generic computer." *Alice*, 134 S. Ct. at 2360.

The next limitation of claim 1 of the '634 patent further requires that the "data is numbered sequentially so that data received out of order can be queued and rearranged."  The inclusion of ordering information to arrange the transmitted data was conventional, not inventive, and is nothing more than the generic functional description found insufficient as an inventive step by the Federal Circuit.  *Affinity Labs*, 2016 WL 5335502, at *3-5.  Further, the specification's inclusion of ordering was conventional as it relies on the TCP/IP protocol, which was and still is the basic communication protocol of the Internet, and uses sequence numbers to queue, rearrange the order, and guarantee delivery of messages.  Therefore, this limitation is insufficient to transform this claim into patent-eligible subject matter.

Turning to the remaining limitations of the representative claims, nothing about the network having the properties of m-regularity, m-connectedness, and incompleteness is inventive or transformative.  As noted before, message forwarding has long been used to broadcast information through incomplete networks, which in some cases have been m-regular and m-connected as well (e.g. the Telephone Game).  In addition, these properties have long been

observed and known to provide advantages in network applications.  *See, e.g.*, Kuo-Jui Lin (Ex. A) at 9 (explaining that a regular graph "has all of its edges uniformly distributed; therefore, reducing the probability of the occurrence of bottlenecks."); Bondy (Ex. B) at 11 (describing "regular" graphs) and 13 (describing "connected" graphs); Baransel (Ex. C) at 49, 52, 53, 55, 56 (describing various m-regular non-complete topologies).

Even if the individual components are taken as an ordered combination, the claims still lack an inventive concept.  The inventors did not invent a new method of data transmission, a new protocol, or new hardware.  Further, there is nothing inventive about forwarding information in any type of network, much less one that happens to be *m*-regular.   Thus, even as a combination of elements, nothing in the representative claims is anything more than the abstract idea implemented with generic computer functions.  The limitations in the Broadcast Claims add nothing inventive to the age-old, abstract idea of relaying information to others.   Accordingly, the Broadcast Claims are invalid for claiming ineligible subject matter.

### 2.    The Additional Claims Are Also Not Transformative.

If the Court individually addresses the remaining claims, the result would be the same. The four additional independent claims also add nothing inventive to the basic abstract method. In particular, the additional limitations address only high-level descriptions of the environment in which the claimed technique operates (*i.e.*, the existence of a network; the number of broadcast channels; the purpose and type of content transmitted thereon and the number of participants therein); whether the participants each have three connections or four; or a generic means to find a channel to opt in.  None of these additional features even arguably impart an inventive concept to the basic abstract method.  The Federal Circuit has previously rejected arguments of patent eligibility due to a claim's being narrowly limited to a specific field of use, application, or environment.  *See, e.g.*, *Dealertrack*, 674 F.3d at 1334.

Independent claim 18 of the '344 patent and independent claim 10 of the '634 patent differ in only minor ways from the representative claim.  In particular, claim 18 of the '344 patent includes slight differences in the wording of the environmental limitation: *viz.* claim 1 defines "m-regular" to mean that "m is the exact number of neighbor participants of each participant," whereas in claim 18, the network is simply "m-regular" without further explanation. Other differences in claim 18 are in the final element, which merely states that the "network forms an incomplete graph."  These differences certainly do not impact the analysis above.

Claim 10 of the '634 patent is slightly different from the claims addressed above in that the received information is forwarded to *all* neighbors (not merely the "other" neighbors), including the neighbor from whom that information was originally received.  There are also minor differences in its phrasing for the second element, *viz.*, claim 10 recites "for each participant connected to the broadcast channel, an indication of four neighbor participants of that participant."  But neither claim 10, nor the specification, specify what constitutes an "indication" or how the indication is generated.  This claimed "indication" thus cannot constitute a point of novelty.  Claim 10 also includes a trivial limitation addressing the generic computer environment in which the distribution occurs, namely "a communications network that provides peer-to-peer communications between the participants connected to the broadcast channel."  Again, none of these differences rise to the level of inventive contribution such as would satisfy *Alice* Step 2.

### 3.    The Dependent Broadcast Claims Are Also Not Transformative

The dependent Broadcast Claims are also insufficiently transformative—all of the limitations are trivial modifications and/or non-substantive additions to the abstract idea of

message distribution or forwarding.  For example, how many times a node sends a message to its neighbor[9] is an arbitrary design choice and insufficiently transformative.

As another example, whether the broadcast channel is used for a topic of interest, or for a game, or otherwise provides game information,[10] these are insignificant variations of the representative claims.  These variations on the *types of content* do not transform an abstract idea into a patent-eligible application of that idea.  *See Affinity Labs*, 2016 WL 5335501, at *4 (Fed. Cir. Sept. 23, 2016) (rejecting argument that restriction limiting abstract idea to cellphones made the claim patent-eligible).

