IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ACCELERATION BAY LLC. | ) | |
| Plaintiff, | ) ) ) | |
| v, | ) ) | C.A. No. 16-453 (RGA) |
| ACTIVISION BLIZZARD, INC., | ) ) ) | |
| Defendant. | ) ) ) | |
| ACCELERATION BAY LLC, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 16-454 (RGA) |
| ELECTRONIC ARTS INC., | ) ) ) | |
| Defendant. | ) ) ) | |
| ACCELERATION BAY LLC, | ) ) | |
| Plaintiff. | ) ) ) | |
| v. | ) ) ) | |
| TAKE-TWO INTERACTIVE SOFTWARE, INC., ROCKSTAR GAMES, INC. and 2K SPORTS, INC., | ) ) ) ) ) | C.A. No. 16-455 (RGA) |
| Defendants. | ) | |

**SPECIAL MASTER ORDER NO. 3 AS TO CROSS MOTIONS
TO COMPEL AND FOR SANCTIONS**

**MOTIONS**

On April 28, 2017, the parties filed the following motions:

Plaintiff Accleration Bay LLC's ("Plaintiff") motions to compel; specifically:

1. Defendant Activision Blizzard, LLC ("Activision") to produce World of Warcraft wiki files;

2. Defendant Take-Two to provide documents, source code and software development kits and;

3. Joe Rumsey to comply with Accleration Bay's March 13, 2017 deposition and document subpoenas.

Defendants' Motion to Compel Supplemental Responses to Party Specific Interrogatories 1, 2 and 4

Defendant Activision Blizzard, Inc.'s Motion to Compel Compliance with Special Master Orders for supplemental responses to interrogatories 7 and 9 and for Sanctions under Rule 37.

Defendants' Motion to Compel compliance with subpoenas to Scott Smith and Robert Abarbanel.

On April 28, 2017 the parties filed their briefs and affidavits in support of their various motions.

On May 8, 2017, the parties filed their reply briefs and exhibits to the various motions.

On May 10, 2017, the foregoing motions were heard (the "Hearing").

This is the Special Master's Order resolving the foregoing motions.

**PLAINTIFF'S MOTIONS TO COMPEL**

1. <u>Motion to compel Activision to produce the requested World of Warcraft wiki file.</u>

Activision has already produced a number of documents concerning World of Warcraft ("WoW"). Its wiki file is designated as "Restricted Confidential-Source Code Material", pursuant to the parties' Protective Order (Document No. 58, filed Feb. 22. 2017). Although Plaintiff's counsel and its experts have apparently reviewed the wiki file seven times, Plaintiff

2

seeks physical possession of the requested documents because its being limited to taking hand notes when inspecting the confidential complex documents pursuant to the Protective Order.

During the course of the Hearing on this Motion, the parties appeared to be moving towards a compromise under which Defendant would possibly produce a couple hundred pages of technical documents with appropriate redactions.  The May 5, 2017 email from Plaintiff's attorney identified 67 articles out of 1,036 from the WoW wiki file that Plaintiff still seeks.

It is Ordered that within two (2) weeks Activision Blizzard, Inc. produce the files for the 67 articles, subject to reasonable redactions and limited to no more than 300 pages.

2. <u>Plaintiff seeks to have Take-Two provide:  (a) GTA and NBA 2 K Source Code; (b) GTA task list; (c) GTA Game Design Documents; and (d) Microsoft XBox and Sony SDKs.</u>

This Motion consists of four sub-motions.  Fortunately, during the Hearing the parties reached an agreement on some of the motions.  Take-Two is making available for inspection these source code files.  Rockstar is making available for inspection the Miscrosoft XBox and Sony SDKs. (Hearing Transcript, pgs. 94-95).

The GTA task list, according to Defendants, includes a variety of topics and thousands of reports, most of which Defendants contend are entirely irrelevant to this case.  The Motion on this request is moot; as the parties agreed to limit production of task list documents to "networking".  (Hearing Transcript, p. 101).

