IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACCELERATION BAY LLC,<br><br>Plaintiff,<br><br>v.<br><br>ACTIVISION BLIZZARD, INC.<br><br>Defendant. | Civil Action No. 16-453-RGA |
| ACCELERATION BAY LLC,<br><br>Plaintiff,<br><br>v.<br><br>ELECTRONIC ARTS INC.<br><br>Defendant. | Civil Action No. 16-454-RGA |
| ACCELERATION BAY LLC,<br><br>Plaintiff,<br><br>v.<br><br>TAKE-TWO INTERACTIVE SOFTWARE, INC., ROCKSTAR GAMES, INC., AND 2K SPORTS, INC.<br><br>Defendants. | Civil Action No. 16-455-RGA |

## MEMORANDUM ORDER

Presently before me is a Motion to Dismiss for Lack of Standing by Defendants Activision Blizzard, Inc., Electronic Arts Inc., Take-Two Interactive Software, Inc., Rockstar Games, Inc., and 2K Sports, Inc. (collectively, "Defendants"). (C.A. No. 16-453, D.I. 18; C.A.

No. 16-454, D.I. 19; C.A. No. 16-455, D.I. 20).[1] The motion seeks to "dismiss all claims related to games used on Sony platforms." (C.A. No. 16-453, D.I. 18; C.A. No. 16-454, D.I. 19; C.A. No. 16-455, D.I. 20). I have considered the parties' briefing. (D.I. 19, 27, 32). I held oral argument on July 10, 2017. (D.I. 235 ("Tr.")).

## I. DISCUSSION

Plaintiff argues that the motion is procedurally improper as "an unauthorized serial motion to dismiss." (D.I. 27 at p. 2 n.3). I disagree. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'"); Fed. R. Civ. P. 12(g)(2) ("*Except as provided in Rule 12(h)(2) or (3)*, a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.") (emphasis added); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

The issue arises because the prior owner of the asserted patents,[2] Boeing, licensed them to Sony in 2006. The licensing was accomplished pursuant to a Patent License Agreement. Section 1.3 of the agreement defines the "Field of Use" for the asserted patents "as technology, applications or services capable of running on or interacting with SONY gaming platform, PlayStation platform or PlayStation OS and the SONY Software Development Kit . . . ." (D.I. 20-1 at 3, 13). Section 2.1 grants Sony Computer Entertainment America Inc. a "nonexclusive, nontransferable license under the [asserted patents] within the Field of Use . . . ." (D.I. 20-1 at

---

[1] All further references are only to the record in C.A. No. 16-453, unless otherwise provided.
[2] U.S. Patent No. 6,701,344; U.S. Patent No. 6,714,966; U.S. Patent No. 6,732,147; U.S. Patent No. 6,829,634; U.S. Patent No. 6,910,069; and U.S. Patent No. 6,920,497. (*See* D.I. 1 ¶ 10).

2

4). Section 2.1 also gives Sony the right to grant sublicenses to Sony's "Third Party developers, publishers, Affiliates and end-users of Products which shall be limited to the Field of Use." (D.I. 20-1 at 4). Plaintiff's briefing does not dispute that Defendants are videogame publishers that publish games on the Sony gaming platforms and therefore fall within Section 2.1. (*See generally* D.I. 27). Section 2.4 provides, "Except as expressly set forth herein, no additional license, grant or working right is granted or implied by this Agreement." (D.I. 20-1 at 4).

Defendants argue that, because Sony had the ability since late 2006 to grant a license to Defendants, this is enough to deprive Plaintiff of standing under *WiAV Sols. LLC v. Motorola, Inc.*, 631 F.3d 1257, 1266–67 (Fed. Cir. 2010).[3]

The Federal Circuit has addressed the issue presented, albeit in a slightly different context. I do not think the different context changes the analysis or the conclusion. This is what the court stated:

> Because an exclusive licensee derives its standing from the exclusionary rights it holds, it follows that its standing will ordinarily be coterminous with those rights. Depending on the scope of its exclusionary rights, an exclusive licensee may have standing to sue some parties and not others. For example, an exclusive licensee lacks standing to sue a party for infringement if that party holds a preexisting license under the patent to engage in the allegedly infringing activity. Similarly, an exclusive licensee lacks standing to sue a party who has the ability to obtain such a license from another party with the right to grant it. In both of these scenarios, the exclusive licensee does not have an exclusionary right with respect to the alleged infringer and thus is not injured by that alleged infringer. But if an exclusive licensee has the right to exclude others from practicing a patent, and a party accused of infringement does not possess, and is incapable of obtaining, a license of those rights from any other party, the exclusive licensee's exclusionary right is violated.
>
> . . . .
>
> With these principles in mind, the key question in determining whether WiAV has

---

[3] As a side note, Defendants assert they have actual licenses (Tr. 37:2–12), and have produced them. (Tr. 47:8–24). Plaintiff disputes that any actual licenses have been produced. (Tr. 47:3–13). It disappoints me that the parties cannot agree on whether licenses have or have not actually been produced.

3

> standing to assert the Mindspeed Patents against the Defendants is not, as the
> Defendants would have it, whether WiAV has established that it has the right to
> exclude *all* others from practicing the patent. The question is whether WiAV has
> shown that it has the right under the patents to exclude *the Defendants* from
> engaging in the alleged infringing activity and therefore is injured by the
> Defendants' conduct.

*Id.* I think if we edit this and make a few substitutions, its applicability will become clearer.

