IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACCELERATION BAY LLC,<br><br>Plaintiff,<br><br>v.<br><br>ACTIVISION BLIZZARD, INC.<br><br>Defendant. | Civil Action No. 16-453-RGA |
| ACCELERATION BAY LLC,<br><br>Plaintiff,<br><br>v.<br><br>ELECTRONIC ARTS INC.<br><br>Defendant. | Civil Action No. 16-454-RGA |
| ACCELERATION BAY LLC,<br><br>Plaintiff,<br><br>v.<br><br>TAKE-TWO INTERACTIVE SOFTWARE, INC., ROCKSTAR GAMES, INC., AND 2K SPORTS, INC.<br><br>Defendants. | Civil Action No. 16-455-RGA |

### MEMORANDUM OPINION

Philip A. Rovner, Jonathan A. Choa, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Paul J. Andre, Lisa Kobialka, Hannah Lee, KRAMER LEVIN NAFTALIS & FRANKEL LLP, Menlo Park, CA; Aaron Frankel, KRAMER LEVIN NAFTALIS & FRANKEL LLP, New York, NY.

Attorneys for Plaintiff.

Jack B. Blumenfeld, Stephen J. Kraftschik, MORRIS, NICHOLS, ARSHT & TUNNEL LLP, Wilmington, DE; Michael A. Tomasulo, Gino Cheng, David K. Lin, Joe S. Netikosol, WINSTON & STRAWN LLP, Los Angeles, CA; David P. Enzminger, WINSTON & STRAWN LLP, Menlo Park, CA; Dan K. Webb, Kathleen B. Barry, WINSTON & STRAWN LLP, Chicago, IL.

Attorneys for Defendants.

August 29, 2017

**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before me is the issue of claim construction of multiple terms in U.S. Patent No. 6,701,344 (the "'344 patent"), U.S. Patent No. 6,714,966 (the "'966 patent"), U.S. Patent No. 6,829,634 (the "'634 patent"), U.S. Patent No. 6,910,069 (the "'069 patent"), U.S. Patent No. 6,732,147 (the "'147 patent"), and U.S. Patent No. 6,920,497 (the "'497 patent"). I have considered the parties' Joint Claim Construction Brief (D.I. 186)[1] and supplemental letters. (D.I. 220; D.I. 222; D.I. 225; D.I. 237; D.I. 240). I issued an order limiting the issues to the eight means-plus-function terms and the three "m" terms found on pages 1–23 and 26–51 of the Joint Claim Construction Brief. (D.I. 206). I held oral argument on July 10, 2017. (D.I. 219 ("Tr.")).

## I. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324) (alteration in original). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted).

---

[1] Citations to "D.I. ___" are to the docket in C.A. No. 16-453 unless otherwise noted.

3

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (citations and internal quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19. Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GMBH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (citation omitted).

4

## II. BACKGROUND

The following claims are the most relevant for the purposes of this Markman.

**Claim 1 of the '344 Patent**

1. A computer network for providing a game environment for a plurality of participants, each participant having connections to at least three neighbor participants, wherein an originating participant sends data to the other participants by sending the data through each of its connections to its neighbor participants and wherein each participant sends data that it receives from a neighbor participant to its other neighbor participants, further wherein the network is m-regular, where m is the exact number of neighbor participants of each participant and further wherein the number of participants is at least two greater than m thus resulting in a non-complete graph.

(D.I. 117-2, Exh. A-1 ("'344 patent"), claim 1).

**Claim 13 of the '344 Patent**

13. A distributed game system comprising:

a plurality of broadcast channels, each broadcast channel for playing a game, each of the broadcast channels for providing game information related to said game to a plurality of participants, each participant having connections to at least three neighbor participants, wherein an originating participant sends data to the other participants by sending the data through each of its connections to its neighbor participants and wherein each participant sends data that it receives from a neighbor participant to its neighbor participants, further wherein the network is m-regular, where m is the exact number of neighbor participants of each participant and further wherein the number of participants is at least two greater than m thus resulting in a non-complete graph;

means for identifying a broadcast channel for a game of interest; and

means for connecting to the identified broadcast channel.

('344 patent, claim 13).

**Claim 9 of the '497 Patent**

9. A component in a computer system for locating a call-in port of a portal computer, comprising:

means for identifying the portal computer, the portal computer having a dynamically selected call-in port for communicating with other computers;

5

means for identifying the call-in port of the identified portal computer by repeatedly trying to establish a connection with the identified portal computer through contacting a communications port or communications ports until a connection is successfully established;

means for selecting the call-in port of the identified portal computer using a port ordering algorithm; and

means for re-ordering the communications ports selected by the port ordering algorithm.

