ACCELERATION BAY LLC,

    Plaintiff,

    v.

ACTIVISION BLIZZARD, INC.

    Defendant.

Civil Action No. 16-453-RGA

---

ACCELERATION BAY LLC,

    Plaintiff,

    v.

ELECTRONIC ARTS INC.

    Defendant.

Civil Action No. 16-454-RGA

---

ACCELERATION BAY LLC,

    Plaintiff,

    v.

TAKE-TWO INTERACTIVE SOFTWARE,
INC., ROCKSTAR GAMES, INC., AND 2K
SPORTS, INC.

    Defendants.

Civil Action No. 16-455-RGA

## MEMORANDUM ORDER

Presently before me is a Motion to Dismiss U.S. Patent Nos. 6,701,344 (the "'344

patent"), 6,714,966 (the "'966 patent"), and 6,829,634 (the "'634 patent") by Defendants

Activision Blizzard, Inc., Electronic Arts Inc., Take-Two Interactive Software, Inc., Rockstar

Games, Inc., and 2K Sports, Inc. (collectively, "Defendants"). (C.A. No. 16-453, D.I. 21; C.A.

No. 16-454, D.I. 22; C.A. No. 16-455, D.I. 23).[1] I have considered the parties' briefing. (D.I.

22; D.I. 28; D.I. 33). Defendants contend that all claims of the '344 and '966 patents, and claims

1–18 of the '634 patents (collectively, the "Broadcast Claims") are invalid for lack of patent-

eligible subject matter under 35 U.S.C. § 101. (D.I. 21). I held oral argument on July 10, 2017.

(D.I. 235 ("Tr.")).

## I.    BACKGROUND

Plaintiff's briefing does not dispute that Claim 1 from each of the '344, '966, and '634

patents is representative. (*See* D.I. 28 at 9 n.4). Claim 1 of the '344 patent provides:

> 1. A computer network for providing a game environment for a plurality of
> participants, each participant having connections to at least three neighbor
> participants, wherein an originating participant sends data to the other participants
> by sending the data through each of its connections to its neighbor participants
> and wherein each participant sends data that it receives from a neighbor
> participant to its other neighbor participants, further wherein the network is m-
> regular, where m is the exact number of neighbor participants of each participant
> and further wherein the number of participants is at least two greater than m thus
> resulting in a non-complete graph.

(D.I. 1-1, Exh. 1 ('344 patent), claim 1). Claim 1 of the '344 patent, for the purposes of this

motion, is substantially similar to the language in claim 1 of the '966 and '634 patents.

(*Compare* '344 patent, claim 1, *with* D.I. 1-1, Exh. 2 ('966 patent), claim 1 and D.I. 1-2, Exh. 4

('634 patent), claim 1).

The Broadcast Claims generally relate to a "broadcast channel for a subset of []

computers of an underlying network." ('344 patent, 1:27–29). Prior communication techniques

were not "particularly well suited to the simultaneous sharing of information among computers

that are widely distributed." ('344 patent, 1:33–39). Prior communication techniques

---

[1] Citations to "D.I. ___" are to the docket in C.A. No. 16-453 unless otherwise noted.

2

interconnected all participants using point-to-point connections, and thus, did not "scale well" as the number of participants grew. ('344 patent, 1:44–49).

The Broadcast Claims overlay the underlying network system with a certain graph of point-to-point connections between host computers (or "nodes") through which a broadcast channel is implemented. ('344 patent, 4:23–26). This graph is a non-complete, m-regular network. A non-complete, m-regular network is a network where each node is connected to the same number of other nodes, or "m" number of other nodes, and where each node is not connected to all other nodes. (*See* '344 patent, 4:26–47). Figure 1 of the '344 patent illustrates an example of a non-complete, m-regular network, where m is four.



*Fig. 1*

('344 patent, fig. 1). This graph is implemented at the application level using an underlying network system (like the Internet). ('344 patent, 4:14–19). The Broadcast Claims meet the need for "a reliable communications network that is suitable for the simultaneous sharing of information among a large number of the processes that are widely distributed." ('344 patent, 2:38–42).

///

3

## II.    LEGAL STANDARD

### A.  Motion to Dismiss

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 347. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

4

## B. Patent-Eligible Subject Matter

Section 101 of the Patent Act defines patent-eligible subject matter. It provides:
"Whoever invents or discovers any new and useful process, machine, manufacture, or
composition of matter, or any new and useful improvement thereof, may obtain a patent therefor,
subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court
has recognized an implicit exception for three categories of subject matter not eligible for
patentability—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS
Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The purpose of these carve outs is to protect the "basic
tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs.,
Inc.*, 132 S. Ct. 1289, 1293 (2012). "[A] process is not unpatentable simply because it contains a
law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical
formula to a known structure or process may well be deserving of patent protection." *Id.* at
1293–94 (emphasis omitted). In order "to transform an unpatentable law of nature into a patent-
eligible application of such a law, one must do more than simply state the law of nature while
adding the words 'apply it.'" *Id.* at 1294 (emphasis omitted).

