IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ACCELERATION BAY LLC. | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 16-453 (RGA) |
| ACTIVISION BLIZZARD, INC., | ) ) ) | |
| Defendant. | ) ) | |
| ACCELERATION BAY LLC, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 16-454 (RGA) |
| ELECTRONIC ARTS INC., | ) ) ) | |
| Defendant. | ) ) | |
| ACCELERATION BAY LLC, | ) ) | |
| Plaintiff. | ) ) ) | |
| v. | ) ) ) | |
| TAKE-TWO INTERACTIVE SOFTWARE, INC., ROCKSTAR GAMES, INC. and 2K SPORTS, INC., | ) ) ) ) | C.A. No. 16-455 (RGA) |
| Defendants. | ) | |

## SPECIAL MASTER ORDER NO. 13

On November 9, 2017 the parties filed two motions. Plaintiff Acceleration Bay's motion to strike as described in the motion as the Alagar prior art reference (the "Alagar Motion"). Defendants filed their motion to compel production of certain documents related to Hamilton Capital (the "Hamilton Capital Motion"). Responsive briefs and exhibits were filed on

RD 10439333v.2

November 16, 2017.  A hearing was held before the Special Master on November 20, 2017.  Below is a discussion of each motion, followed by my Order as to each motion.

**The Alagar Motion**

Plaintiff's Alagar motion is based upon its argument that the Defendants did not include the Alagar prior art reference in their initial election of prior art and have not sought leave to amend their election to include this new reference.  The Scheduling Order required Defendants to provide a preliminary election of prior art, which would limit the prior art they could present in the case.  Defendants May 6, 2016 election included the maximum 12 references but did not include Alagar.  Defendants updated their contentions on June 8 and July 31, 2017, but they also did not include Alagar.  It was not until September 15, 2017, that Defendants served a final election of prior art adding Alagar as a reference.  Defendants opening invalidity report filed September 25, 2017 relied on the Alagar prior art reference.  Within 5 days of Defendants assertion of Alagar prior art, Plaintiff contacted Defendants and requested that the Defendants either withdraw the reference or seek leave from the Court to amend their prior art election.  According to Plaintiff, Defendants dragged out the meet and confer process on this request.  Approximately one month later, on October 23, 2017, Defendants indicated to Plaintiff that they would not present the Alagar issue to the Court.

Plaintiff argues that it has been prejudiced and will be subject to more prejudice if the Alagar prior art is not dismissed because of the delay by the Defendants and the schedule to present expert reports.  Plaintiff also contends that prior rulings of this Court support Plaintiff's position that it is too late for Defendants to add the Alagar prior art reference.  Plaintiff cites to the Court's earlier decision precluding the Plaintiff from adding new prior contentions.  Plaintiff

alleges that it is prejudiced by having to devote resources for its expert to respond to the Alagar prior art that was not disclosed during fact discovery.

In response, Defendants take the position that they had properly identified and gave clear notice of their intent to rely on the Alagar reference and that Defendants have good cause to elect Alagar given the Plaintiff's claim construction positions and infringement reports. Defendants point to their May 6, 2016 invalidity contentions. Defendants brief is a thorough explanation as to how allegedly the Plaintiff has changed its infringement allegations and is now attempting to recapture claim scope that it gave up during prosecution. During prosecution, to avoid Alagar, Plaintiff amended its claims to add certain claim limitations. As to any delay in presenting the issue to the Court for the Special Master, Defendants point to positions taken by the parties with respect to who and when this issue should be raised.

Defendants' arguments have more merit, particularly in light of Plaintiff's burden under the Pennypack case. Pennypack places a heavy burden on the party who seeks to exclude evidence. Plaintiff comes close to meeting its burden, only if it is correct that it had timely and fully disclosed its infringement contentions. If that were true, Defendants should have promptly relied on the Alagar references as prior art. However, Plaintiff's supplemental disclosures in the few months leading up to the fact discovery cut-off date put pressures on the Defendants to amend their invalidity contentions, including prior art references. Furthermore, the Alagar prior art reference has been known to Plaintiff for a long time, including during proceedings before the Patent Office. This reduces the possibility of prejudice to Plaintiff. On the other hand, the prejudice to Defendants is significant, if its reliance on the Alagar prior art references is stricken.

**ORDER: PLAINTIFF'S MOTION IS DENIED.**

\* \* \*

**Hamilton Capital Motion**

Time to prepare this Order in light of the schedule in this case and the needs of the parties, as well as the various points and issues raised by the Hamilton Capital Motion, precludes the Special Master from a thorough discussion of the parties' arguments.  The motion concerns documents that Plaintiff provided to Hamilton Capital and/or its counsel, Reed Smith, during their negotiation of a litigation financing agreement in 2014 and 2015.  Plaintiff resisted such production and advised the Court in February 2016 that there were no responsive documents to produce or log.  In September 2017, Hamilton Capital's counsel revealed to Defendants counsel for the first time that Plaintiff had exchanged at least 8 emails and 2 dozen documents relating to the asserted patents with Hamilton Capital through its counsel before Hamilton Capital agreed to finance Acceleration Bay in February 2015.  Defendants cite a prior order of the Special Master requiring production of some Hamilton Capital documents, which order was upheld by the Court.  In addition to the documents, Defendants want an explanation from Plaintiffs as to their failure to produce these documents and for Plaintiff to pay Defendants reasonable fees and expenses in connection with its efforts to obtain the documents from Plaintiff.

