IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACCELERATION BAY LLC, Plaintiff, v. ACTIVISION BLIZZARD, INC. Defendant. | Civil Action No. 16-453-RGA |
| ACCELERATION BAY LLC, Plaintiff, v. ELECTRONIC ARTS INC. Defendant. | Civil Action No. 16-454-RGA |
| ACCELERATION BAY LLC, Plaintiff, v. TAKE-TWO INTERACTIVE SOFTWARE, INC., ROCKSTAR GAMES, INC., AND 2K SPORTS, INC. Defendants. | Civil Action No. 16-455-RGA |

## MEMORANDUM ORDER

Presently before the Court are Plaintiff's objections to Special Master Order No. 13 (No. 16-453, D.I. 361; No. 16-454, D.I. 327, No. 16-455, D.I. 322). The parties have submitted

briefing. (D.I. 379; D.I. 394).[1] For the reasons that follow, I overrule Plaintiff's objections (D.I. 379) and adopt the Special Master's Order No. 13 (D.I. 361).

## I. BACKGROUND

As explained by the Special Master, this Order concerns "emails" and "documents that Plaintiff provided to Hamilton Capital and/or [Hamilton Capital's] counsel, Reed Smith, during their negotiation of a litigation financing agreement in 2014 and 2015." (D.I. 361 at 4). Plaintiff asserts that these communications were provided to Hamilton Capital in "connection with diligence for the funding of" this litigation. (D.I. 379 at 2). The communications were exchanged "before any agreement was reached between Plaintiff and Hamilton Capital, and before any litigation was filed." (D.I. 361 at 7).

## II. ANALYSIS

Defendants seek to exclude these communications on three grounds: the communications are "non-discoverable attorney work product;" Plaintiff and Hamilton Capital "share a common legal interest in the successful enforcement of the asserted patents" such that the communications are subject to attorney-client privilege; and the communications are not relevant. (D.I. 379 at 1-2). The Court reviews the Special Master's order *de novo* as to factual findings and legal conclusions, and for abuse of discretion as to procedural matters. Fed. R. Civ. P. 53(f).

### a. Work Product Privilege

The work product doctrine, codified in Federal Rule of Civil Procedure 26(b), provides that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3). The party asserting work product immunity bears the burden of showing that the sought documents

---

[1] All citations to the docket are to No. 16-453.

2

were prepared "in the course of preparation for possible litigation." *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000). If the party claiming work product immunity meets this burden, then the party seeking production may obtain discovery "only upon a showing that the party . . . has a substantial need of the materials in preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Id.*; Fed. R. Civ. P. 26(b)(3). The test employed by courts is whether "in light of the nature of the document and the factual situation of the case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *U.S. v. Rockwell Int'l*, 897 F.2d 1255, 1265–66 (3d Cir. 1990). A document will be granted protection from disclosure if the court finds that the "primary" purpose behind its creation was to aid in possible future litigation. *Id.* at 1266.

Here, Plaintiff has characterized the communications as being created "for the purpose of obtaining funding to assert [the] patents." (D.I. 379 at 3). The communications were exchanged before Hamilton Capital had agreed to fund Plaintiff's litigation, and before Plaintiff filed any litigation. (D.I. 361 at 7; D.I. 380-1, Exh. C).

The documents were thus prepared with a "primary" purpose of obtaining a loan, as opposed to aiding in possible future litigation. For that reason alone, the communications are not work product.

Furthermore, if a document sought "is prepared for a nonparty to the litigation, work product protection does not apply, even if the nonparty is a party to closely related litigation." 6 James Wm. Moore et al., *Moore's Federal Practice* § 26.70 (3d ed. 2015); *see also In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989). Here, Hamilton Capital is not a party to the litigation. For that separate reason, the communications are not work product.

3

I accordingly overrule Plaintiff's objection to the Special Master's Order on the ground that the communications are non-discoverable attorney work product. (D.I. 379 at 1).

