IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ACCELERATION BAY LLC,

Plaintiff,

v.

ACTIVISION BLIZZARD INC.,

Defendant.

Civil Action No. 1:16-cv-00453-RGA

**MEMORANDUM ORDER**

Presently before the Court is Defendant's Motion to Preclude Inadmissible and Undisclosed Damages Theories and Evidence. (D.I. 581). The Parties have briefed the issues. (D.I. 581, 583, 587). For the reasons set out below, Defendant's Motion is GRANTED-IN-PART.

**I. BACKGROUND**

On August 29, 2018, I excluded the opinion of Plaintiff's reasonable royalty expert, Dr. Christine Meyer, to the extent that it relied on a jury verdict from *Uniloc USA, Inc. v. EA*, No. 6:13-cv-00259-RWA (E.D. Tex. Dec. 15, 2014). (D.I. 578 at 27-28). This ruling led the parties to correspond regarding Plaintiff's damages case. (*See* D.I. 581 at 1; D.I. 583 at 4-5). In a letter dated September 21, 2018, Plaintiff described the evidence of damages it intends to provide at trial. (D.I. 581-1, Exh. 2). Plaintiff identified three royalty bases and a royalty rate of 15.5%. (*Id.*). Defendant takes issue with all the evidence supporting Plaintiff's proposed reasonable royalty.

## II. DISCUSSION

Reasonable royalty damages must be awarded if infringement is proven. *See Dow Chemical Co. v. Mee Industries, Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003) (holding that district court erred in concluding that "no damages could be awarded, in light of the presumption of damages when infringement is proven"). "That reasonable royalty damages must be awarded if infringement is found, however, does not mean that the rules of evidence do not apply to proposed testimony." *AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139, 146 (D. Del. 2013).

Plaintiff proposes to support its 15.5% royalty rate by presenting the jury with: (1) the testimony of John Garland, Plaintiff's Vice President of Licensing; (2) the testimony of John Ward, Plaintiff's CEO; (3) an "industry report" Plaintiff "had in its files" when researching industry rates; and (4) a document showing a royalty Defendant pays to Microsoft. (D.I. 583 at 9-10).

### 1. Testimony of John Garland, Vice President of Licensing

Plaintiff proposes that Mr. Garland will provide testimony, "based on his decades of experience licensing intellectual property," that in his opinion "the 15.5% starting point rate is consistent with . . . the 'high profit, low cost' nature of licensing software." (D.I. 583 at 9). Defendant responds that Plaintiff did not offer Mr. Garland as an expert and he has not provided an expert report. (D.I. 587 at 4). Furthermore, Defendant argues that Mr. Garland cannot offer a lay opinion on this topic. (*Id.*).

Mr. Garland cannot properly testify about a reasonable royalty in this case. Federal Rule of Evidence 701 precludes most opinion testimony by lay witnesses. It provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) rationally based on the witness's perception;

2

> (b) helpful to clearly understanding the witness's testimony or to
> determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge
> within the scope of Rule 702.

(Fed. R. Ev. 701). An opinion on a reasonable royalty is necessarily based on specialized knowledge. Thus, because he is not serving as an expert, Mr. Garland's opinion that the appropriate reasonable royalty is 15.5% must be excluded.

Moreover, Mr. Garland has no personal knowledge that would allow him to testify even if reasonable royalty calculation were within the scope of admissible lay testimony. Rule 602 provides, "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." During his deposition, Mr. Garland stated, "I don't know the source behind the rate." (D.I. 584-1, Exh. 6 at 27:25). He knew of the rate exclusively from "a discussion with Joe Ward." (*Id.* at 28:11). Mr. Garland also confirmed that he has no knowledge of prior efforts to license or sell the patents, their value to the gaming industry, or any facts that would be relevant to their value to the gaming industry. (D.I. 587-1, Exh. 1 at 37:19-39:21, 53:15-55:4, 30:12-31:1). Thus, Mr. Garland has admitted that he has no personal knowledge of the facts underlying the 15.5% royalty rate that would allow him to testify on this subject.

Accordingly, I will exclude the proposed testimony of Mr. Garland that 15.5% would be a reasonable royalty rate.

2. *Testimony of John Ward, CEO*

Plaintiff states that Mr. Ward will testify regarding the proposed 15.5% reasonable royalty rate. (D.I. 583 at 9-10). Plaintiff argues that Defendant failed to question Mr. Ward about the bases for the rate. (*Id.* at 9). Thus, Plaintiff asserts it is not at fault for the lack of

3

record evidence of Mr. Ward's knowledge. (*Id.*). Plaintiff does not attempt to clarify Mr. Ward's factual knowledge of the 15.5% royalty. Defendant responds that Mr. Ward, just like Mr. Garland, has no personal knowledge of facts relevant to a reasonable royalty.

I agree with Defendant. Particularly persuasive support for Defendant's position is the undisputed fact that Mr. Ward did not work for the correct company (Boeing) at the time of the hypothetical negotiation or any time thereafter. (D.I. 587 at 2). Moreover, Mr. Ward testified that he has never licensed the patents, has never negotiated a royalty rate for them, and has very little understanding of the patents' technology. (D.I. 587-1, Exh. 2 at 223:9-23, 233:9-21, 286:6-287:7, 330:1-333:3). When asked to discuss the value of the patents, he said, "they're worth what they're worth." (*Id.* at 287:1-9). Mr. Ward invoked attorney-client privilege or referenced counsel when asked more specifically about the value of the patents, about prospective licenses, or about any economic fact that might support a reasonable royalty. (*See* D.I. 587 & n.1 (summarizing Mr. Ward's deposition, collecting instances of attorney-client privilege claims, and listing references to counsel)). All told, Mr. Ward clearly showed during his deposition that he has no independent knowledge of a reasonable royalty. He was not there at the right time, he has not licensed them, he does now know the technology well, and he declined to indicate that he had knowledge of any relevant facts.

