IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACCELERATION BAY LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 16-453 (RGA) |
| | ) |
| ACTIVISION BLIZZARD, INC., | ) **REDACTED** |
| | ) **PUBLIC VERSION** |
| Defendant. | ) |

**DEFENDANT ACTIVISION BLIZZARD INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL EXPERT DAMAGES REPORT**

OF COUNSEL:

B. Trent Webb
Aaron E. Hankel
Jordan T. Bergsten
Maxwell C. McGraw
SHOOK HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, MO  64108
(816) 474-6550

Tanya Chaney
SHOOK HARDY & BACON LLP
600 Travis Street, Suite 3400
Houston, TX 77002
(713) 227-8008

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
skraftschik@mnat.com

*Attorneys for Defendant*

Original Filing Date:  March 15, 2019
Redacted Filing Date:  March 28, 2019

**TABLE OF CONTENTS**

Page

I.    NATURE AND STAGE OF THE PROCEEDINGS ............................................................. 1

II.   SUMMARY OF ARGUMENT ................................................................................................. 1

III.  STATEMENT OF FACTS ........................................................................................................ 2

IV.  ARGUMENT ............................................................................................................................. 3

    A.   Mr. Parr's Report Violates the Federal Rules of Civil Procedure and Third Circuit Law. ............................................................................................................................... 3

        i.    Acceleration Has Already Fully Disclosed Its Damages Case And Now Seeks To Present An Entirely New and Undisclosed Damages Case. ....................... 4

        ii.   Mr. Parr's Report Does Not Supplement Dr. Meyer's Report; Rather It Offers New, Previously Undisclosed Damages Opinions. .......................................... 6

        iii.  Acceleration Never Disclosed Any Damages Opinion Based On The Boeing-Panthesis License. ............................................................................................ 8

        iv.  Mr. Parr's Departures From Acceleration's Damages Disclosures Significantly Prejudice Activision And Warrant Exclusion Under *Pennypack*. ................................................................................................................... 9

    B.   The Boeing-Panthesis License Is Inadmissible Under the Federal Rules of Evidence. ...................................................................................................................... 11

        i.    Acceleration Does Not Meet Its Burden To Make A Threshold Showing That An Exception to the Best Evidence Rule Applies. ........................................... 11

        ii.   Mr. Parr's ▇ Royalty Rate Is Based On Inadmissible Hearsay ............................ 12

V.    CONCLUSION ........................................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bridgestone Sports Co. Ltd. v. Acushnet Co.*,
No. 05-132 JJF, 2007 WL 5218944 (D. Del. Feb. 15, 2007) ...................................................... 9, 10

*Goodman v. Lukens Steel Co.*,
777 F.2d 113 (3d Cir. 1985)............................................................................................................. 9

*Inline Connection Corp. v. AOL Time Warner Inc.*,
470 F. Supp. 2d 435 (D. Del. 2007)............................................................................................... 13

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
No. 12-193-LPS, 2017 WL 478565, at *1 (D. Del. Jan. 31, 2017) ............................................. 3, 4

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
 559 F.2d 894 (3d Cir. 1977).......................................................................................................... 9

*Remington Arms Co. v. Liberty Mut. Ins. Co.*,
810 F. Supp. 1420 (D. Del. 1992).................................................................................................. 12

*Robocast, Inc. v. Apple Inc.*,
No. 11-235-RGA, 2014 WL 334199 (D. Del. Jan. 28, 2014)................................................ 6, 8, 9

*Uniloc USA, Inc. v. EA*,
No. 6:13-cv-00259-RWA (E.D. Tex. Dec. 15, 2014)............................................................. 2, 5, 6

**Rules**

Fed. R. Civ. P. 37(c)(1)...................................................................................................................... 4

Fed. R. Evid. 1002 ........................................................................................................................... 15

Fed. R. Evid. 1004(a) ...................................................................................................................... 15

Fed. R. Evid. 1008........................................................................................................................... 15

Fed. R. Evid. 801(c) ........................................................................................................................ 17

I.      **NATURE AND STAGE OF THE PROCEEDINGS**

Activision moves to strike Acceleration's "supplemental" damages report submitted by Russell Parr.  Mr. Parr's report introduces new, contradictory, and undisclosed damages theories resulting in far increased damages numbers.  His report is based on facts withheld during discovery (despite multiple orders compelling disclosure) and his theories squarely contradict Acceleration's original damages expert, Dr. Meyer.  The Court gave Acceleration a chance to supplement, not supplant.  Acceleration's last-minute facts, opinions, and theories should be stricken and excluded.

