IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ACCELERATION BAY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 16-453 (WCB) |
| | ) | |
| ACTIVISION BLIZZARD, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**SUPPLEMENTAL BRIEF ON DAMAGES ISSUES**

OF COUNSEL:

B. Trent Webb
Aaron E. Hankel
John Garretson
Jordan T. Bergsten
Maxwell C. McGraw
SHOOK HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, MO 64108
(816) 474-6550

December 23, 2022

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendant*

## **TABLE OF CONTENTS**

**Page**

1.    "Whether Acceleration Bay's damages proffer at Dkt. No. [700] is consistent with the prior orders of the court"?.................................................................................................2

2.    "Whether testimony from a lay witness may be used to demonstrate apportionment"?...............................................................................................................5

3.    "The extent to which intervening events since October 2019 may affect the substance of Acceleration Bay's damages theories"?................................................................8

4.    "How resolution of those issues would affect further proceedings in this case"?............8

# TABLE OF AUTHORITIES

**Cases**

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
  967 F.3d 1353 (Fed. Cir. 2020)..................................................................................................7

*Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*,
  809 F.3d 1295 (Fed. Cir. 2015)..................................................................................................6

*Donlin v. Philips Lighting N. Am. Corp.*,
  581 F.3d 73 (3d Cir. 2009).........................................................................................................5

*Dow Chem. Co. v. Mee Indus., Inc.*,
  341 F.3d 1370 (Fed. Cir. 2003)..................................................................................................7

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC,*
  927 F.3d 1292 (Fed. Cir. 2019)..................................................................................................6

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018)..................................................................................................9

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
  Nos. 18-452 and -826, -- F.Supp.3d --, 2022 WL 2800861 (D.Del. June 15,
  2022) ..................................................................................................................................2, 3, 4

*Omega Pats., LLC v. CalAmp Corp.*,
  13 F.4th 1361 (Fed. Cir. 2021) ...................................................................................................2

*Promega Corp. v. Life Techs. Corp.*,
  875 F.3d 651 (Fed. Cir. 2017)....................................................................................................9

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011)..................................................................................................8

Having failed in its "final" opportunity to present a submissible damages case, Acceleration now seeks an unprecedented third round of expert reports and *Daubert* briefing on damages. Acceleration's request violates past Court orders and, even if allowed, would not result in a submissible damages case. It also unfairly prejudices Activision by morphing the costly efforts to date into mere academic exercise.

Acceleration's response to the Court's November 16, 2022 Oral Order (D.I. 747) only highlights that there is no basis for this case to move forward. On the threshold question of whether Acceleration's proffer at D.I. 700 is consistent with the Court's prior orders, Acceleration has no serious argument for consistency and instead tries to conflate two separate issues relating to the Boeing/Panthesis license: apportionment and admissibility.

On apportionment, Acceleration has no credible claim that it preserved a "built-in" apportionment theory in its "final" authorized proffer at D.I. 641. To the contrary, the Court squarely held that the theory was *not* properly disclosed:

> An earlier license of the patents-in-suit may have "built in apportionment." [citing *CSIRO*]. Thus, Plaintiff's attorneys' apportionment argument is not, on its face, unreasonable. Mr. Parr's opinion does not, however, tie apportionment to the royalty rate of the Boeing/Panthesis License. (*See* D.I. 642-1 at 11 ¶¶ 205-223). He does not even mention the Boeing/Panthesis License in the apportionment section of his expert opinion. (*Id.*). Mr. Parr's apportionment opinion cannot survive on an opinion that he does not express. Thus, as the selection of the 12% royalty rate is not a basis of Mr. Parr's opinion on apportionment, I do not find that Mr. Parr's opinion properly apportions based on the Boeing/Panthesis License alone.

(D.I. 692 at 10.) Acceleration simply did not preserve a theory the Court has already held Acceleration never disclosed, and thus that it waived.

