IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACCELERATION BAY LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 16-453 (WCB) |
| | ) |
| ACTIVISION BLIZZARD, INC., | ) **REDACTED - PUBLIC VERSION** |
| | ) |
| Defendant. | ) |

**DEFENDANT ACTIVISION BLIZZARD, INC.'S RESPONSE TO PLAINTIFF
ACCELERATION BAY'S RESPONSE TO JANUARY 18, 2023 ORDER (D.I. 754)**

OF COUNSEL:

B. Trent Webb
Aaron Hankel
John Garretson
Jordan T. Bergsten
Maxwell C. McGraw
SHOOK, HARDY & BACON LLP
2555 Ground Boulevard
Kansas City, MO 64108
(816) 474-6550

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendant*

**Original Filing Date: February 16, 2023**
**Redacted Filing Date: February 22, 2023**

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................................. 1

II.   REQUEST NO.1: PRODUCTION OF THE DRAFT BOEING/PANTHESIS LICENSE.1

III.  REQUEST NO.2: ACCELERATION BAY'S LATEST PROFFER IS LEGALLY
      INSUFFICIENT TO SUPPORT A JURY'S APPORTIONMENT ANALYSIS............... 2

IV.   REQUEST NO.3: ACCELERATION BAY PRODUCED ITS RECENT LICENSE ....... 9

V.    ACCELERATION BAY'S REQUEST FOR DISCOVERY OMITS ADDITIONAL,
      BURDENSOME, STEPS AND SEEKS IRRELEVANT DISCOVERY........................... 9

VI.   CONCLUSION................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.*,
  967 F.3d 1353 (Fed. Cir. 2020)................................................................................................6

*Brandeis Univ. v. Keebler Co.*,
  No. 12-CV-01508, 2013 WL 5911233 (N.D. Ill. Jan. 18, 2013).....................................11, 12

*Commonwealth Scientific and Industrial Research Organisation v. Cisco Sys., Inc.*,
  809 F.3d 1295 (Fed. Cir. 2015)................................................................................................5

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
  879 F.3d 1299 (Fed. Cir. 2018)................................................................................................6

*GoDaddy.com LLC v. RPost Commc'ns Ltd.*,
  No. 14-cv-00126, 2016 WL 2643003 (D. Ariz. May 10, 2016), *aff'd*, 685 F.
  App'x 992 (Fed. Cir. 2017).......................................................................................................5

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
  No. 18-452-WCB, 2022 WL 2800861 (D. Del. June 15, 2022)...........................................3, 4

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012).................................................................................................5, 9

*Qualcomm Inc. v. Broadcom Corp.*,
  05CV1662, 2007 WL 9776716 (S.D. Cal. Jan. 13, 2007) .....................................................13

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011)..............................................................................................12

*Vectura Ltd. v. GlaxoSmithKline LLC*,
  981 F.3d 1030 (Fed. Cir. 2020)................................................................................................3

*Visteon Glob. Techs., Inc. v. Garmin Int'l, Inc.*,
  No. 10-cv-10578, 2016 WL 5956325 (E.D. Mich. Oct. 14, 2016).......................................6, 8

**Rules and Statutes**

Federal Rule of Evidence 403.......................................................................................................12

I.  **INTRODUCTION**

Defendant Activision Blizzard responds below to Plaintiff Acceleration Bay's answers to the four questions from the Court in its January 18, 2023 Order (D.I. 754). Acceleration Bay has been afforded every opportunity to present an admissible damages case and has been rebuffed at every turn, with the Court excluding Acceleration Bay's damages theories for reasons such as: (1) applying the wrong hypothetical negotiation date; (2) using a jury verdict between different parties on different patents; (3) relying on fact witnesses to testify about licenses beyond their personal knowledge; (4) relying on a hearsay advertisement; (5) relying on an irrelevant Microsoft publishing agreement; (6) relying for apportionment on a single, insufficient Activision survey; and (7) relying on a "cost savings" opinion calculating that Activision would spend $2.4 billion dollars to, as the Court put it, "switch to an undefined alternative that the patentee contends does not exist." (D.I. 521; D.I. 578; D.I. 600; D.I. 692).