The limitation as to how many participants a computer may host[11] appears to be directed to the scenario where a computer runs multiple programs, each program participating in its own independent broadcast channel.  That a computer could run two online gaming programs at the same time or host multiple independent processes is not new or inventive.  Running simultaneous applications is prerequisite functionality for general-purpose computers.

Next, peer-to-peer networks (the '344 patent, col. 2, ll. 23-28) and the TCP/IP protocol (the '344 patent, col. 1, ll. 44-46)[12] are pre-existing technology whose additions serve merely to circumscribe the technological environment but they do not confer patent eligibility.  *See Alice*, 134 S. Ct. at 2357-59 (limiting the underlying, abstract idea to "a particular technological environment" does not transform the idea into a patent-eligible invention) (citation omitted).

---

[9] The '344 patent, claim 11; the '966 patent, claim 11; and the '634 patent, claims 9 and 11.

[10] The '344 patent, claims 12 and 13; and the '966 patent, claims 12 and 13.

[11] The '344 patent, claims 10, 17, and 19; the '966 patent, claims 10 and 17; and the '634 patent, claim 8.

[12] The '344 patent, claim 6, 7 and 8; the '966 patent, claim 6, 7 and 8; and the '634 patent, claim 4, 6 and 16.

Similarly, the fact that the invention may be used over the Internet is insufficiently transformative.[13] The Internet has been available for decades and, as the court concluded in *buySAFE*, applying a "well-known, widely-understood concept" by "using conventional computer technology and the Internet did not render the abstract idea patent-eligible." 765 F.3d at 1352; *see also, e.g.*, *Cyber-Source Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011) (Internet usage did not save abstract idea of transaction verification).

Likewise, the specific network structure or the number of nodes therein[14] is neither new nor inventive because the mathematical relationship between the number of nodes and shared edges in an *m*-regular graph has been known from as early as the 13th century. *See* Ex. F.

Finally, the distinction whether the claimed "participant" is a process,[15] thread,[16] or computer,[17] is also unavailing. As the court reasoned in *buySAFE*, "[t]he claims' invocation of computers adds no inventive concept. The computer functionality is generic . . . ." 765 F.3d at 1355; *see also IpLearn, LLC v. K12 Inc.*, 76 F. Supp. 3d 525, 534-35 (D. Del. 2014) ("The fact that computers, networks, the Internet, computer readable medium, or computer program code figure into claims 9, 35, and the dependent claims, does not save them.").

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court find all claims of U.S. Patent Nos. 6,701,344 and 6,714,966 and claims 1-18 of U.S. Patent No. 6,829,634 invalid under 35 U.S.C. § 101.

---

[13] The '634 patent, claim 17.

[14] The '344 patent, claims 1-5, 13, 15, 16, and 18; the '966 patent, claims 1-5, 13, 15, 16; and the '634 patent, claims 1-3, 10; the '344 patent, claims 1, 13, and 16; the '966 patent, claims 1, 13, and 16; and the '634 patent, claims 1 and 10.

[15] The '344 patent, claim 9; the '966 patent, claim 9; and the '634 patent, claims 7 and 13.

[16] The '634 patent, claim 14.

[17] The '634 patent, claim 15.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Stephen J. Kraftschik*

_____

Jack B. Blumenfeld (#1014)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
skraftschik@mnat.com

*Attorneys for Defendants*

OF COUNSEL:

David P. Enzminger
Michael A. Tomasulo
Gino Cheng
David K. Lin
WINSTON & STRAWN LLP
333 S. Grand Avenue, 38th Floor
Los Angeles, CA 90071
(213) 615-1700

Dan K. Webb
Kathleen B. Barry
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600

Michael M. Murray
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-3510

October 4, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2016, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 4, 2016, upon the following in the manner indicated:

Philip A. Rovner, Esquire                                          *VIA ELECTRONIC MAIL*
Jonathan A. Choa, Esquire
POTTER ANDERSON & CORROON LLP
1313 North Market Street, 6th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Paul J. Andre, Esquire                                            *VIA ELECTRONIC MAIL*
Lisa Kobialka, Esquire
James R. Hannah, Esquire
Hannah Lee, Esquire
KRAMER LEVIN NAFTALIS & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
*Attorneys for Plaintiff*

Aaron M. Frankel, Esquire                                         *VIA ELECTRONIC MAIL*
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY  10036
*Attorneys for Plaintiff*

*/s/ Stephen J. Kraftschik*
Stephen J. Kraftschik (#5623)