As to Take-Two GTA Game Design Documents, there are apparently more than 50 such design documents used by Take-Two.  At the Hearing, the Plaintiff offered to compromise its

3

request for these design documents.  The Motion on this request is moot; as the parties agreed that Defendants will produce those portions of these design documents that discuss networking.

       3.      <u>Plaintiff's Request That Joe Rumsey Comply with its Deposition and Documents Subpoena</u>

On March 13, 2017, Plaintiff filed a subpoena to compel the deposition and documents of Joe Rumsey.  Mr. Rumsey was the author of the JAM server and JAM message protocol.  Plaintiff maintains that JAM is an important part of its infringement claims with respect to Activision's WoW products.  Defendants filed the Rumsey Declaration (Ex. A-25 to their reply brief) which states that Mr. Rumsey stopped working on WoW in 2007 and has not seen the source code for it since then.  While he did develop the code for JAM, that code was continually changing after he left the WoW team.  Accordingly, Defendants maintain that Mr. Rumsey has no relevant information and that it would be burdensome for Mr. Rumsey to sit for the requested deposition.  Defendants also point out that they searched for relevant documents from Mr. Rumsey and he has none.

The Special Master Orders that Mr. Rumsey's deposition be conducted by telephone on a date and time convenient to him and that the deposition be limited to three hours**.**

**ACTIVISION'S MOTION TO COMPEL COMPLIANCE WITH SPECIAL MASTER ORDERS FOR SUPPLEMENTAL RESPONSES TO INTERROGATORIES 7 AND 9 AND FOR SANCTIONS UNDER RULE 37**

It may be helpful to the Court and to the parties for the Special Master to express some thoughts as to how to address this Motion.  Litigation over the patents in question has been pending for approximately 2 years.  Under the Rule 16 Scheduling Order, the parties are to complete all fact discovery by July 31, 2017.

Defendants have repeatedly complained and brought motions to compel Plaintiff to be more specific as to its infringement claims. Twice the Special Master has ruled on these motions. (see Special Master Order No. 2 on April 19, 2016 in the prior action among the parties, and Special Master Order No. 1 in this action on March 15, 2017).

Defendants are concerned that Plaintiff might not articulate specific infringement claims until it submits its expert reports. If that occurs, Defendants would only have a few months thereafter to respond with their own expert reports, and there may be insufficient time to take possible discovery as to any newly fashioned infringement claims.

Plaintiff has steadfastly maintained that it has provided sufficient notice of its infringement claims; that it will supplement its claims as discovery proceeds; and that it earnestly met its interrogatory disclosure obligations as to its infringement claims.

Plaintiff insists that its infringement claims need only meet a "notice" standard when responding to initial interrogatories as to its infringement claims. Even if the Special Master accepts Plaintiff's contention as to the law, concerns remain as to the sufficiency of Plaintiff's disclosures as the parties approach the fact discovery cut off. On February 17, 2017, Judge Andrews indicated that the Special Master should resolve as much as possible for the parties to adhere to the Scheduling Order. During that hearing on February 17, 2017, Defendants counsel argued that they still didn't have adequate infringement contentions from Plaintiff. The Court stated that there comes a time when the Plaintiff cannot add new products and that the Defendants need to get a fixed target to try the case. (Trans. p. 11). With the parties scheduled for a July 10, 2017 claim construction ("Markman ") hearing, it is appropriate for Plaintiff to be as specific as possible to its infringement claims in its supplemental interrogatory responses.

At the Hearing on May 10, 2017, Defendants' argued that Plaintiff refuses to identify the core aspects (participants and connections) of even a single accused "broadcast channel" and/or "network". Defendants have submitted a declaration of a technical expert, David Karger, on the technical aspects of the patents in this case. Dr. Karger explains that some of the patents at issue relate to adding a participant or subtracting a participant to or from a network of participants and leaving the broadcast channel. One or more of the patents concerns methods for adding a participant to an m-regular, incomplete network of participants, while maintaining the m-regular incomplete topology of the network. Another patent simply reverses this process by allowing a disconnection of a computer or participant from a broadcast channel, while maintaining the m-regular incomplete topography of the broadcast channel.