> Because [plaintiff] derives its standing from the exclusionary rights it holds, it
> follows that its standing will ordinarily be coterminous with those rights.
> Depending on the scope of its exclusionary rights, a [plaintiff] may have standing
> to sue some parties and not others. For example, a [plaintiff] lacks standing to sue
> a party for infringement if that party holds a preexisting license under the patent
> to engage in the allegedly infringing activity. Similarly, a [plaintiff] lacks
> standing to sue a party who has the ability to obtain such a license from another
> party with the right to grant it. In both of these scenarios, the [plaintiff] does not
> have an exclusionary right with respect to the alleged infringer and thus is not
> injured by that alleged infringer. But if a [plaintiff] has the right to exclude others
> from practicing a patent, and a party accused of infringement does not possess,
> and is incapable of obtaining, a license of those rights from any other party, the
> [plaintiff]'s exclusionary right is violated.
>
> . . . .
>
> With these principles in mind, the key question in determining whether
> [Acceleration Bay] has standing to assert the [Boeing] Patents against the
> Defendants is not, as the Defendants would have it, whether [Acceleration Bay]
> has established that it has the right to exclude *all* others from practicing the
> patent. The question is whether [Acceleration Bay] has shown that it has the right
> under the patents to exclude *the Defendants* from engaging in the alleged
> infringing activity and therefore is injured by the Defendants' conduct.

Plaintiff asserts that this is "dicta." (D.I. 27 at p. 4). Plaintiff does not explain the basis for the assertion. It primarily argues that the opinion should not be understood to address "past infringement." (*Id.* at p. 3). The best point made in support of that argument is that if it did, "then once a patent holder granted a third party a right to sublicense a patent, the patent would become completely unenforceable with the scope of that right to sublicense." (*Id.* at p. 4).

I do not think it is dicta. The issue in *WiAV* was whether the plaintiff could sue the defendants. The court explained the relevant law, and then applied it to the record facts of the

4

case. That case dealt with past infringement. *See WiAV*, 631 F.3d at 1262. That case also analyzed whether Defendants could have obtained licenses from various third party entities. *Id.* at 1267–68. The District Court dismissed, and the Federal Circuit reversed, reasoning that the defendants could not get a license from any of the third parties who had a limited right to grant a license. I think the implication was that if the third parties had the ability to issue a license to defendants, then the plaintiff would not have standing to sue. *See id.*

As to Plaintiff's point that this would render the patent completely unenforceable within the scope of the right to sublicense, I do not think it is well-taken. I think the contract reflects an intent by Boeing not to go after any of Sony's potential licensees within the Field of Use. (*See* D.I. 20-1 at 4). I also think, by the way the language was drafted, that Boeing surrendered its right to enforce the patent with respect to Sony's potential licensees within the Field of Use. This does not offend public policy or patent law because a patentee should not be allowed to enforce that which it surrendered. If Boeing wanted to enforce the patent against Sony's potential licensees, it could have bargained for different language with Sony.

Defendants had the ability to obtain a license from Sony at all relevant times because Sony could have granted Defendants licenses as of late 2006. (*See* D.I. 20-1 at 4). Because of this, Plaintiff has not shown that it had the right under the patents to exclude the Defendants from engaging in the alleged infringing activity. It therefore could not have been injured as a result. Plaintiff lacks standing to sue Defendants with respect to games covered by the Sony license.

Plaintiff argues that *Adaptix, Inc. v. T-Mobile USA, Inc.*, No. 6:12-cv-00369, Memorandum Order Adopting the Report and Recommendation of the U.S. Magistrate Judge at 3–4 (E.D. Tex. Nov. 5, 2014), stands for the proposition that a licensee's ability to grant royalty free sublicenses to a defendant at the time a case was filed does not render illusory the

owner/licensor's standing to bring suit against that defendant. This citation is not persuasive for this proposition because it does not mention, let alone discuss, *WiAV*.

Alternatively, even if this was not enough to defeat standing, Defendants also have the ability to obtain a retroactive license from Sony. The license agreement evinces the intent to give Sony the rights necessary to protect their "Third Party developers, publishers, Affiliates and end-users of Products" within the Field of Use. (D.I. 20-1 at 4). Consistent with that intent, Section 2.1 broadly confers Sony sublicensing rights, including the right to issue retroactive licenses to protect those entities. (D.I. 20-1 at 4). Section 2.4 does not apply because Section 2.1 expressly provides Sony with the right to issue licenses without limitation, whether prospective or retroactive.

Plaintiff argues that *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456 (Fed. Cir. 1998) bars retroactive licenses. I understand *Ethicon* to be confined to "the scope of licensing rights in the context of co-ownership, not sole ownership" and that it does not reflect an "intent to restrict a sophisticated patent holder's right to negotiate and issue a broad license agreement granting both retrospective and prospective rights." *Canon Inc. v. Tesseron Ltd.*, 146 F. Supp. 3d 568, 577 (S.D.N.Y. 2015). Because there is no hint that this is a co-ownership case, there is no legal bar against retroactive licenses. *See id.* ("[T]he arguments against retroactive patent licensing have real force only in the context of co-ownership."). Thus, because Defendants have the ability now to obtain a retroactive license, there cannot be standing with respect to the Sony license. *See WiAV*, 631 F.3d at 1266.

///

///

6

## II. CONCLUSION

Defendant's Motion to Dismiss for Lack of Standing (No. 16-453, D.I. 18; No. 16-454, D.I. 19; No. 16-455, D.I. 20) is **GRANTED** with respect to all claims related to games used on Sony platforms. It is **SO ORDERED** this 14 day of August, 2017.

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　United States District Judge