(D.I. 117-2, Exh. A-6 ("'497 patent"), claim 9).

## III. TERMS FOR CONSTRUCTION

**1. Term 4: "means for connecting to the identified broadcast channel" (claim 13 of the '344 patent; claim 13 of the '966 patent)**

   a. *Plaintiff's proposed construction*:

   Function: Connecting a participant to an identified broadcast channel

   '966 Structure: A processor programmed to perform at least one of the algorithms disclosed in steps 801 to 806 in Figure 8 and described in the '966 Patent at 18:3–19:22 or Figures 3A and 3B and described in the '966 Patent at 5:32–52, which involves invoking the connecting routine with the identified broadcast channel's type and instance, connecting to the broadcast channel, connecting to a neighbor, and connecting to a fully connected state

   '344 Structure: A processor programmed to perform at least one of the algorithms disclosed in steps 801 to 806 in Figure 8 and described in the '344 Patent at 17:67–18:47 or Figures 3A and 3B and described in the '344 Patent at 5:33–55, which involves invoking the connecting routine with the identified broadcast channel's type and instance, connecting to the broadcast channel, connecting to a neighbor, and connecting to a fully connected state

   b. *Defendants' proposed construction*:

   Function: Connecting to the identified broadcast channel

   Structure: Indefinite because no/insufficient algorithm disclosed

   c. *Court's construction*:

   Function: Connecting to the identified broadcast channel

'966 Structure: A processor programmed to perform at least one of the algorithms disclosed in steps 801 to 809 in Figure 8 and described in the '966 Patent at 18:3-20:9, 20:41–21:19, 21:46–22:28, 23:37–24:49, and Figures 9, 11, 13, 14, 17 and 18, or Figures 3A and 3B and described in the '966 Patent at 5:32–52, which involves invoking the connecting routine with the identified broadcast channel's type and instance, connecting to the broadcast channel, connecting to a neighbor, and connecting to a fully connected state

'344 Structure: A processor programmed to perform at least one of the algorithms disclosed in steps 801 to 809 in Figure 8 and described in the '344 Patent at 17:67–19:34, 19:66–20:44, 21:4–53, 22:61–24:6, and Figures 9, 11, 13, 14, 17 and 18, or Figures 3A and 3B and described in the '344 Patent at 5:33–55, which involves invoking the connecting routine with the identified broadcast channel's type and instance, connecting to the broadcast channel, connecting to a neighbor, and connecting to a fully connected state

The claims require a "means for connecting to the identified broadcast channel." (*See, e.g.*, '344 patent, claim 13). Plaintiff provides no basis for its proposed function language. (D.I. 186 at p. 32). Plaintiff further agrees with using "the." (Tr. 106:9–12). Thus, I adopt Defendants' function including the "the" language.

The specification describes Figure 8 as a "flow diagram[] illustrating the processing of the broadcaster component in one embodiment." (*See, e.g.*, D.I. 117-2, Exh. A-2 ("'966 patent"), 18:2–3). It "illustrat[es] the processing of the connect routine . . . ." (*See, e.g.*, '966 patent, 18:3–5). Thus, the specification describes all of Figure 8 as the structure for "connecting to the identified broadcast channel." The algorithm in Figure 8 is further fleshed out by Figures 9, 11, 13, 14, 17 and 18 and their corresponding descriptions in the specification. (*See, e.g.*, '966 patent, 18:3–20:9, 20:41–21:19, 21:46–22:28, 23:37–24:49). Block 806 is therefore relevant to the connecting function that is claimed. I think Figure 8, considered as a whole, and its accompanying disclosures, are "integral to performing the stated function." *See Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1362 (Fed. Cir. 2004).

7

The specification describes Figures 3A and 3B as "illustrat[ing] the process of a new computer Z connecting to the broadcast channel." (*See, e.g.*, '966 patent, 5:62–63). The specification also provides a description of the process. (*See, e.g.*, '966 patent, 5:32–52). Thus, this portion of the specification also serves as structure for the function. Overall, the specification adequately discloses structure for the function, and thus, the claims are not indefinite.