The Supreme Court recently reaffirmed the framework laid out in *Mayo* "for
distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from
those that claim patent-eligible applications of those concepts." *Alice*, 134 S. Ct. at 2355. First,
the court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the
answer is yes, the court must look to "the elements of the claim both individually and as an
'ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or
combination of elements that is 'sufficient to ensure that the patent in practice amounts to
significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (alteration in original).

"A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *Id.* at 2357 (alterations in original) (quoting *Mayo*, 132 S. Ct. at 1297). "[S]imply appending conventional steps, specified at a high level of generality, to . . . abstract ideas cannot make those . . . ideas patentable." *Mayo*, 132 S. Ct. at 1300. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 134 S. Ct. at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010)). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* For this second step, the machine-or-transformation test can be a "useful clue," although it is not determinative. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 2907 (2015).

The Federal Circuit has held that the district court is not required to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a representative claim and "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

## III. DISCUSSION

The Broadcast Claims are directed to an innovative network structure for the distribution of data as the number of participants in a computer network is scaled. They are not "directed" to a patent-ineligible abstract idea. The Broadcast Claims do not recite a mathematical algorithm. They do not recite fundamental economic or longstanding commercial practices. They are not addressed to a business challenge.

Defendants argue that the Broadcast Claims are directed to the abstract idea of using message-forwarding to broadcast information among a group of participants. Defendants argue that the Broadcast Claims are analogous to situations such as the schoolyard game of "telephone," where a group of people forward messages to each other; a phone tree, where each person who receives a message calls designated contacts and passes along that message; or a chain letter, where each person who receives a letter is required to forward it to an equal number of people.

Defendants' analogies do not present the same communication scaling issues as those that arise in computer networks. Defendants gloss over the claim requirement of a non-complete, m-regular network that is implemented on an application level. The claims require a specific and apparently innovative structure of message-forwarding, which none of Defendants' analogies are known to employ. These Broadcast Claims are "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Defendants describe the claims at an impermissibly "high level of abstraction," such that they are "untethered from the language of the claims." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).

Like the claims in *Enfish*, the claims here "are directed to an improvement in the functioning of a computer." *Enfish*, 822 F.3d at 1338. Like the "self-referential table" in *Enfish* which was "a specific type of data structure designed to improve the way a computer stores and retrieves data in memory," the claims require a specific type of communication structure designed to improve the way computers communicate as participants scale. *Enfish*, 822 F.3d at 1339. Like the lip-synching technology in *McRO, Inc. v. Bandai Namco Games Am. Inc.*, the

7

claims here are "specifically designed to achieve an improved technological result in conventional industry practice." 837 F.3d 1299, 1316 (Fed. Cir. 2016).

In *Electric Power Group, LLC*, v. *Alstom S.A.*, the Court of Appeals stated, "The present case is different: the focus of the claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." 830 F.3d 1350, 1354 (Fed. Cir. 2016). Unlike in *Electric Power Group*, the focus of the claims here is on an improvement in computers as tools. The specialized problem that the Broadcast Claims is designed to solve is unlike the abstract problem of "providing out-of-region access to regional broadcast content." *See Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016) (finding that providing regional content to out-of-region recipients could be implemented by low-tech means, "such as by mailing copies of a local newspaper to an out-of-state subscriber"). Unlike in *Dealertrack, Inc. v. Huber*, the Broadcast Claims do not "explain[] the basic concept of processing information through a clearinghouse . . . ." 674 F.3d 1315, 1333 (Fed. Cir. 2012). Unlike in *Intellectual Ventures I LLC v. Symantec Corp.*, where the court found that "receiving e-mail (and other data file) identifiers, characterizing e-mail based on the identifiers, and communicating the characterization—in other words, filtering files/e-mail" was an abstract idea, here, the claims do not pertain to the abstract idea of collecting information, remembering those characteristics, and retransmitting those characteristics. 838 F.3d 1307, 1313 (Fed. Cir. 2016). Again, the claims are "rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings, LLC*, 773 F.3d at 1257.

Because Defendants fail to show that the claims are directed to an abstract idea under step one of *Alice*, an analysis of step two is not necessary. *Enfish*, 822 F.3d at 1339.

8

Defendants' argument, belatedly raised in their reply brief, that the Broadcast Claims are not physical or tangible structures and thus are not patent-eligible subject matter, is waived. *See, e.g.*, D. Del. R. 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief,"). Even if it were not waived, I have no basis on a motion to dismiss to conclude that the Broadcast Claims do not exist in physical or tangible form. (*See, e.g.*, '344 patent, 4:14–19, claim 8). Thus, at this stage, I cannot conclude that they are patent-ineligible.

## IV.    CONCLUSION

Defendants' Motion to Dismiss U.S. Patent Nos. 6,701,344, 6,714,966, and 6,829,634 is **DENIED**. It is **SO ORDERED** this day of August, 2017.

Richard G. Andrews

United States District Judge

9