Defendants maintain that the documents sought are clearly relevant to issues such as patent valuation, damages, royalty rates and Plaintiff's status as an operating company.  Defendants cite to the Court's prior rejection of Plaintiff's assertion of privilege.  Furthermore, according to Defendants, Plaintiff represented to the Court in February 2016 that it was not claiming any privilege in connection with documents provided to Hamilton Capital.  Defendants cite law of this District Court to the conclusion that there is no "common interest" for documents shared with a third party in an effort to obtain an investment.  Any analysis by Plaintiff's expert should also be produced according to Defendants because such analysis was prior to the filing of

4

the suit and was shared with a non-party, Hamilton Capital. It may also be relevant to an examination of Plaintiff's expert in light of that expert's report in this case. The Boeing/Airbus agreement was shared by Plaintiff with Hamilton Capital. Therefore even though it may have an extreme level of confidentiality, the sharing of the Boeing agreement with Hamilton Capital, according to Defendants, results in its being available to Defendants in this litigation.

In addition to the relief of the production of the documents, Defendants seek to be given leave to amend their positions in light of the withheld documents. According to Defendants, Plaintiff withheld at least 16 references, at least 2 of which are material prior art. Defendants want to supplement their invalidity positions in light of these new references. Finally, Defendants seek reasonable fees and expenses in obtaining these documents from Plaintiff.

Plaintiff's reply brief and exhibits contend that it produced the patents and file histories that are on Reed Smith's privilege log. It states that it made available for inspection by Defendants the Boeing/ Airbus agreement. Plaintiff also contends that the Agreement is both highly confidential and irrelevant, since it has not been relied on in any expert's report. Other documents referenced in the privilege log were allegedly produced. Plaintiff maintains that it never shared with Reed Smith any technical or financial work product. As to the emails between Reed Smith and Kramer Levin, Plaintiff asserts that Defendants have represented that it doesn't seek them. In bold, Plaintiff writes: "Acceleration Bay did not provide any additional materials to Reed Smith." [Plaintiff reply brief, Nov. 16, 2017, p. 3].

Even if Defendants seek emails between Reed Smith and Kramer Levin, which Plaintiff argues are irrelevant, they are subject to the 'common interest' privilege according to Plaintiff. Plaintiff cites to a comprehensive Court of Chancery case on this privilege. Also, any pre-suit

analysis by Dr. Medvidovic of Defendants' infringement should be work product according to Plaintiff, and Plaintiff maintains that any such analysis was not shared with Reed Smith.

Plaintiff opposes Defendants' seeking leave to amend their invalidity reports based on two publicly available documents regarding the general background of the technology. Apparently the two documents are publicly available, and, according to Plaintiff cumulative of materials already produced.

This motion is difficult to resolve without doubting Plaintiff's representations and with the possibility that Plaintiff's work product might be disclosed to Defendants if the motion is granted. There are essentially two important parts to the motion: first, what was disclosed to Reed Smith; and second, the law on the common interest privilege.

Plaintiff maintains that it has already produced any non-work product documents given to Reed Smith or Hamilton Capital. It appears to take the position that it correctly advised the Defendants that there were no other documents to produce or to log. It is hard, however, to understand why the Boeing/Airbus Agreement would be work product. That Agreement and other allegedly work product documents may well be entitled to confidentiality under the agreement between the parties as to confidentiality. Nevertheless, confidentiality alone does not justify not identifying or logging the documents so as to advise Defendants as to their existence. Defendants should not have to speculate as to what was given by Plaintiff or its counsel to non-parties before a suit was filed.

The parties differ on the law as to the common interest privilege. Defendants rely on cases in this Court that were cited in the recent case of Delaware Display Grp. LLC v. Lenovo Grp. Ltd., 2016 WL 720977 [D. Del. Feb. 23, 2016]. Plaintiff argues that a recent Court of Chancery case strongly supports its view that the privilege should apply when the patent holder

is seeking funding from another entity. Plaintiff also represented in oral argument at the Hearing that there was an understanding of confidentiality between the two law firms as to the documents provided in Hamilton Capital's due diligence.

However, even accepting Plaintiff's representation, it doesn't appear that there was any written agreement at that time to have a legally 'common interest' in whatever was provided by Plaintiff. The documents were provided before any agreement was reached between Plaintiff and Hamilton Capital, and before any litigation was filed. As was written in the Delaware Display case at p. 4, Hamilton Capital and Plaintiff were not "..allied in a common legal cause.." when the documents were provided .

As to the scope of relief in granting the motion, there is no basis to assess fees or charge Plaintiff with providing 'an explanation' for not producing or logging documents .Depending on what is disclosed in the documents ordered hereby to be produced, Defendants can supplement their invalidity contentions although it should have the burden to show why such supplementation is justified.

**ORDER: DEFENDANTS MOTION IS GRANTED TO THE EXTENT OF REQUIRING PLAINTIFF TO PRODUCE WHAT IT PROVIDED IN WRITING TO HAMILTON CAPITAL OR ITS COUNSEL AT THE TIME OF HAMILTON CAPITAL'S DUE DILIGENCE AND ALL SUCH PRODUCTION SHOULD BE TREATED AS CONFIDENTIAL AT THIS TIME.  IF NEW INFORMATION IS LEARNED FROM THE PRODUCTION, DEFENDANTS CAN SUPPLEMENT THEIR INVALIDITY CONTENTIONS.**

Dated:  November 22, 2017

/s/  Allen M. Terrell, Jr.
Allen M. Terrell, Jr., Special Master

RD 10439333v.2