### b. Common Interest Privilege

"The attorney-client privilege" is a common-law privilege that "protects communications between attorneys and clients from compelled disclosure." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007). In order for the privilege to apply, there must be "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *Id.* (quoting Restatement (Third) of the Law Governing Lawyers § 68 (Am. Law. Inst. 2000)). The party asserting the privilege bears the burden of establishing the requisite elements. *In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012). A communication is only privileged if made in confidence. *Teleglobe*, 493 F.3d at 361. Therefore, if "persons other than the client, its attorney, or their agents are present, the communication is not made in confidence." *Id.* Further, "if a client subsequently shares a privileged communication with a third party, then it is no longer confidential, and the privilege ceases to protect it." *Id.*

The common interest doctrine is an exception to the general rule that voluntary disclosure to a third party of purportedly privileged information waives the privilege. *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 376 (D. Del. 2010); *see also Corning Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189, 190 (D. Del. 2004). The privilege protects "all communications shared within a proper 'community of interest.'" *Teleglobe*, 493 F.3d at 364 (internal citations omitted). To show that there is a proper community of interest, the interests "must be 'identical, not similar, and be legal, not solely commercial.'" *Leader Techs.*, 719 F. Supp. 2d at 376 (quoting *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1390 (Fed. Cir.

4

1996)). Additionally, to show that the members of the community are "allied in a common legal cause," the party asserting the privilege bears the burden of showing "that the disclosures would not have been made but for the sake of securing, advancing, or supplying legal representation." *See In re Regents of the Univ. of Cal,* 101 F.3d at 1389 (quoting *In re Grand Jury Subpoena Duces Tecum,* 406 F. Supp. 381, 386 (S.D.N.Y. 1975)); *see also In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 126 (3d Cir. 1986).

Plaintiff argues that "[l]itigation funders provide funds 'for the sake of securing, advancing, or supplying legal representation,' and thus have a common legal interest with the plaintiffs they fund." (D.I. 379 at 6; citing *In re Regents of the Univ. of Cal.,* 101 F.3d at 1389). Therefore, argues Plaintiff, because "Hamilton Capital [was] [P]laintiff's litigation funder with a financial interest in [Plaintiff's] successful enforcement of the patents," Plaintiff and Hamilton Capital had a common legal interest when the communications were exchanged. (D.I. 379 at 6). Plaintiff also cites an unpublished Court of Chancery opinion, *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, 2015 WL 778846, at *7 (Del. Ch. Feb. 24, 2015), for the proposition that "there is a community of legal interest between a patent owner and its litigation funder." (D.I. 379 at 5). *Carlyle* is about work product privilege, not common interest attorney-client privilege. 2015 WL 778846, at *7.

However, as explained by the Special Master, "even accepting Plaintiff's representation" of the confidential relationship between Plaintiff's counsel and Hamilton Capital's counsel, "it [does not] appear that there was any written agreement at [the time of the communications] to have a legally 'common interest' in whatever was provided by Plaintiff." (*Id.*). Furthermore, the Special Master explained that the "documents were provided before any agreement was reached between Plaintiff and Hamilton Capital, and before any litigation was filed." (D.I. 361 at 7).

5

Thus, Plaintiff has not shown that Plaintiff and Hamilton Capital possessed identical legal interests in the patents-in suit or were otherwise "allied in a common legal cause" at the time of the communications. *Leader Techs.,* 719 F. Supp. 2d at 376; *In re Regents of the Univ. of Cal,* 101 F.3d at 1389. Because Plaintiff has not carried its burden of establishing a common legal interest, the privilege does not apply, and Plaintiff's objection falls short. (D.I. 379 at 2).

### c. Relevance

Defendants contend that these documents "may be relevant to central issues like validity and infringement, valuation, damages, royalty rates, pre-suit investigative diligence, and whether [Plaintiff] is an operating company," and that "[c]ommon sense confirms the emails' relevance" because Plaintiff "would not have been providing irrelevant information about the patents to its prospective litigation financier to secure money to bring this case." (D.I. 394 at 8). Defendants note that Plaintiff agrees that the emails "relate[] to the asserted patents." (D.I. 394 at 8; D.I. 379 at 2).

Plaintiff, on the other hand, argues that the communications are "irrelevant to the limited scope of discovery permitted by the Court" in a past Order. (D.I. 379 at 6-7; D.I. 285).

I agree with Defendants that the communications are relevant. Accordingly, I adopt the Special Master's Order requiring Plaintiff "to produce what it provided in writing to Hamilton Capital or its counsel at the time of Hamilton's Capital's due diligence." (D.I. 361 at 7). My conclusion is the same, regardless of whether the standard of review is *de novo*, as Plaintiff argues is the case, or abuse of discretion, as Defendants argue is the case.[2] (D.I. 379 at 1; D.I. 394 at 8).

---

[2] Defendants argue that the relevance of the communications concerns the "scope of discovery," which is a procedural matter.

6

## III. CONCLUSION

For the reasons discussed above, the Special Master's Order No. 13 (D.I. 361) is **ADOPTED**.

IT IS SO ORDERED this 9 day of February 2018.

*Richard G. Andrews*
United States District Judge