Accordingly, I will exclude the proposed testimony of Mr. Ward that 15.5% would be a reasonable royalty rate.

3. *Industry Report*

Plaintiff further proposes to support its 15.5% rate with an "industry report regarding royalty rates Acceleration Bay had in its files when researching industry rates." (D.I. 583 at 10).

4

The "industry report" appears to be an infographic[1] produced by an entity called "Idea Buyer." (D.I. 584, Exh. 8). It contains several colorful boxes with helpful information for a potential patent licensor. (*Id.*). At the bottom of the infographic there are a series of boxes that represent various industries (accessories, fast food, internet, entertainment, etc.). (*Id.*). Each box contains an "industry standard royalty rate[]" for that industry. (*Id.*). Plaintiff does not explain why this document might be admissible or how it might be authenticated.

Defendant argues that the "industry report" is inadmissible hearsay.[2] It is correct. "Evidence that is properly authenticated may nonetheless be inadmissible hearsay if it contains out-of-court statements, written or oral, that are offered for the truth of the matter asserted and do not fall under any exception enumerated under Federal Rule of Evidence 802." *United States v. Browne*, 834 F.3d 403, 415 (3d Cir. 2016). The "industry report" consists entirely of written, out-of-court statements. The only relevant purpose for offering it would be to prove the truth of those statements. Thus, the document is hearsay regarding a 15.5% royalty. Plaintiff has not argued that the "industry report" falls into an exception to the hearsay rule and I do not see any

---

[1] An "infographic" is "a chart, diagram, or illustration (as in a book or magazine, or on a website) that uses graphic elements to present information in a visually striking way." *Infographic*, Merriam-Webster, https://www.merriam-webster.com/dictionary/infographic. The infographic discussed in this order can be found at: https://www.ideabuyer.com/news/industry-standard-royalty-rates.

[2] Defendant makes several other valid points about the "industry report."
> Acceleration has no expert or fact witness who can explain: (1) what that []unidentified and un-consulted author of the document means when he or she says that 15.5% is the "Industry Standard Royalty Rate[]" for "Entertainment" (with a picture of a drama mask); (2) what real-world patent licenses, if any, went into that rate; or (3) why "Entertainment" applies to Activision, Boeing, and these patents instead of other listed rates, like "Aerospace" at 4.00%, "Internet" at 8.20%, or "Media and Entertainment" (with a picture of a "TV") at 6.50%.

(D.I. 587 at 2).

5

exception that fits. Therefore, the document is inadmissible and Plaintiff cannot introduce it to establish a reasonable royalty. I will exclude the industry report and opinions derived from it.[3]

*4. Defendant's Agreement with Microsoft*

The final evidence Plaintiff forwards to support its 15.5% royalty are "documents showing that [Defendant] pays a similar 15-17% royalty to Microsoft for its games." (D.I. 583 at 10 (citing D.I. 584-1, Exh. 9)). Plaintiff does not explain how these documents might come into the trial or why they are relevant.

Defendant responds that Plaintiff is referring to a "Microsoft Publisher Agreement." It is not a patent license or anything like one. Rather, it is an agreement between Defendant and Microsoft allowing Defendant to sell games compatible with the Xbox platform and to distribute digital content via the Xbox Game Store. (D.I. 587 at 4). The Agreement provides that Defendant will pay Microsoft a percentage of the wholesale price of each physical Xbox game that it produces. (D.I. 584-1, Exh. 9). It further provides that Microsoft will pay Defendant a percentage of the price that consumers pay for Defendant's digital content that is sold on the Xbox Game Store. (*Id.*). Defendant notes that Plaintiff's damages expert "made no attempt to tie the non-comparable Microsoft agreement to any patent royalty rate, let alone a 15.5% rate." (*Id.*). In fact, Plaintiff's damages expert said the Microsoft agreement was "not directly comparable to a patent license." (*Id.* (citing Meyer Report ¶¶ 11, 72)).

The Microsoft Publisher Agreement is inadmissible because it is irrelevant. A review of the Agreement reveals no obvious connection between it and this case. Plaintiff does not remedy

---

[3] The "industry report" is problematic for an additional reason. My review of the document and its source strongly indicates to me that it is a form of advertisement. That is, its royalty rate claims appear to be designed to draw people to do business with Idea Buyer. For this additional reason, the document is unreliable and properly excluded.

6

this by providing an explanation of how the publishing of a videogame might be comparable to the licensing a patent. Moreover, Plaintiff's expert said it is not. Thus, I will exclude the Microsoft Publisher Agreement for use in proving a reasonable royalty rate.

### III. CONCLUSION

The testimony of John Garland, Plaintiff's Vice President of Licensing; the testimony of John Ward, Plaintiff's CEO; an "industry report" Plaintiff had in its files when researching industry rates; and a document showing a royalty Defendant pays to Microsoft are inadmissible to prove a 15.5% royalty rate. It appears from the briefing that this is all the evidence Plaintiff has to support the 15.5% royalty rate. Thus, the 15.5% royalty rate and bases associated with it are effectively precluded as well.

I do not agree with Defendant that it is appropriate, at this point, entirely to preclude Plaintiff from presenting a damages case. Of course, whether Plaintiff can put together an admissible damages case is another question.

Thus, Defendant's Motion to Preclude Inadmissible and Undisclosed Damages Theories and Evidence (D.I. 581) is **GRANTED-IN-PART**.

IT IS SO ORDERED this 17 day of October 2018.

*Richard G. Andrews*
United States District Judge

7