II.     **SUMMARY OF ARGUMENT**

Acceleration has been given multiple chances to make its case.  It has failed to do so at every turn, which is the only consistency Acceleration has provided thus far.  Seizing on this Court's latitude for one "final opportunity" to "supplement" its case, Acceleration abused this Court's leave by hiring a new expert to render new and contradictory opinions predicated on withheld and undisclosed facts.  Mr. Parr's opinions do not simply deviate from Acceleration's earlier theories, they are flatly contrary to the entire record developed during fact and expert discovery.  These new theories are do not "supplement" any fairly and timely disclosed position.  Instead, they assault the record, attack the discovery process, and ambush Activision at the eleventh hour.  Exclusion is warranted,

Mr. Parr's report relies on facts withheld during discovery, despite Activision's extensive efforts to learn about Acceleration's theories.  Mr. Parr's expert report opines on a single royalty rate of ▓ that is based entirely on a purported Boeing-Panthesis license agreement.  The Special Master compelled full disclosure of Acceleration's damages case, but Acceleration never even identified this agreement as relevant to its damages case, let alone a basis for its requested

compensation. Nor was the final, executed version of the agreement ever produced. As a result, Activision never had a chance to explore—let alone test—the veracity of Mr. Parr's assumptions or his off-the-record sources, such as an inventor's recollection of an almost two-decade old agreement.

The Court should not excuse Acceleration's irresponsible advocacy and should hold Acceleration accountable for its own its strategic decisions in developing its damages case in this matter. This is particularly true where, as here, Acceleration's approach to damages deprived Activision of any meaningful opportunity to vet its newly-proffered trial theories during fact and expert discovery.

At the end of the day, discovery and the Federal Rules serve a vital role in every litigation. So do deadlines. For these reasons, as detailed below, Activision respectfully request the Court to strike and exclude the new opinions and theories stated in Mr. Parr's "supplemental" report pursuant to Rules 26 and 37, as well as this Court's inherent discretion in its application of the Third Circuit's *Pennypack* factors.

### III. STATEMENT OF FACTS

Two months prior to the start of trial, this Court struck Acceleration's expert damages opinion offered by Dr. Meyer for improperly relying upon the *Uniloc* jury verdict. D.I. 578 at 27–28.

Following this ruling, Activision sought clarification from Acceleration as to what damages evidence it intended to present at trial. In response, Acceleration pivoted and said it would then rely upon a royalty rate of ▬ which it derived from a random website. On September 28, 2018, one month before trial, Activision filed a Motion to Preclude Acceleration's "revised" damages case. *See* D.I. 581. This Court granted Activision's motion in-part and

precluded evidence of the ▮ royalty rate and damages bases, but stated that it was not appropriate at that point to entirely preclude Acceleration from presenting a damages case at trial. D.I. 600 at 7.

At the pre-trial conference, Acceleration maintained that it had an admissible damages case (or would eventually "come up" with one), and so this Court requested briefing on Acceleration's remaining damages theories. *See* D.I. 601, 603, 609. Ultimately, this Court found that it was not possible to decide the issue in time for trial, and thereafter continued trial "pending resolution on the admissibility of Acceleration's damages case." D.I. 619 at 2.

In its Order, this Court stated that "Plaintiff may supplement its expert reports," and had to provide a proffer of the damages case it intends to submit to the jury. *Id.* Acceleration hired a new damages expert, Russell Parr, and served a "supplemental" report on December 7, 2018. Acceleration filed its damages proffer on February 15, 2019 (D.I. 641–42, 644–45).

## IV. ARGUMENT

This Court permitted Acceleration to "supplement its expert reports" in one final attempt to present an admissible damages case. D.I. 619, at 2. Unfortunately, Mr. Parr's report grossly oversteps the boundaries reasonably anticipated in the Court's Order, and threatens to vitiate years of litigation and discovery efforts. If left unchecked, it will cause substantial and irreparable prejudice to Activision. Mr. Parr's report should be stricken in its entirety.