On admissibility, the Court's previous order only declined to hold that the Panthesis license was *per se* inadmissible. (D.I. 692 at 11-13). That does not mean, however, that the Court somehow blessed the newly-disclosed theory that the 12% rate had built apportionment into a comparable negotiation, let alone that the rate agreed to by the Panthesis promoters somehow could have taken

into account the value derived from unpatented and unaccused features of Activision's games. If anything, the proffer order said the opposite. (*See* D.I. 692 at 2 n.1). As courts have held, Acceleration's undisclosed "built-in" theory must still pass judicial muster—a prior exclusive license covering unpatented technologies between different parties is not an appropriate yardstick. *See IOENGINE, LLC v. PayPal Holdings, Inc.*, Nos. 18-452 and -826, -- F.Supp.3d --, 2022 WL 2800861, *22-*24 (D.Del. June 15, 2022). Here, as there, the allegedly comparable license is simply too far removed and not sufficiently developed to support Acceleration's undisclosed and unsupportable apportionment allegations. *Id.*; *see also Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1377, 1379 (Fed. Cir. 2021) (patentee may not "avoid the task of apportionment" in cases in which its expert's testimony "does not sufficiently speak to 'built-in apportionment'").

Acceleration's other excuses are equally without merit, if the Court reaches them at all. The Court should hold that Acceleration waived damages beyond its excluded theories and dismiss this case.

1. **"Whether Acceleration Bay's damages proffer at Dkt. No. [700] is consistent with the prior orders of the court"?**

Acceleration's theories and evidence proffered at D.I. 700 were not disclosed as ordered and should be excluded. Acceleration's brief does not even acknowledge the Court's prior order requiring that Acceleration's final proffer at D.I. 641 must provide "a ***fulsome explanation*** of ***all*** of Plaintiff's damages theories, [and] ***all*** evidence it plans to put on in support of those theories." (D.I. 619 at 2) (emphasis added). Acceleration thus does not even try to argue that it complied with the Court's order with respect to its latest improper theories. Nor can it do so persuasively.

**Theories.** Acceleration belatedly claims that the 12% rate from the Panthesis license is a

comparable royalty to the hypothetical negotiation in this case requiring *no* further apportionment,[1] but Acceleration disclosed no such theory, as the Court required it to do in its proffer at D.I. 641. Rather than admit this plain fact, Acceleration seeks to conflate two issues—admissibility and apportionment.

On admissibility, Acceleration and its expert merely explained why the Panthesis license was a data point worth considering under the hypothetical negotiation construct. Acceleration and its expert never argued more, and the Court certainly did not hold that it was sufficiently comparable to represent a "built-in" apportionment that would be arguably relevant to the hypothetical negotiation here. Instead, the Court's prior order addressed the arguments presented to it—whether the agreement was excludable at the threshold. Resolving that question falls far short of showing the license and rate are sufficiently comparable to the hypothetical negotiation such that it would present a baked-in value for a non-exclusive patent license. (*See* D.I. 692 at 2 n.1 (excluding the 12% rate as a raw input into Dr. Parr's stricken "Rate of Return" theory)).

Courts and experts routinely conclude that a license is sufficiently comparable to play some role in a damages analysis, without concluding that the rate from that license should be applied without any economic or technical adjustment for the hypothetical negotiation. For instance, here Acceleration "admits that there are other, significant, features of the accused products that contribute economic value to the accused games." (*Id.* at 9). None of those admittedly significant non-patented values are even arguably present in the Panthesis agreement. In fact, the only apportionment *theory* Acceleration disclosed in its proffer was that the 12% Panthesis rate *should*

---

[1] Acceleration's theory would create an exception that would swallow the long-standing law of apportionment. If accepted, patentees could evade established law with nothing more than a favorable license predicated on non-existent product sales to gouge established market participants. The law requires more, and Acceleration did not present admissible grounds in its first, second, or final opportunities.