Acceleration Bay's answers to this Court's questions demonstrate that, yet again, it has no admissible evidence to support its nine-figure damages claim. The Court should reject Acceleration Bay's latest modification to its damages theory based only on a draft license agreement that is not properly apportioned to the patents or products at-issue in this case, a new settlement agreement entered many years after the hypothetical negotiation date, and an entirely irrelevant proposed acquisition tentatively scheduled to take place after the asserted patents expired in 2021 and 2022 (D.I. 542-1, pp. 1-2).

II.  **REQUEST NO.1: PRODUCTION OF THE DRAFT BOEING/PANTHESIS LICENSE.**

Acceleration Bay confirmed to the Court that no final, executed version of the Boeing/Panthesis License and accompanying Exhibits exists (D.I. 756 at 1), and instead submitted a draft copy it could locate in its records. (D.I. 756 at Ex. 1). But Acceleration Bay once again

1

incorrectly states that simply because the Court denied one challenge to Acceleration Bay's evidence, the Court has somehow "approved" that evidence for other uses. (*See* D.I. 692 (explaining, in an Order excluding damages opinions, that "Plaintiff characterizes that decision as an approval of Dr. Valerdi's opinion. It was not.") (internal cite omitted)).

The Court previously received argument from Activision about the absence of any final version of this agreement (D.I. 650, pp. 20-21; D.I. 651, pp. 11-14), and ruled that it "will not exclude Mr. Parr's opinions for relying on the Boeing/Panthesis License" and "will not strike Mr. Parr's report on the basis that the final Boeing/Panthesis agreement has not been produced." (D.I. 692, p. 13, 15). This is not, however, the same as the Court having "agreed Acceleration Bay could rely on this document," as Acceleration Bay claims (D.I. 756, p. 1).  When the Court previously addressed the Boeing/Panthesis license, it was to determine whether the license was sufficiently comparable to form the basis of an opinion in which the 12% rate from that license was further reduced to apportion for admittedly valuable unpatented elements. (*See* D.I. 692, pp. 2-3). That Order says nothing about whether the Boeing/Panthesis license meets the requirements for a license with "built-in" apportionment as Acceleration Bay contends, such that no such reductions are necessary. Further, the Court expressly deferred ruling on Activision's argument that the draft Boeing/Panthesis license relied on by Acceleration Bay should be excluded under the best evidence rule, stating the issue could be raised again later and that the Court "will not resolve Defendant's best evidence rule objection at this time." (D.I. 692, p. 15-16 n.5). Activision maintains its objections to the admission and any use of this draft agreement.

### III. REQUEST NO.2: ACCELERATION BAY'S LATEST PROFFER IS LEGALLY INSUFFICIENT TO SUPPORT A JURY'S APPORTIONMENT ANALYSIS.

The Court asked Acceleration Bay to disclose its theories and supporting evidence for its fact-based damages case in the event the Court concludes the Boeing/Panthesis license does not

2

provide built-in apportionment. (D.I. 754 at 2). Importantly, the Court cautioned that Acceleration Bay's response must comply with the Court's prior orders and that no more expert discovery would be permitted at this time. (*Id.*). In response, Acceleration Bay identified several general categories of evidence that it contends would enable a jury to conduct their own acceptable apportionment analysis. (D.I. 756 at 2–5). But none of Acceleration Bay's identified evidence is sufficient for the jury to conduct a legally permissible apportionment analysis. Acceleration Bay's damages theories once more should be rejected.