Defendants also cite Plaintiff's expert's testimony that you need to know the structure, the participants, and how they are connected to determine infringement. (Hearing Transcript, p. 16).

In a somewhat analogous case, the Federal Court in California wrote: "In instances where [the Defendant] includes source code or tools, the source code or tools lack meaning unless somehow linked with the language of the claim limitations". *Droplets vs. Amazon.com*, 2013 WL 1563256, at 3-5 (N.D. Cal. April 12, 2013).

After having studied at length the briefs, exhibits, discovery responses and prior orders, the Defendants' Motion is granted as follows:

Within one month of this Order, Plaintiff shall provide as full, clear and complete responses as possible at that time to Interrogatories 7 and 9 that:

1. Identify, individually and with specificity, all accused methods, broadcast channels and networks, including by separately identifying each and every participant and connection for each such network or broadcast channel and explaining how each is alleged to be m-regular and incomplete;

2. Provide a separate infringement chart for each accused method, network and broadcast that demonstrates how each accused method step is allegedly performed by Activision and how each accused network and broadcast channel is alleged to meet each limitation of each asserted claim; and

3. If Plaintiff contends that any accused method, network or broadcast channel allegedly infringes any asserted claim under the doctrine of equivalents, Plaintiff must identify the elements of each limitation not literally present and identify the structures of or methods used by the accused products that Plaintiff alleges to be equivalent to any such elements that are not literally present in the accused products.

**DEFENDANTS' MOTION TO COMPEL SUPPLEMENTAL RESPONSES TO PARTIES SPECIFIC INTERROGATORIES 1, 2 AND 4**

1. <u>Interrogatory 1 Regarding Damages</u>: Interrogatory 1 seeks discovery as to Plaintiff's damages theories and all the facts that Plaintiff intends to reply upon to support each of its theories. Plaintiff replies that it has responded appropriately to Interrogatory 1 and that it will continue to supplement its responses as discovery proceeds. Defendants counter that they have made substantial production of all of their documents concerning damages. According to Defendants, Plaintiff has not indicated its methodology on damages; specifically whether it is relying on the number of units sold or revenues from such sales. Furthermore, according to

Defendants, the recent deposition of Boeing in this litigation, proves that Plaintiff already has a "damages model" that has not yet been disclosed to Defendants.

On this issue, Judge Robinson's decision *In Re. Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litigation*; No. 09-MD-2118-SLR (D. Del. Oct. 22, 2013) is helpful.  Writing as to why a defendant is entitled to facts as to plaintiff's damages claims prior to receiving plaintiff's expert's reports, Her Honor stated: "Facts are the subject of fact discovery, parties are required to disclose such facts before the facts are massaged and manipulated by their expert witnesses" . . . plaintiffs have an "obligation to provide their good faith bases for electing their theories of recovery".

The Defendants' Motion for supplemental response to Interrogatory 1 is granted, and a supplemental response to interrogatory 1 is due in 14 days.  If subsequent discovery leads to additional information on damages, Plaintiff can further supplement its interrogatory response.

2.  <u>Interrogatory No. 2 Regarding the Date of the Hypothetical Negotiation</u>:  The hypothetical negotiation date is relevant to Plaintiff's damages claims.   The hypothetical negotiation date is the date that the alleged infringements first occurred.  Defendants maintain that they need to know the exact date of the alleged infringement for each of the Defendants' products that are at issue in the case.

Plaintiff has responded that it cannot fully respond to Interrogatory No. 2, until it gets documents from the Defendants as to testing and development dates for Defendants' products.  Plaintiff contends that some of this information will be known after depositions that are currently scheduled for later this month.