## 2. Term 1: "means for identifying a broadcast channel for a game of interest" (claim 13 of the '344 patent)

a. *Plaintiff's proposed construction*:

Function: Identifying a broadcast channel for a game of interest

Structure: A processor programmed to perform the algorithm disclosed in steps described in the '344 Patent at 16:57-17:1, which involves connecting to a web server and downloading a broadcaster component that identifies the broadcast channel for the game of interest

b. *Defendants' proposed construction*:

Function: Identifying a broadcast channel for a game of interest

Structure: Indefinite because no/insufficient algorithm disclosed

c. *Court's construction*:

Function: Identifying a broadcast channel for a game of interest

Structure: A processor programmed to perform the algorithm disclosed in steps described in the '344 Patent at 16:57–17:1, which involves connecting to a web server and downloading a broadcaster component that identifies the broadcast channel for the game of interest

Plaintiff's citation to column 16, line 57 to column 17, line 1 of the '344 patent provides adequate structure for the function of "identifying a broadcast channel for a game of interest." This structure teaches that the game environment can provide a game web site through which players can view the state of current games and register new games. ('344 patent, 16:57–59). It

8

teaches that using the game web server maps each game with the broadcast channel on which the game is to be played. ('344 patent, 16:59–61). It teaches that using the web server generates the channel type and channel instance associated with the game and the identification of the portal computers for the game. ('344 patent, 16:65–17:1). This structure specifically provides a way to identify a broadcast channel for a game of interest.

3. **Term 2: "means for identifying a game of interest includes accessing a web server that maps games to corresponding broadcast channel" (claim 14 of the '344 patent)**

    a. *Plaintiff's proposed construction*: "Means for identifying a game of interest" is construed in Term 1. No further construction necessary.

    b. *Defendants' proposed construction*:

    Function: Identifying a game of interest includes accessing a web server that maps games to corresponding broadcast channel

    Structure: Indefinite because no/insufficient algorithm disclosed

    c. *Court's construction*:

    Function: Identifying a game of interest includes accessing a web server that maps games to corresponding broadcast channel

    Structure: A processor programmed to perform the algorithm disclosed in steps described in '344 Patent at 16:57–17:1, which involves connecting to a web server and downloading a broadcaster component that identifies the broadcast channel for the game of interest

Defendant's proposed function accurately captures that the function requires accessing a web server that maps games to a corresponding broadcast channel. As discussed above in Part III.2, column 16, line 57 to column 17, line 1 provides sufficient structure to perform this function. This structure teaches that the game environment can provide a game web site through which players can view the state of current games and register new games. ('344 patent, 16:57–59). It teaches that using the game web server maps each game with the broadcast channel on which the game is to be played. ('344 patent, 16:59–61).

9

4. **Term 3: "means for identifying a broadcast channel for a topic of interest" (claim 13 of the '966 patent)**

    a. *Plaintiff's proposed construction*:

    Function: Identifying a broadcast channel for a topic of interest

    Structure: A processor programmed to perform the algorithm disclosed in steps described in '966 Patent at 16:41–51, which involves connecting to a web server and downloading a broadcaster component that identifies the broadcast channel for a topic of interest

    b. *Defendants' proposed construction*:

    Function: Identifying a broadcast channel for a topic of interest

    Structure: Indefinite because no/insufficient algorithm disclosed

    c. *Court's construction*:

    Function: Identifying a broadcast channel for a topic of interest

    Structure: A processor programmed to perform the algorithm disclosed in steps described in '966 Patent at 16:41–51, which involves connecting to a web server and downloading a broadcaster component that identifies the broadcast channel for a topic of interest

    The analysis here is similar to that discussed in Part III.2. The '966 patent provides:

    > The information delivery service may provide a directory web site where consumers can locate and subscribe to broadcast channels of interest. The directory may provide a hierarchical organization of topics of the various broadcast channels. When a user decides to subscribe to a broadcast channel, the broadcaster component and information delivery service application program may be downloaded to the user's computer if not already available on the user's computer. Also, the channel type and channel instance associated with that broadcast channel and the identification of the portal computers for that broadcast channel may be downloaded to the subscriber's computer.

    ('966 patent, 16:41–51). This structure specifically provides a way to identify a

    broadcast channel for a topic of interest.