### A. Mr. Parr's Report Violates the Federal Rules of Civil Procedure and Third Circuit Law.

"Supplementation" is not an ill-defined concept in Federal Court. It is a term of art representing a specific zone of permissible conduct. *See* FED. R. CIV. P. 26(e); *Intellectual Ventures I LLC v. AT&T Mobility LLC*, No. 12-193-LPS, 2017 WL 478565, at *5 (D. Del. Jan. 31, 2017) (striking supplemental exhibits to plaintiff's expert damages report as untimely where

3

the supplemental exhibits "more than double[d] the damages figure" and were served "almost ten months after the deadline for [plaintiff's] damages-related expert reports").

When a party fails to comply with its disclosure obligations under the Federal Rules of Civil Procedure, courts have the power to exclude evidence as a sanction. *Id*. Rule 37(c)(1) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at trial, unless the failure was substantially justified or is harmless. . . ." FED. R. CIV. P. 37(c)(1).[1]

### i. Acceleration Has Already Fully Disclosed Its Damages Case And Now Seeks To Present An Entirely New and Undisclosed Damages Case.

Mr. Parr's report is Acceleration's attempt to recreate its damages case from scratch despite years of discovery and disclosures. Activision's first interrogatory sought discovery as to Acceleration's damages theories and all facts upon which Acceleration intended to rely to support each of its theories. Acceleration refused to provide a full response, forcing Activision to move to compel on April 28, 2017. D.I. 139. The Special Master granted Activision's motion noting that "plaintiffs have an 'obligation to provide their good faith bases for electing their theories of recovery.'" D.I. 155, Special Master Order No. 3, at 8. Acceleration eventually provided its first supplemental responses to Interrogatory No. 1, which incorporated its forthcoming "expert report it [would] serve on damages." Ex. 24, Pl.'s Suppl. Resp. to Interrog. No. 1, at 4–10 (June 2, 2017).

On July 5, 2017, Activision moved to preclude Acceleration from relying upon additional damages evidence and theories that had not been previously disclosed by Acceleration in its interrogatory response. D.I. 210. Activision emphasized that Acceleration's supplemental

---

[1] In its proffer, Acceleration does not even suggest that its failure was justified or harmless even though this Court's Order stated that "[t]he proffer shall contain . . . citations to Federal Circuit precedent supporting [the evidence's] admissibility and sufficiency." D.I. 619, at 2–3.

interrogatory response merely listed several categories of documents that could have relevant information, and argued that Acceleration was withholding its true damages theories. *See* Ex. 25, Def.'s Br. to Preclude Regarding Party Specific Interrog. No. 1 (July 5, 2017). Although the Special Master denied Activision's motion, he noted that "the test of whether Plaintiff [was] withholding information that should have been disclosed in interrogatory No. 1 [would] be better known when Plaintiff submit[ted] its expert reports." D.I. 227, Special Master Order No. 6, at 7. Acceleration next supplemented its damages interrogatory response on August 18, 2017 to include general citations to deposition transcripts and documents under Rule 33(d) while again "incorporat[ing] its forthcoming expert reports in this matter." Ex. 26, Pl.'s Second Suppl. Resp. to Interrog. No. 1 at 10–12 (Aug. 18, 2017). Finally, on September 25, 2017, Acceleration served its damages expert report authored by Dr. Christine Meyer, fully disclosing its damages theories. Ex. 9, Meyer Opening Report.

On October 20, 2017, Activision filed its renewed motion for sanctions and motion to strike Acceleration's infringement reports. D.I. 329. In its motion, Activision pointed to multiple factual bases, infringement arguments, and exhibits that were not previously identified in Acceleration's interrogatory responses. *See* Ex. 27, Def.'s Br. for Sanctions and to Strike, at 2. In his order, the Special Master noted that he "wishe[d] Plaintiff's interrogatory responses, as to its contentions, would have been more complete at an earlier stage of litigation." D.I. 347 at 5. But, "[w]hile the Plaintiff's expert reports could have been more clearly written," the Special Master found that because additional discovery was yet to be conducted as to the expert reports, the prejudicial effect on Activision would be lessened. *Id.* at 5–6.

After conducting expert discovery, Activision moved to exclude Dr. Meyer's damages opinion for choosing an incorrect hypothetical negotiation date and improperly relying upon the

5

*Uniloc* jury verdict. D.I. 441, Activision's Mtn. to Exclude (Feb. 2, 2018). Although finding that Acceleration's supplementation of Dr. Meyer's report addressed the hypothetical negotiation issue, this Court excluded Dr. Meyer's royalty because the *Uniloc* jury verdict did "not represent evidence from which a hypothetical negotiation [could] be reasonably determined." D.I. 578, at 27–28. Following this Court's ruling, Activision sought clarification from Acceleration regarding what damages case it intended to present at trial.