3

be further apportioned by 57%. Indeed, Acceleration's expert admitted the existence of significant unpatented components of the accused Activision products, such as "story, characters, game quality, ease of use, quality of customer service, and compatibility with popular platforms." (*Id.* at 9). The Court excluded that theory of apportionment of the 12% rate because it "accounts for none of these features," and thus "for failure to properly apportion." (*Id.*)

As such, the Court's prior orders and Acceleration's own expert establish that admissibility of the Panthesis license and the need to apportion its rate are two different issues. Acceleration cannot point to its disclosures on comparability for admissibility and seek to retrofit them as disclosures of apportionment. Although the Court's ruling on admissibility left open the possibility of a submissible damages opinion that relied on the Panthesis license in some way, Acceleration chose not to disclose in its final damages proffer (D.I. 641) the built-in apportionment theory it now seeks to present (D.I. 700). Rather, it is readily apparent from the record that Acceleration's new theory of apportionment contradicts its only disclosed apportionment theory in its final damages proffer (D.I. 641), and flouts the Court's order by ignoring the admittedly valuable unpatented features identified by its own expert. (*See* D.I. 692 at 9).

Because Acceleration's final proffer (at D.I. 641) did not provide a "fulsome explanation" of the theory of damages that Acceleration presents in its proffer at (D.I. 700), its proffer is contrary to the prior orders of the Court and should be excluded.

**Evidence.** Acceleration now wants to contradict its own expert's testimony (that there should be apportionment for valuable unpatented and/or unaccused features) with statements from the interested inventors. (D.I. 749). Even if proper, this evidence was not disclosed in Acceleration's "final" chance at proffering a legitimate damages case. (D.I. 641). Acceleration now says that those inventors will testify that "Boeing and Panthesis agreed that 12% of the

4

revenue generated by Panthesis from using the technology of the Patents-in-Suit was a fair royalty to compensate Boeing for the contributions of the Patents-in-Suit to the video games that Panthesis was developing." (D.I. 749 at 4) (citing D.I. 700 at 2.) Acceleration's only support for this theory in its final proffer at D.I. 641 points to page 24 of that proffer. (D.I. 749 at 4). But that page says only the following about the testimony of these inventors:

> Mr. Parr relied on the deposition testimony and exhibits from the depositions of Fred Holt and Virgil Bourassa, the named inventors of the patents. In addition, Mr. Parr relied on Mr. Holt's knowledge regarding the Boeing/Panthesis licensing negotiations and final agreement, discussed above. Parr Report at ¶¶63-71. Mr. Parr will also consider the inventors' trial testimony regarding the technology contained in the Patents-in-Suit.

(D.I. 641, at 24-25). Nothing in there discloses evidence suggesting or supporting a second theory of apportionment wherein no additional subtraction needs to be made to the 12% Panthesis rate to account for admittedly valuable unpatented features. If any such theory or evidence had been fairly disclosed, Activision would have challenged that legally and factually unsound theory then, as the Court invited, as part of Activision's challenge to Acceleration's final damages proffer at D.I. 641. Allowing Acceleration to present its undisclosed theories and evidence now, as it requests, severely prejudices Activision, and flouts the warnings provided by the Court.

**2.     "Whether testimony from a lay witness may be used to demonstrate apportionment"?**

As Activision previously explained (D.I. 748 at 5), controlling case law establishes that the type of testimony Acceleration proffers from its inventors goes far beyond easily verifiable statements of fact that the inventors personally observed, and thus falls squarely within the ambit of expert testimony that should be excluded from these lay fact witnesses. *See Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 82–84 (3d Cir. 2009) (vacating judgment where lay damages testimony "went beyond those easily verifiable facts within her personal knowledge and instead required forward-looking speculation for which she lacked the necessary training").

5

The cases cited by Acceleration do not deal with the boundaries of lay witness testimony, and only highlight why exclusion is appropriate here. (D.I. 749 at 5-6).