First, Acceleration Bay argues that the Boeing/Panthesis license "does include built-in apportionment," citing the Court's order denying a motion to exclude Mr. Parr's opinions for relying on this draft agreement. (D.I. 756, p. 2). In so doing, Acceleration Bay fails to address Activision's argument that this prior order merely "declined to hold that the Panthesis license was *per se* inadmissible," and that "[i]f anything, the proffer order said the opposite," given that the Court excluded an expert opinion for not apportioning down ***enough*** from the Boeing/Panthesis rate. (D.I. 752, pp. 1-2).

The Court did not previously find the Boeing/Panthesis license had "built-in" apportionment. An extraneous license can provide "built-in apportionment" only if it is "highly comparable" to the hypothetical license that the parties would have agreed to at the hypothetical negotiation. *Vectura Ltd. v. GlaxoSmithKline LLC*, 981 F.3d 1030, 1040-1041 (Fed. Cir. 2020). Here, there are many significant differences between the Boeing/Panthesis license and the hypothetical license that would have been entered into between the plaintiff and Activision. For example, the Boeing/Panthesis was exclusive, *see* D.I. 756-1 at pp. 8-9, whereas the hypothetical license is non-exclusive. *See IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452-WCB, 2022 WL 2800861, at *22 (D. Del. June 15, 2022)  (extraneous license insufficiently comparable

3

because the "license was exclusive, whereas a hypothetical negotiation in these cases would be for a nonexclusive license"). Likewise, the Boeing/Panthesis license "did not involve any of the parties to these cases." *Id.* The Boeing/Panthesis license also covered "Licensed Technology" that included technology, know-how and intellectual property well-beyond the asserted patents, *see* D.I. 756-1 at p. 6, such as source code, object code, documentation, know-how, copyrights, trade secrets, and trademarks. *IOENGINE*, 2022 WL 2800861, at *22 (extraneous license insufficiently comparable because it "covered several products, services, and other obligations in addition to the two patents recited in the license"). And even with respect to the asserted patents, the Boeing/Panthesis was putatively entered into a year before the claims were amended during prosecution to include a variety of critical and narrowing claim limitations, including m-regularity.

Second, Acceleration Bay does not attempt to explain how the factual evidence it now wishes to use for apportionment "compl[ies] with the prior orders of the Court." Nor could it. (D.I. 754, p. 2). As Activision has repeatedly pointed out, the Court's October 30, 2018 Order explained that it was affording Acceleration Bay a "final opportunity" to provide the Court with "a proffer of the case it intends to submit to the jury on damages," which "shall contain a ***fulsome explanation*** of ***all*** of Plaintiff's damages theories, [and] ***all*** evidence it plans to put on in support of those theories." (D.I. 619, p. 2) (emphasis added). But Acceleration Bay does not even attempt to identify where such evidence appears in that "final" proffer (D.I. 641). Instead, Acceleration Bay points to a later proffer (D.I. 700), filed in response to an Oral Order of the Court at D.I. 699. (*See* D.I. 756, pp. 2-5). Nothing in that Oral Order (or any other Court Order) permits Acceleration Bay to expand the evidence for its damages case beyond what it had disclosed in its "final" proffer (D.I. 641).

Acceleration Bay's response generally points to entire pages of its incorrect proffer (D.I.

4

700) rather than the actual evidence it intends to present, which prevents Activision from a fair chance to assess the full extent to which Acceleration Bay's most recent proposal violates the Court's October 30, 2018 Order (D.I. 619). The Court required Acceleration Bay's new proposal to comply with the Court's past orders (D.I. 754 at 2), but Acceleration Bay fails to make a showing that it does so, and effectively prevents Activision from addressing the issue through Acceleration Bay's broad and conclusory disclosures about the type of damages evidence it will present at trial. Acceleration Bay's proposal should be rejected for that reason.