Defendants' concerns are persuasive, particularly in light of the discovery cut-off date and their possible need for discovery when any responsive interrogatory filings are made. Defendants' Motion is granted and Plaintiff shall supplement interrogatory No. 2 within 14 days.

3. <u>Interrogatory No. 4 Regarding Sony Products That Infringe</u>: This interrogatory seeks facts concerning the Sony Products that Plaintiff may contending infringed the patents in question. Plaintiff initially objects that the interrogatory is "unintelligible", particularly as to what is meant by "all products by Sony". Defendants respond by pointing out that Plaintiff's expert, Dr. Harry Bims, discussed the Sony Products in his declarations in the IPR proceedings. Dr. Bims stated that Sony utilizes the inventions disclosed in the patents.

Plaintiff attempted to use Dr. Bims' testimony as to the Sony Products in order to defend against invalidity arguments. Plaintiff points out that Dr. Bims never expressly stated that Sony infringed. Plaintiff also argues that it would be burdensome to respond to this interrogatory, since there are hundreds of Sony video games.

The information as to the Sony Products in interrogatory No. 4 is relevant and a response does not appear to be unnecessarily burdensome. The motion to compel supplemental responses to interrogatory no. 4 is granted and it shall be filed within 14 days.

**CROSS MOTIONS FOR SANCTIONS**

Activision moved on April 28, 2017 for sanctions under Rule 37. In its May 8, 2017 reply brief in opposition to Activision's motion to compel, Plaintiff seeks its attorneys fees in opposing the motion for sanctions. For convenience, the Special Master treats these as cross motions for sanctions.

Sanctions can be levied against a party that fails to comply with court ordered discovery. Sanctions can include preventing a party from introducing evidence, striking claims, and relief appropriate to the misconduct. *Transportes Aereos De Angela v. Ronair, Inc.*, 104 F.R.D. 499 (D. Del. 1985). However, such relief usually resides with the Court, rather than the Special Master.

As set forth above, the Special Master is ordering Plaintiff to supplement its responses to a number of interrogatories in a specific and complete manner. Interrogatory response obligations continue as new discovery proceeds and supplemental responses are appropriate.

## DEFENDANTS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS TO SCOTT SMITH AND ROBERT ABARBANEL

Defendants contend that Smith and Abarbanel are the most knowledgeable witnesses regarding certain key issues in this case, including when the patents where supposedly invented and built, and whether they are invalid as having been "on sale" more than one year prior to the date they were filed. Exhibit C-11 to Defendants' brief on this Motion states that Smith and Abarbanel "witnessed the Boeing Invention Disclosure Form", which Defendants contend is the sole document which supports the supposed conception and reduction to practice of the claimed inventions. Mr. Abarbanel was the direct supervisor of inventor Bourassa and was directly involved with Boeing's efforts to license the patents. Both Smith and Abarbanel submitted testimony in support of the patent as Owner's Response to Related Proceedings Before the Patent Office (called "IPRs"). These declarations are exhibits C-3, C-4, C-5, C-6, C-7 and C-8 to Defendants' brief. Smith has declared in some of the exhibits that he also was employed at Boeing and worked with the inventors of the asserted patents.

Plaintiff's grounds for resisting these subpoenas are that both gentlemen were subject to cross examination in the IPR proceedings and that they were not listed in certain Defendants' initial disclosures. Both objections are unpersuasive. The scope of IPR cross examinations under the IPR rules is limited. As to the burden of a deposition, neither Smith nor Abarbanel has provided any written objections.

It is clear to the Special Master that both gentlemen may have testimony relevant to this litigation. Accordingly, Special Master grants Defendants' Motion to Compel Compliance with subpoenas to Smith and Abarbanel.

Dated:  May 19, 2017                                  */s/ Allen M. Terrell, Jr.*
                                                      Allen M. Terrell, Jr., Special Master