5. **Term 5: "means for identifying the portal computer" (claim 9 of the '497 patent)**

    a. *Plaintiff's proposed construction*:

    Function: Identifying a portal computer using a dynamically selected call-in port

Structure: A processor programmed to perform the algorithm described in the '497 Patent at 12:34–36 and 12:49–52, which involves performing the steps of the seeking computer having a list of portal computers to connect to and selecting the port number of the portal computer using a port-ordering algorithm

b. *Defendants' proposed construction*:

Function: Identifying the portal computer

Structure: Indefinite because no/insufficient algorithm disclosed

c. *Court's construction*:

Function: Identifying a portal computer

Structure: A processor programmed to perform the algorithm described in the '497 Patent at 12:34–36 and 12:49–52, which involves performing the steps of the seeking computer having a list of portal computers to connect to and selecting the port number of the portal computer using a port-ordering algorithm

Defendant's proposed function more accurately reflects the claim language, which does not require that the portal computer use its dynamically selected call-in port, but merely requires that the portal computer have a dynamically selected call-in port. ('497 patent, claim 9 ("means for identifying the portal computer, the portal computer having a dynamically selected call-in port for communicating with other computers")). Plaintiff's citations to column 12, lines 34–36 and column 12, lines 49–52 of the '497 patent provide structure that adequately corresponds to Defendants' function. Column 12, lines 34–36 provides, "Each computer that can connect to the broadcast channel has a list of one or more portal computers through which it can connect to the broadcast channel." ('497 patent, 12:34–36). Column 12, lines 49–52 provides that a computer can select a port number according to an algorithm and dial each portal computer at that port number. ('497 patent at 12:49–52). It is readily apparent that these citations provide a specific way for a computer to select a port number of the portal computer from that list, and thus,

11

"identify" the portal computer. I think these disclosures, considered as a whole, are "integral to performing the stated function." *See Gemstar-TV*, 383 F.3d at 1362.

6. **Term 6: "means for identifying the call-in port of the identified portal computer by repeatedly trying to establish a connection with the identified portal computer through contacting a communications port or communications ports until a connection is successfully established" (claim 9 of the '497 patent)**

    This term is resolved. (D.I. 213).

7. **Term 7: "means for selecting the call-in port of the identified portal computer using a port ordering algorithm" (claim 9 of the '497 patent)**

    a. *Plaintiff's proposed construction*:

    Function: Selecting the call-in port of the identified portal computer using a port ordering algorithm

    Structure: A processor programmed to perform the algorithm described in the '497 Patent at 11:60–12:12, which involves performing the steps of using a port ordering algorithm for selecting the call in port of the identified portal computer by using an algorithm that provides a sequence of port numbers

    b. *Defendants' proposed construction*:

    Function: Selecting the call-in port of the identified portal computer using a port ordering algorithm

    Structure: Indefinite because no/insufficient algorithm disclosed

    c. *Court's construction*:

    Function: Selecting the call-in port of the identified portal computer using a port ordering algorithm

    Structure: A processor programmed to perform the algorithm described in the '497 Patent at 11:60–12:12, which involves performing the steps of using a port ordering algorithm for selecting the call in port of the identified portal computer by using an algorithm that provides a sequence of port numbers

    Plaintiff's citation of column 11, line 60 to column 12, line 12 of the '497 patent provides

structure that adequately corresponds to the function. The cited portion of the specification

provides that the computer uses a port ordering algorithm to identify the port number order when

12

a portal computer is finding an available port for its call-in port. ('497 patent, 11:60–64). This algorithm may be a hashing algorithm. ('497 patent, 11:64–65). The specification teaches that the algorithm preferably randomly distributes the port number ordering throughout the user port number space and only selects each port number once. ('497 patent, 11:65–12:1). The algorithm may be "seeded" with channel type and channel instance in order to make unique orderings of the port numbers. ('497 patent, 12:7–9). These citations provide a specific way to select the call-in port of the identified portal computer using a port ordering algorithm.

## 8. Term 8: "means for re-ordering the communications ports . . ." (claim 9 of the '497 patent)

   a. *Plaintiff's proposed construction*:

   Function: Re-ordering the communications ports selected by the port ordering algorithm

   Structure: A processor programmed to perform the algorithm described in the '497 Patent at 12:18–12:28, which involves performing the steps of using the call-in port number generated by the port ordering algorithm, and if the connection is unsuccessful, reordering the communication ports

   b. *Defendants' proposed construction*:

   Function: Re-ordering the communications ports selected by the port ordering algorithm

   Structure: Indefinite because no/insufficient algorithm disclosed

   c. *Court's construction*:

   Function: Re-ordering the communications ports selected by the port ordering algorithm

   Structure: A processor programmed to perform the algorithm described in the '497 Patent at 12:18–12:28, which involves performing the steps of using the call-in port number generated by the port ordering algorithm, and if the connection is unsuccessful, reordering the communication ports

Plaintiff's citation to column 12, line 18 to column 12, line 28 provides structure that adequately corresponds to the function. This citation provides that in one embodiment, seeking computers may reorder the first few port numbers created by a hashing algorithm. ('497 patent,

12:18–20). This could be implemented through a weighted method. ('497 patent, 12:24–26). These citations allow a computer to re-order the communications ports selected by the port ordering algorithm.