Five weeks before trial, Acceleration disclosed that it intended to offer a ▇▇▇ royalty rate applied to three different damages bases. Because none of these damages theories identified by Acceleration were disclosed in its expert reports, Activision moved to preclude Acceleration from presenting these new damages theories at trial. D.I. 581. This Court again excluded Dr. Meyer's opinions regarding the ▇▇▇ royalty rate, but did not believe at that point it was "appropriate . . . entirely to preclude Plaintiff from presenting a damages case." D.I. 600, at 7. Critically, Acceleration affirmed that its disclosures "***fully disclosed*** each damages claims it [would] assert at trial and the supporting evidence." D.I. 583, Pl.'s Opp'n to Mtn. to Preclude, at 2–3, 5–7 (emphasis added).

For over two years, Activision has repeatedly sought clarification from Acceleration regarding damages facts and theories that it would present at trial. Acceleration should be bound by its earlier discovery disclosures, and damages opinions presented in Dr. Meyer's report.

> ii. **Mr. Parr's Report Does Not Supplement Dr. Meyer's Report; Rather It Offers New, Previously Undisclosed Damages Opinions.**

It is an unremarkable proposition that a supplemental expert report must not include new, previously undisclosed theories "that could have been contained in the original report." *Robocast, Inc. v. Apple Inc.*, No. 11-235-RGA, 2014 WL 334199, at *1 (D. Del. Jan. 28, 2014). This commonsense approach recognizes that "[s]upplementation of an expert report permits a

party to correct inadvertent errors or omissions . . . [it] does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' [sic] report." *Id.* at *1 (internal quotations omitted).

Although Mr. Parr states that he "adopted portions of Dr. Meyer's report," he fails to identify what portions of Dr. Meyer's report he actually adopts. This vagueness is intentional, as a cursory review of Mr. Parr's report shows that his analyses and opinions differ from Dr. Meyer's report in every critical way. *See* Ex. 2 Lawton Report at ¶¶ 20–26. To this point, two of Mr. Parr's three damages methodologies—"cost savings reasonable royalty" and "revenue-based reasonable royalty"—are entirely new as compared to Dr. Meyer's report and Acceleration's disclosures in discovery. Further, although both Dr. Meyer and Mr. Parr employed a "user-based reasonable royalty" approach, Mr. Parr does not utilize any of Dr. Meyer's disclosed analysis but instead substitutes novel inputs for his calculations. As a result, Mr. Parr's "supplemental" calculations of reasonable royalty damages are significantly higher than Dr. Meyer's. This is surprising when one considers that Mr. Parr's opinions are based on fewer Patents-in-Suit, fewer patents asserted against each Accused Product, and fewer asserted claims.[2]

Although a direct comparison of the two reports plainly demonstrates a wholesale reworking of Acceleration's damages case, Mr. Parr confirmed in his deposition that Acceleration's counsel never intended for him to supplement Dr. Meyer's report:

Q. And so your revenue-based royalty approach is something that you did yourself, is that right, or is that something that you adopted from Dr. Meyer's report?
A. I would say **I did all of them by myself and adopted none of her approaches.**
Q. Okay.

---

[2] If Acceleration's original expert report had not been stricken, its damages demand would have been approximately ████████. Mr. Parr's "supplemental" report calculates damages to be between ████████ to ████████.

> A. Even though I do have a per unit royalty, I don't believe it reflects what she did, but I didn't focus on what she did very much because my idea was that **I was hired to provide my own opinion, so I didn't care what she did**.

Ex. 3, Depo. Tr. of Mr. Parr at 78:13-24 (emphasis added).

Mr. Parr never spoke with Dr. Meyer or obtained any understanding of Dr. Meyer's methodologies to prepare his "supplemental" report. *Id.* at 60:24-61:6. Rather than appropriately instruct Mr. Parr to construct his damages opinions within the bounds of Acceleration's disclosures, Acceleration's counsel took advantage of this Court's latitude to advance new arguments and opinions that could have been, but never were, disclosed during discovery or when Dr. Meyer filed her first expert damages report.

> iii. **Acceleration Never Disclosed Any Damages Opinion Based On The Boeing-Panthesis License.**

All of Mr. Parr's opinions are admittedly new and not supplemental. *Id.* at 78:13-24. But, perhaps the clearest deviation from Acceleration's disclosures and Dr. Meyer's report is his reliance upon a purported license agreement between Boeing and Panthesis to arrive at a baseline royalty rate of ■. Ex. 1, Parr Report at ¶¶ 63–71. Acceleration's previous discovery disclosures and Dr. Meyer's reports are entirely devoid of any mention of the Boeing-Panthesis license as an input into Acceleration's damages case. In fact, Mr. Parr admits that "an executed copy of the license to Panthesis was not obtained." *Id.* at ¶ 64. Instead, in order to arrive at the "final terms" of the deal, Mr. Parr interviewed Dr. Holt regarding his recollection of the terms—almost 16 years in the past—and reviewed unexecuted drafts of the agreement. *Id.* at ¶ 64–65.

This Court has recognized that "'Rule 26 imposes a *duty* on Plaintiffs; it grants them no *right* to produce information in a belated fashion.'" *Robocast, Inc.*, 2014 WL 334199, at *1 (quoting *Gallagher*, 568 F. Supp. 2d at 631) (emphasis in original). If Acceleration desired to utilize the Boeing-Panthesis license in its damages case, it could have done so in response to

8

interrogatories after being compelled to do so or in Dr. Meyer's reports. In fact, the unexecuted draft versions of the license agreement cited by Mr. Parr in his report were produced by Acceleration on January 15, 2016—a year and a half prior to Acceleration's supplemental responses to Interrogatory No. 1. Acceleration chose to not use the Boeing-Panthesis license, and should not be permitted to introduce it years later as a critical input. *Robocast, Inc.*, 2014 WL 334199, at *1.

      iv.    **Mr. Parr's Departures From Acceleration's Damages Disclosures Significantly Prejudice Activision And Warrant Exclusion Under *Pennypack*.**

To evaluate whether a Rule 37 failure is excused from exclusion, courts in the Third Circuit consider the *Pennypack* factors: (1) the surprise or prejudice to the moving party; (2) the ability of the moving party to cure any such prejudice; (3) the extent to which allowing the testimony would disrupt the order and efficiency of trial; (4) bad faith or willfulness in failing to comply with the court's order; and (5) the importance of the testimony sought to be excluded. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977), *overruled on other grounds*, *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985). But where, as here, a case involves "sophisticated, complex litigation" between "parties represented by competent counsel," courts "have been less indulgent in their application and more willing to exclude evidence without a strict showing that each of the *Pennypack* factors has been satisfied." *Bridgestone Sports Co. Ltd. v. Acushnet Co.*, No. 05-132-JJF, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007).

Despite Activision's repeated requests prior to the service of Mr. Parr's report, Acceleration refused to explain the nature or scope its damages theories and would not agree that its supplemental report would be limited to Acceleration's discovery disclosures. Instead of complying with this Court's Order to "supplement its expert reports," Acceleration submitted a

9

wholesale reworking of its damages case. This is extremely prejudicial to Activision, and threatens to vitiate the years of prior disclosures, expert and fact depositions, and the multitude of discovery orders in this case. For example, Mr. Parr relied upon new interviews with fact witnesses and technical experts—to which he cites over 30 times in his report—to craft his novel damages opinions. Ex. 1, Parr Report at ¶¶ 65, 146. Additionally, the ▮ royalty rate derived from the Boeing-Panthesis license was disclosed to Mr. Parr in an off-the-record interview with Mr. Holt. *Id.* Activision was deprived of its opportunity to depose these individuals on contested trial issues.

Further, Mr. Parr's reliance on Dr. Holt's memory is severely undercut by contemporaneous documents cited by Mr. Parr in his own report. In his interview with Mr. Parr, Dr. Holt told him that the final terms of the license agreement were as follows: ▮ of stock in Panthesis, ▮ paid by Panthesis over time, and a ▮ royalty on future revenues. Ex. 1, Parr Report at ¶ 65. But ***the very first*** document relied upon by Mr. Parr in his discussion conflicts with Dr. Holt's recollection without explanation. *See Id.* ¶ 63, n.99. This document outlines Panthesis's financial history, including details surrounding the purported license, and states only that Panthesis was required "to give Boeing ▮ at signing." Ex. 20, HOLT 002455–458, at 457. Mr. Parr makes no mention of this ▮ payment, or explanation as to why it was not the ▮ he derived from Dr. Holt. Instead, he simply assumed that the ▮ payment "more than covered any value allocated to the software" also licensed under the same deal. Ex. 1, Parr Report at ¶ 65.

Although requested by Activision, and promised by Acceleration, the executed license was never produced, nor were its contents fairly disclosed factually or as a supporting input into Acceleration's damages case. *See Bridgestone Sports Co.*, 2007 WL 521894, at *5 (precluding

10

undisclosed and untimely opinion because of "the additional time and expense" associated with the same).

### B.     The Boeing-Panthesis License Is Inadmissible Under the Federal Rules of Evidence.

Even if this Court declines to strike Mr. Parr's report under Rule 37, a significant portion of it should be stricken for relying upon an inadmissible license agreement between Boeing and Panthesis. Mr. Parr's report uses a ▇ royalty rate from the purported agreement as the critical basis for four out of seven novel royalty calculations.³ Mr. Parr admits that the final "executed copy of the license to Panthesis was not obtained," and relies upon secondary evidence to prove the contents of the final license agreement. Ex. 1, Parr Report at ¶ 64–65. Mr. Parr's opinions based upon the purported Boeing-Panthesis license should be stricken as a violation of the best evidence rule.

#### i.     Acceleration Does Not Meet Its Burden To Make A Threshold Showing That An Exception to the Best Evidence Rule Applies.

"To prove the content of a writing . . . the original writing . . . is required, except as otherwise provided in these rules or by Act of Congress." FED. R. EVID. 1002. Federal Rules of Evidence 1004(a)-(d) outline exceptions to the best evidence rule if an original writing is unavailable. Of the four exceptions, only Rule 1004(a) could possibly apply to the Boeing-Panthesis license. FED. R. EVID. 1004(a) ("Other evidence of the content of a writing . . . is admissible if all the originals are lost or destroyed, and not by the proponent acting in bad faith."). Acceleration bears the burden to prove "two elements[:] loss or destruction of the documents and the absence of bad-faith, have been met." *Remington Arms Co. v. Liberty Mut.*

---

³ The ▇ rate was applied to Mr. Parr's revenue-based (Ex. 1, Parr Report at ¶ 223, Ex. 5), user-based (*Id.* at ¶ 226) calculations, and two of the five cost savings reasonable royalty calculations (*Id.* at ¶¶ 156, 196).

11

*Ins. Co.*, 810 F. Supp. 1420, 1426 (D. Del. 1992). Both threshold prerequisites represent "a preliminary question of law to be resolved by the Court." *Id.* (citing FED. R. EVID. 1008).

Acceleration's only support for the final terms of the Boeing-Panthesis license is via secondary evidence considered by Mr. Parr. Acceleration filed its damages proffer on February 15, 2019. D.I. 641. In its section regarding the ▆ rate derived from the Boeing-Panthesis license, Acceleration states that "Mr. Parr considered the negotiations and agreement that resulted from the arms-length negotiation between Boeing and Panthesis . . . ." D.I. 641, at 9. Not so.

The final agreement was never produced in this case, however, as noted Mr. Parr in his report. Ex. 1, Parr Report at ¶ 64. In order to determine the unproduced agreement's final terms, Mr. Parr first cited to three draft license agreements, which he says "disclose the terms under which Panthesis obtained the license from Boeing." *Id.* at ¶ 64. In fact, these draft agreements offered no such disclosure. Included in these drafts were royalty rates ranging from ▆ to ▆ and many handwritten revisions. *Id*. The fact-finder is entitled to the best evidence when it comes to legally operative documentation memorializing legal rights, regardless of any interview with a cooperating and paid witness. Acceleration failure to show it meets its required threshold showing in its proffer directly violates this Court's Order, so this Court should strike the Boeing-Panthesis agreement. D.I. 691, at 2–3.

### ii. Mr. Parr's 12% Royalty Rate Is Based On Inadmissible Hearsay.

Dr. Holt's statements in his post-discovery interview with Mr. Parr are textbook hearsay as they are out of court statements offered to prove the truth of the matter asserted—that the final executed agreement between Boeing and Panthesis included a ▆ royalty. FED. R. EVID. 801(c). Because Acceleration failed to properly disclose the Boeing-Panthesis license as an input to its damages case, no discovery was conducted on this topic. *See supra* § IV(A)(iii).

Thus, because the final executed agreement was never produced, the only way Mr. Parr was able to "confirm" the final terms was by speaking off-the-record with Dr. Holt. Dr. Holt's out of court statements regarding the final terms of the Boeing-Panthesis agreement should be excluded as hearsay, and Mr. Parr's opinions that are based on the ▮ royalty rate should be stricken.

Activision recognizes that Federal Rule of Evidence 703 "allows experts to use evidence that would not usually be admissible, such as, hearsay." *Inline Connection Corp. v. AOL Time Warner Inc.*, 470 F. Supp. 2d 435, 442 (D. Del. 2007). However, courts also require that the hearsay evidence "is reasonably applied or relied upon by experts in the field for their conclusions." *Id.*

In *Inline Connection Corp.*, the court permitted defendants' experts to present the challenged hearsay evidence because it was collected in accordance with industry and professional standards. *Id.* at 442–43. Here, Mr. Parr is not relying upon industry standards or methodologies in arriving at the ▮ royalty rate. He cited an incomplete record of negotiation documents that included a range of royalty rates from ▮ to ▮, and only concluded that ▮ was the final term after his interview with Dr. Holt. Ex. 1, Parr Report at ¶ 65; Ex. 3, Depo. Tr. of Mr. Parr at 48:10-16 ("Q. Okay. So that's what you talked about with Mr. Holt, but why did you talk to Dr. Holt? A. Oh, so I could understand the final terms of the license agreement with Boeing . . . ."). Further, Dr. Holt's recollection of the final terms of the license agreement are directly contradicted by a contemporaneous document Mr. Parr cited in his report. *See supra* p. 10. Mr. Parr's lack of diligence in examining all of the contemporaneous documents is not consistent with professional standards for damages experts. Acceleration should not be permitted to rely upon Mr. Parr's opinions that are based on a singular source that is contradicted by the factual record.

Whatever probative value exists (there is little to none) for Dr. Holt's hearsay statements, it is substantially outweighed by the prejudice to Activision. *Id.* Activision would be irreparably prejudiced if Acceleration is permitted to present Mr. Parr's previously undisclosed damages opinions to the jury. Given the minimal probative value of Dr. Holt's hearsay statements, allowing Acceleration to present Mr. Parr's reasonable royalty calculations based upon the ■ rate—which range from ■ to ■—would lead the jury to apply undue weight to Mr. Parr's opinions.

## V. CONCLUSION

For the reasons stated above, Activision respectfully request the Court strike and exclude the new report and opinions of Mr. Parr.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Stephen J. Kraftschik*
Jack B. Blumenfeld (#1014)
Stephen J. Kraftschik (#5623)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
skraftschik@mnat.com

*Attorneys for Defendant*

OF COUNSEL:
B. Trent Webb
Aaron E. Hankel
Jordan T. Bergsten
Maxwell C. McGraw
Shook Hardy & Bacon LLP
2555 Grand Boulevard
Kansas City, MO 64108
(816) 474-6550

Tanya Chaney
Shook Hardy & Bacon LLP
600 Travis Street, Suite 3400
Houston, TX 77002
(713) 227-8008

March 15, 2019

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 28 2019, upon the following in the manner indicated:

| | |
|---|---|
| Philip A. Rovner, Esquire<br>Jonathan A. Choa, Esquire<br>POTTER ANDERSON & CORROON LLP<br>1313 North Market Street, 6th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Paul J. Andre, Esquire<br>Lisa Kobialka, Esquire<br>James R. Hannah, Esquire<br>Hannah Lee, Esquire<br>Yuridia Caire, Esquire<br>Greg Proctor, Esquire<br>Michael H. Lee, Esquire<br>William Hannah, Esquire<br>KRAMER LEVIN NAFTALIS & FRANKEL LLP<br>990 Marsh Road<br>Menlo Park, CA  94025<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Aaron M. Frankel, Esquire<br>Marcus A. Colucci, Esquire<br>Cristina Martinez, Esquire<br>Shannon H. Hedvat, Esquire<br>KRAMER LEVIN NAFTALIS & FRANKEL LLP<br>1177 Avenue of the Americas<br>New York, NY  10036<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

/s/ *Stephen J. Kraftschik*
_____
Stephen J. Kraftschik (#5623)