First, in *Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1300 (Fed. Cir. 2015), the Federal Circuit reversed a damages award after a bench trial on damages. The portion of the opinion Acceleration references deals with whether the district court ran afoul of Federal Circuit precedent on the smallest saleable unit. In discussing that challenge, the Federal Circuit noted it was not error for the district court to consider "evidence that, around the time of the hypothetical negotiations, **the parties themselves** had brief discussions regarding [defendant] taking a license to the [asserted] patent," but noted that on remand the "district court still may need to adjust the royalty rates to account for other factors." *Id.* at 1303 (emphasis added). That case did not address the bounds of lay versus expert opinion testimony. Moreover, the evidence there appeared to involve the same timeframe, parties, patent, and product at issue. Unlike here, there would be no need for expert analysis explaining the significance of the differences in parties and products between the "brief discussions" before the court and a hypothetical negotiation leading to a damages award. And even with all of those similarities, the Federal Circuit there suggested that the district court might need to make more adjustments on remand. Here, however, Acceleration proposes disagreeing with its own expert and its final proffer (at D.I. 641) in proposing no such adjustments at all.

Second, in *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, the Federal Circuit merely found substantial evidence for a damages award where the plaintiff's damages expert "relied on a prior settlement and appropriately accounted for the differences between the circumstances of that settlement and the present circumstances." 927 F.3d 1292, 1301 (Fed. Cir. 2019). Here, Acceleration's expert admitted such differences and attempted to account for them

6

with a 57% reduction to the 12% Panthesis rate, and the Court held that this reduction did not sufficiently account for additional value outside the footprint of the patents. Acceleration now proposes relying on lay testimony to backtrack from even the modest accounting of differences performed by Mr. Parr. The stark contrast between the admissible expert opinion in *Elbit*, and the legally insufficient lay opinions now pressed by Acceleration, supports exclusion.

Third, in *Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1374 (Fed. Cir. 2020), the Federal Circuit simply rejected the defendant's argument "that no reasonable juror could find the three licenses [from plaintiff were] comparable to the claimed invention." There does not appear to be any argument in that case about the proper bounds of lay fact testimony, and it shows the type of in-depth expert damages analysis connecting facts to proposed damages opinions that is entirely missing from Acceleration's current proposal.[2]

Nothing in any of these cases supports Acceleration's view that the testimony of a lay fact witness on a license agreement can support applying the rate in that license in a later lawsuit between different parties involving different products. Nor do they support Acceleration's unbridled view of damages—that non-experts can testify on scientific, economic, and other specialized topics to the jury simply because they were percipient witnesses to certain underlying events. Rather, the case law cited by both parties establishes that any such theory, in order to be admissible, would require careful expert testimony on why it is not necessary to make adjustments to account for these differences and to ensure that the prior licensing rate appropriately fits the footprint of the asserted patents. Even if the Court were to consider Acceleration's new "built-in"

---

[2] *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370 (Fed. Cir. 2003), also did not examine the limits of lay testimony, but merely provided high-level guidance to the district court on how to treat damages on remand of a bench trial after the court excluded the opinion of the plaintiff's damages expert.

7

apportionment theory, that theory is legally deficient for relying on improper lay opinion evidence.

3.  **"The extent to which intervening events since October 2019 may affect the substance of Acceleration Bay's damages theories"?**

The "intervening events" now urged by Acceleration do not justify giving Acceleration another "final" chance to develop a damages theory (*see* D.I. 748 at 6-9). First, the new settlement agreement Acceleration points to is not sufficiently comparable to support any damages opinion in this case because it occurred at least eight years after the hypothetical negotiation date, involves different parties, and is a settlement agreement of minimal value. Second, Activision's pending sale to Microsoft is not a reliable basis to support any damages opinion because it runs afoul of the "*Uniloc* skew" rule of *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011), including because the sale of a company the size of Activision is too far divorced from the value of a few expired patents allegedly infringed by a snapshot of the videogames offered by Activision prior to expiration of the patents.

Acceleration's supplemental brief does not meaningfully address any of these concerns. Instead, Acceleration merely cites generic cases on the basic point that evidence of the use of a patented device, and evidence occurring after the hypothetical negotiation, can in some instances be relevant. (*See* D.I. 749 at 7). These cases might have been applicable if, years ago during discovery in this case, Activision had refused to provide discovery on such events. But both of these events have serious obstacles to admissibility in any damages opinion under controlling law, and do not justify re-opening discovery years into the case after Acceleration has already squandered its final opportunity to present a submissible damages opinion.

4.  **"How resolution of those issues would affect further proceedings in this case"?**

Acceleration acknowledges that it is proposing yet a third round of damages discovery, expert reports on damages, damages expert depositions, and more *Daubert* motions.

8

Acceleration's proposal is highly prejudicial to Activision, especially after Acceleration was already given a "final" opportunity to provide a damages proffer, and submitted seven legally insufficient theories that the Court excluded. Activision respectfully submits that Acceleration has had its day in court on damages, and that the Court and Activision should not have to expend further resources on this issue.

Acceleration's only other point is that it is entitled to a reasonable royalty if infringement is found (*See* D.I. 749 at 8-9). But the cases cited by Acceleration involve whether a district court should instantly dismiss a case after excluding a plaintiff's first attempt at presenting expert theories on damages. But the Federal Circuit has explained that "a patent owner may waive its right to a damages award when it deliberately abandons valid theories of recovery in a singular pursuit of an ultimately invalid damages theory." *Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 659-66 (Fed. Cir. 2017); *see also Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1312 (Fed. Cir. 2018) (agreeing the plaintiff "failed to present a damages case that can support the jury's verdict," and remanding "to the district court to determine whether [plaintiff] has waived the right to establish reasonable royalty damages under a new theory").

None of Acceleration's cited cases are like this one, where the Court (1) after excluding multiple expert and "fact based" damages theories from Acceleration; (2) gave Acceleration a "final" opportunity for a damages proffer; with (3) unlimited pages; and (4) the opportunity to hire a new damages expert; and where (5) Acceleration squandered this opportunity with seven overly aggressive nine-figure damages demands, all of which the Court excluded. Here, waiver is appropriate under the Federal Circuit's warnings, and the only fair resolution at this juncture is to find Acceleration waived its opportunity to seek a reasonable royalty and to dismiss the case.

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|  | */s/ Jack B. Blumenfeld* |
| OF COUNSEL: | Jack B. Blumenfeld (#1014)<br>Cameron P. Clark (#6647)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@morrisnichols.com<br>cclark@morrisnichols.com |
| B. Trent Webb<br>Aaron E. Hankel<br>John Garretson<br>Jordan T. Bergsten<br>Maxwell C. McGraw<br>SHOOK HARDY & BACON LLP<br>2555 Grand Boulevard<br>Kansas City, MO  64108<br>(816) 474-6550 | *Attorneys for Defendant* |

December 23, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on December 23, 2022, upon the following in the manner indicated:

| | |
|---|---|
| Philip A. Rovner, Esquire<br>Jonathan A. Choa, Esquire<br>POTTER ANDERSON & CORROON LLP<br>1313 North Market Street, 6th Floor<br>Wilmington, DE 19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Paul J. Andre, Esquire<br>Lisa Kobialka, Esquire<br>James R. Hannah, Esquire<br>Hannah Lee, Esquire<br>Michael H. Lee, Esquire<br>KRAMER LEVIN NAFTALIS & FRANKEL LLP<br>333 Twin Dolphin Drive, Suite 700<br>Redwood Shores, CA 94065<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Aaron M. Frankel, Esquire<br>Marcus A. Colucci, Esquire<br>Cristina Martinez, Esquire<br>Shannon H. Hedvat, Esquire<br>KRAMER LEVIN NAFTALIS & FRANKEL LLP<br>1177 Avenue of the Americas<br>New York, NY 10036<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Jack B. Blumenfeld*

_____
Jack B. Blumenfeld (#1014)