Third, Acceleration Bay argues that asking the jury to conduct the apportionment analysis on its own is proper because it "need not be based on expert opinion." (D.I. 756 at 2–3). But Acceleration Bay fails to establish that a jury can decide the extent of apportionment where, as here, the plaintiff's expert admits that apportionment is necessary but provides no reliable methodology for calculating it. The Federal Circuit has explained that "qualitative testimony that an invention is valuable—without being anchored to a quantitative market valuation—is insufficiently reliable." *Commonwealth Scientific and Industrial Research Organisation v. Cisco Sys., Inc.*, 809 F.3d 1295, 1302 (Fed. Cir. 2015); *see also LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012) (affirming new trial on damages, and rejecting expert apportionment analysis based on "vague qualitative notions of the relative importance of the [patented] technology"). District courts, in evaluating the reliability of expert testimony on damages, thus frequently hold that vague qualitative evidence on the value of a patented invention does not give a jury what it needs to apportion between patented and unpatented elements in an accused product. *See GoDaddy.com LLC v. RPost Commc'ns Ltd.*, No. 14-cv-00126, 2016 WL 2643003, at *6 (D. Ariz. May 10, 2016), *aff'd*, 685 F. App'x 992 (Fed. Cir. 2017) (excluding, for lack of apportionment, expert opinion based on "vague qualitative notions of the relative

importance of the patented technology"); *Visteon Glob. Techs., Inc. v. Garmin Int'l, Inc.*, No. 10-cv-10578, 2016 WL 5956325, at *17 (E.D. Mich. Oct. 14, 2016) ("[W]ithout a calculation of the patented features' footprint in the marketplace, it is impossible for a jury to determine the profit that could actually be attributed to [defendant's] use of the patented features.") (internal quotes and alterations omitted). Here, Acceleration Bay proposes to rely on the same type of vague, qualitative analysis that courts have found insufficient to enable a jury to make the required apportionment calculations, such as Acceleration Bay's statement that "Drs. Medvidovic and Mitzenmacher will provide technical opinions regarding the benefits of the technology to the accused products." (D.I. 754, p. 3). This is not enough.

The cases cited by Acceleration Bay do not stand for the proposition that a jury can make the complex apportionment calculation needed in this case without expert guidance on a reliable methodology for doing so. In *Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1373–74 (Fed. Cir. 2020), the Federal Circuit affirmed the district court's decision to allow expert testimony based on two licenses, and found substantial evidence for a jury verdict based on expert damages testimony. The present case lacks any such substantial evidence and, if anything, *Bio-Rad* undermines Acceleration Bay's position by pointing to a case where the jury relied on the type of expert opinion on damages that is lacking here. In *Dow Chemical Company v. Mee Industries, Inc.*, the Federal Circuit rejected a district court's decision to award no damages in a bench trial where the court excluded a damages expert's opinions. 341 F.3d 1370, 1371–72 (Fed. Cir. 2003). That decision did not involve a jury trial or rulings on apportionment. In *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1313 n.2 (Fed. Cir. 2018), the Federal Circuit affirmed a damages award, holding that a jury was entitled to rely on the apportionment testimony of plaintiff's damages expert, and that a jury can award a higher amount than estimated by an expert

where "the record contains evidence that the expert's estimates were conservative and that the underlying evidence could support a higher award." None of these cases say anything about whether or when a jury can decide the extent of apportionment where, as here, the plaintiff's expert admits that apportionment is necessary but provides no reliable apportionment methodology. As the cases cited by Activision demonstrate, the vague, qualitative notions of patent value now proposed by Acceleration Bay do not suffice under these circumstances.

Finally, even if the Court were to decide that Acceleration Bay's new proposal complies with the Court's past orders and is supported by governing law, this evidence is still insufficient on its face to establish apportionment. The Court rejected the opinion of Acceleration Bay's expert Mr. Parr attempting to apportion down from the Boeing/Panthesis rate as being based solely on a narrowly focused survey, a methodology that failed to account for admittedly valuable unpatented features in Activision's games such as "story, characters, game quality, ease of use, quality of customer service, and compatibility with popular platforms." (D.I. 692, p. 9).

Acceleration Bay's proposal does nothing to fix this flaw. Acceleration Bay now merely appears to propose various forms of evidence to prop up the value of its patents and Activision's supposed need for that technology. But none of this evidence purports to value these admittedly valuable unpatented features so that the jury can subtract that value out from the Boeing/Panthesis rate, as the Court held Mr. Parr was required to do.

Acceleration Bay seeks to rely on expert testimony from four technical experts and from its inventors on this issue, but fails to point to any testimony from these witnesses on the value of these unpatented features, or even whether the inventors have personal knowledge of these features. (D.I. 756, p. 3).

Acceleration Bay seeks to rely on background testimony from Mr. Parr that was not

7

specifically excluded by this Court, but the Court has already ruled that he has fallen short on this issue. (*Id.*, p. 4). The Court previously held that Mr. Parr's opinions, which tried to make subtractions from the Boeing/Panthesis rate to satisfy apportionment concerns, did not subtract enough because his opinions failed to account for admittedly valuable unpatented features in Activision's games such as "story, characters, game quality, ease of use, quality of customer service, and compatibility with popular platforms." (D.I. 692, p. 9). Acceleration Bay does not cite to any specific part of Mr. Parr's report as accounting for the value of these unpatented features. Indeed, if any such disclosures existed, Acceleration Bay doubtlessly would have cited them in the first instance to prevent Mr. Parr's conclusions on damages from being excluded.

Acceleration Bay also states that it will rely on "Activision's own documents and witnesses," citing only to a single page of the second damages proffer (D.I. 700) that does not identify any specific documents, and once again invokes "Activision's survey evidence" that the Court has already rejected as unreliable on this exact point. (D.I. 756, p. 4).

Acceleration Bay now also argues that two accused games require no apportionment because they are "exclusively" multiplayer and thus allegedly infringe "100% of the time," but this argument fails as well. (*Id*). First, this claim is not factually correct. For instance, the Court in its August 29, 2018 Order on summary judgment accepted Activision's argument that "Plaintiff 'nowhere disputes that a customer, even once in online mode, has several non-accused game modes available, and must choose a multiplayer game with six or more players to form an accused network.'" (D.I. 578, p. 12). And even if Acceleration Bay's claim were factually correct, this is the same mistake that Mr. Parr made. That is, the Court has already specifically rejected the argument that Acceleration Bay can meet apportionment concerns solely by subtracting out the value of single-player games, as this approach ignores admittedly valuable unpatented features in

8

Activision's games such as "story, characters, game quality, ease of use, quality of customer service, and compatibility with popular platforms." (D.I. 692, p. 9).[1]

None of this evidence, even if allowed over the Court's prior Orders and governing case law, fixes Acceleration Bay's apportionment problem. Acceleration Bay's proposal leaves the jury without a reliable methodology for calculating and subtracting out the value of unpatented features, relying instead on only the type of "vague qualitative notions of the relative importance of the [patented] technology" that courts find insufficient. *LaserDynamics*, 694 F.3d at 69 (Fed. Cir. 2012). The Court should reject Acceleration Bay's insufficient new fact-based damages case on apportionment.

## IV. REQUEST NO.3: ACCELERATION BAY PRODUCED ITS RECENT LICENSE

No response required.

## V. ACCELERATION BAY'S REQUEST FOR DISCOVERY OMITS ADDITIONAL, BURDENSOME, STEPS AND SEEKS IRRELEVANT DISCOVERY

Acceleration Bay continues to point to "Acceleration Bay's recent license agreement" and "Activision's recent Acquisition" as justifying further discovery on damages. But if Acceleration Bay were allowed to proceed with its plan to use these two new items, the necessary amount of discovery and other analyses far exceeds what Acceleration Bay has described. This unfairly prejudices Activision, and there is no good cause to re-open fact discovery, expert discovery, and *Daubert* briefing as Acceleration Bay's proposal would require. This is especially true given that the new license and the acquisition post-date the hypothetical negotiation date by many years, and the acquisition also post-dates the expiration of the patents.

---

[1] "For Call of Duty, which has single player modes that are not accused of infringement," Acceleration Bay states that "the jury can address the apportionment based on the factual evidence presented at trial." (D.I. 756, p. 5.) But Acceleration does not identify what that factual evidence is, or how the jury could properly apportion out the patent value from the unpatented features.

9

Acceleration Bay's "Recent License Agreement"

As to the new 2020 license agreement, which was entered eight years after Acceleration Bay's claimed hypothetical negotiation date (and sixteen years after Activision's), Acceleration Bay's proposal to use it in new expert opinions would come at great expense to the parties without a sufficiently compelling reason.

First, Acceleration Bay suggests that it might rely on "deposition testimony relating to the negotiation of the agreement and the benefit Acceleration Bay obtained from the cross-license portion of the agreement to its business activities." (D.I. 756, p. 5). Acceleration Bay does not explain how many people might have personal knowledge on these issues, or how many depositions or hours of depositions Acceleration Bay anticipates. Neither Activision nor the Court has any way of knowing the proportionality of the discovery proposed by Acceleration Bay.

Second, for such depositions to be fruitful, Activision would need documents from both parties relevant to the agreements, including draft agreements, internal and external communications from both parties, and privilege logs. These documents also would be necessary for Activision to independently determine which people, beyond Acceleration Bay's prospective trial witnesses on these issues, Activision would need to depose. Acceleration Bay does not explain how it would produce the documents and testimony of the licensee. This exercise would undoubtedly require third-party subpoenas for documents and witnesses.

Third, Acceleration Bay proposes "limited supplementation of damages reports" to account for this discovery. While Activision agrees this would be necessary for a trial on these issues, such supplementation would be the third round of expert reports on damages in this case. (D.I. 756, p. 6). The Court has already ruled that there will be no further expert reports. (D.I. 692, p. 7; D.I. 754, p. 2). In any event, such additional expert discovery is not proportional to the needs of this

10

case. Acceleration Bay has already squandered a disproportionate amount of Activision's and the Court's resources in its attempt to prove a bloated and unsupportable damages claim.

Fourth, Acceleration Bay previously acknowledged, but now ignores, that the parties would likely need to take "expert discovery" in the form of expert depositions on these supplemental opinions to adequately prepare for trial, which would be the third round of damages expert depositions in this case. (D.I. 746, p. 3).

Fifth, Acceleration Bay likewise previously acknowledged, but now ignores, the need for another round of *Daubert* briefing on these issues (*see id*), even though Activision has already successfully moved to exclude at least twelve damages theories. (*see* D.I. 750, p. 2). And, if history is any guide, any new theories are likely to be excluded just like every such theory that came before.

The substance of this agreement, now that Acceleration Bay has finally disclosed it, only reinforces Activision's prior arguments showing why this agreement has no place in this case, and does not justify re-opening discovery. (*See* D.I. 750, pp. 7-8). This agreement only involved payment of ▇▇▇▇ to Acceleration Bay (D.I. 754, Ex. 2, p. 8), ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Acceleration Bay likely plans to rely on a different provision of that agreement saying "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" but this is a self-serving hearsay statement, that is speculative on its face, and which cannot form the basis of a reliable expert opinion. (D.I. 754, Ex. 2, p. 2). For this additional reason Acceleration Bay's recent settlement agreement does not justify additional discovery at this late stage of the case. *See Brandeis Univ. v. Keebler Co.*, No. 12-CV-01508, 2013 WL 5911233, at *8 (N.D. Ill. Jan. 18,

11

2013) (excluding an expert damages opinion for relying on "self-serving statements, apparently made for litigation purposes" in a settlement agreement about what the "settlement's value equals or exceeds") (internal quotes omitted).

### Activision's Recent Acquisition

As to "Microsoft's planned acquisition of Activision," this evidence would require similar discovery and briefing, which suffers from the same problems. Here, Acceleration Bay does not specifically request depositions, but neither does it disavow the need for any. Acceleration Bay seeks "documents and communications" on several issues, which appears to contemplate expensive custodial discovery, and appears to acknowledge the likelihood that a large number of privileged documents will exist, requiring a burdensome privilege review. (D.I. 756, p. 6). Here too, Acceleration Bay requests "limited supplementation of damages reports," but omits its prior acknowledgments that additional expert depositions and *Daubert* briefing would also be implicated, which the parties have already conducted many times over. (*Id.*).

Activision submits that the burden of this discovery is not proportional to the needs of the case for the reasons set out at D.I. 750. pp. 8-9, including because Acceleration Bay seeks to present to the jury a large acquisition price that is not sufficiently tied to the patents, running afoul of *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011), and Federal Rule of Evidence 403. One can only wonder how evidence about a proposed acquisition six years into this litigation over now-expired patents is relevant to any issue in this case. Acceleration Bay's only attempt to tie this massive, complex transaction to the facts of the case is a conclusory statement that "Acceleration Bay understands that a significant portion of the value attributed to Activision is tied to the accused products." (D.I. 754, pp. 5-6). This is not enough. Acceleration Bay only accuses two Call of Duty games of infringement (Call of Duty: Advanced Warfare and Call of

12

Duty: Black Ops III), but there are roughly 50 Call of Duty game titles in existence that would potentially be included in any acquisition of Activision. As such, adding this acquisition as damages evidence would take Acceleration Bay's existing shortcomings on apportionment and compound them beyond recognition. Acceleration Bay's proposal to drag this acquisition into the case is merely a thinly veiled attempt to put the $68 billion acquisition price before the jury. Even if there were any modicum of relevance to that acquisition, it would be massively outweighed by the unfair prejudice to Activision. *See Qualcomm Inc. v. Broadcom Corp.*, 05CV1662, 2007 WL 9776716, at *3–4 (S.D. Cal. Jan. 13, 2007) (declining to re-open discovery in a patent case to allow discovery on a corporate acquisition by alleged infringer).

## VI. CONCLUSION

Acceleration Bay possessed competent evidence during the first discovery phase of this case to present a sufficient opinion on damages,[2] but chose over and over again to ignore that evidence and swing for the fences, seeking to present nine-figure damages demands that the Court excluded over and again as inadmissible (*see* D.I. 750, p. 2). Good cause does not exist for the burdensome discovery requested by Acceleration Bay years after the close of fact and expert discovery in this case. The Court should find that Acceleration has waived a royalty in this case.

---

[2] For instance, a large portion of the games initially accused in this case were licensed under a 2006 arms-length license agreement to the asserted patents between Boeing and Sony. (*See* D.I. 237).

<table>
<tr><td>

OF COUNSEL:

B. Trent Webb
Aaron E. Hankel
John Garretson
Jordan T. Bergsten
Maxwell C. McGraw
SHOOK HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, MO  64108
(816) 474-6550

February 16, 2023

</td><td>

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*
_____
Jack B. Blumenfeld (#1014)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendant*

</td></tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 16, 2023, upon the following in the manner indicated:

| | |
|---|---|
| Philip A. Rovner, Esquire<br>Jonathan A. Choa, Esquire<br>POTTER ANDERSON & CORROON LLP<br>1313 North Market Street, 6th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Paul J. Andre, Esquire<br>Lisa Kobialka, Esquire<br>James R. Hannah, Esquire<br>Hannah Lee, Esquire<br>Michael H. Lee, Esquire<br>KRAMER LEVIN NAFTALIS & FRANKEL LLP<br>333 Twin Dolphin Drive, Suite 700<br>Redwood Shores, CA  94065<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Aaron M. Frankel, Esquire<br>Marcus A. Colucci, Esquire<br>Cristina Martinez, Esquire<br>Shannon H. Hedvat, Esquire<br>KRAMER LEVIN NAFTALIS & FRANKEL LLP<br>1177 Avenue of the Americas<br>New York, NY  10036<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

/s/ *Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)