9. **Term 17: "m-regular" and "m-regular network" (claims 1, 13, 18 of the '344 patent; claims 1 and 13 of the '966 patent; claims 1 and 19 of the '634 patent; claims 1 and 11 of the '147 patent)**

   a. *Plaintiff's proposed construction*: A network where each participant has m neighbor participants in a steady state

   b. *Defendants' proposed construction*:

   For the '344, '966, and '634 patents: A state that the network seeks to maintain at all times, where each participant is connected to exactly m neighbor participants

   For the '147 patent: A state that the network seeks to maintain at all times, where each computer is connected to exactly m neighbor computers

   c. *Court's construction*:

   For the '344, '966, and '634 patents: A state that the network is configured to maintain, where each participant is connected to exactly m neighbor participants

   For the '147 patent: A state that the network is configured to maintain, where each computer is connected to exactly m neighbor computers

Plaintiff's only concern with my construction is that it seeks clarification that it would not read out a configuration which allows states where the network is not in a "steady state." (Tr. 70:14–72:13). Plaintiff argues that a network is not in a "steady state" when the network is not configured such that each participant is connected to exactly m neighbors. (*Id.*). This concern is resolved by taking out Defendants' language of "at all times." My construction does not require the network to have each participant be connected to m neighbors at all times; rather, the network is configured (or designed) to have each participant be connected to m neighbors. In other words, if the network does not have each participant connected to m neighbors, this is fine so long as, when appropriate, it tries to get to that configuration.

14

Defendants are largely in agreement with my construction although they prefer the "at all times" language. Defendants concede that their intention with the "at all times" language is not to indicate that the network had to be m-regular at all times. (Tr. 73:13–21). I am taking out the "at all times" language because it could be misleading to a jury.

Defendants also prefer the word "seeks" over "configured." Defendants concede that they do not seek to impose an intent requirement. (D.I. 186 at p. 22). I think that "seeks" improperly connotes an intent element more so than the word "configured." Using the word "configured" resolves Defendants' concerns about networks that appear m-regular by chance.

## 10. Term 16: "m" (claims 1 and 13 of the '344 patent; claims 1 and 13 of the '966 patent; claims 1 and 19 of the '634 patent; claims 1 and 11 of the '147 patent)

a. *Plaintiff's proposed construction*: No construction necessary. Plain and ordinary meaning.

b. *Defendants' proposed construction*:

For the '344, '966, '634, and '069 patents: A predetermined design parameter specifying the number of neighbors each participant should maintain

For the '147 patent: A predetermined design parameter specifying the number of neighbors each computer should maintain

c. *Court's construction*: No construction necessary. Plain and ordinary meaning.

The plain language of the claims provides a ready definition for the concept of "m" at least when used in isolation. The claims expressly define "m" as "the exact number of neighbor participants of each participant." (*See, e.g.*, '344 patent, claim 1). A person of ordinary skill in the art would understand that this is the plain meaning of the word "m." (*See* D.I. 157-1, Exh. F. ¶ 44). The plain and ordinary meaning of "m" does not suggest that the word "m," at least when used in isolation, is a "predetermined design parameter."

///

## 11. Term 18: "m-connected" and "m-connected network" (claim 1 and 19, '634 patent)

a. *Plaintiff's proposed construction*: A network that may be divided into disconnected sub-networks by the removal of m participants in a steady state

b. *Defendants' proposed construction*: A state that the network seeks to maintain at all times, where dividing the network into two or more separate parts would require the removal of at least m participants

c. *Court's construction*: A state that the network is configured to maintain, where the network may be divided into disconnected sub-networks by the removal of m participants in a steady state

Plaintiff objects to Defendants' proposed construction because it uses the words "seeks," "at all times," "parts," and "two or more." For the reasons given above in connection with the previous term, I am changing "seeks" to "is configured" and striking "at all times" from Defendants' proposed construction. Plaintiff argues, and Defendants do not dispute in their briefing, that Defendants' usage of "parts" is less precise than "sub-networks" as proposed by Plaintiff. (*See* D.I. 186 at p. 27). Plaintiff argues, and Defendants also do not dispute, that the "two or more" language is superfluous. (*See* D.I. 186 at p. 27). Thus, I partially adopt Plaintiff's proposed construction.

## IV. CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion.