IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ACCELERATION BAY LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 16-453-WCB |
| | § | |
| ACTIVISION BLIZZARD INC., | § | |
| | § | |
| *Defendant*. | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

In this patent case, the parties disagree about the appropriate path for moving the case forward. Plaintiff Acceleration Bay LLC ("Acceleration") argues that additional expert discovery is needed regarding damages, and after discovery is completed, the case should proceed to trial. Dkt. No. 746 at 3. Defendant Activision Blizzard Inc. ("Activision") argues that the case should be dismissed because Acceleration lacks an admissible damages theory and has therefore waived the right to a reasonable royalty. Dkt. No. 750 at 9. Acceleration's request for additional discovery is DENIED. Activision's request to dismiss the action is also DENIED.

**I.    Background**

This case was originally assigned to Judge Andrews. After substantial pretrial proceedings, he stayed the case pending the Federal Circuit's disposition of the appeal in the related action of *Acceleration Bay LLC v. 2K Sports, Inc.*, No. 16-455 (D. Del.) ("*Take-Two*"). Following the Federal Circuit's issuance of its opinion in *Take-Two*, Judge Andrews lifted the stay and granted in part the motion for summary judgment that Activision filed in light of the Federal Circuit's decision. Dkt. No. 743.

1

Prior to the appeal in the *Take-Two* case, Acceleration made multiple unsuccessful proffers of expert testimony on the issue of damages in this case. In August 2018, Judge Andrews struck a portion of the reasonable royalty opinion of Dr. Christine Meyer, a damages expert retained by Acceleration. Dkt. No. 578. Dr. Meyer's opinion relied on a jury verdict from another case. *Id.* at 27–28. Because Judge Andrews viewed the exclusion of Dr. Meyer's opinion as significantly hindering Acceleration's ability to put on an acceptable damages case, he requested additional briefing from the parties regarding whether Acceleration had any remaining admissible damages theories. Dkt. No. 619 at 1. That briefing was completed in October 2018, just five days prior to the scheduled trial. Judge Andrews then continued the trial because he determined that "it would not be possible to reach a decision on [Acceleration's] damages case prior to the scheduled start of trial." *Id.* at 2.

In his order continuing the trial, Judge Andrews stated that he would give Acceleration "a final opportunity to present [the court] with an admissible damages case," and that Acceleration could "supplement its expert reports if it wishe[d] to do so." *Id.* Judge Andrews further instructed Acceleration that after all supplementation and expert discovery was completed, Acceleration would be required to provide the court with "a proffer of the case it intends to submit to the jury on damages." *Id.* That proffer, he explained, needed to consist of "a fulsome explanation of all of Plaintiff's damages theories, all the evidence it plans to put on in support of those theories, and citations to Federal Circuit precedent supporting its admissibility and sufficiency." *Id.* at 2–3. Acceleration then requested that it be permitted to submit a report from a new damages expert, Russell Parr. Judge Andrews granted that request. Dkt. No. 630.

Acceleration filed its damages proffer on February 15, 2019. Dkt. No. 641. That proffer outlined three approaches to the reasonable royalty analysis offered by Mr. Parr: a "cost-saving"

approach, *id.* at 4–14; a "revenue-based" approach, *id.* at 15–20; and a "user-based" approach, *id.* at 21.  The proffer also pointed to other documentary and testimonial evidence, as well as expert opinions that, according to Acceleration Bay, provided additional support for Mr. Parr's reasonable royalty analysis.  *Id.* at 22–26.

With respect to the cost-saving approach, each of Mr. Parr's damages theories under that approach relied on the expert opinion of Dr. Ricardo Valerdi, who offered opinions on "the cost of rearchitecting each of the Accused Products in this case in order to develop a new networking platform for each of the accused [video] games."  Dkt. No. 692 at 5–6 (quoting Dkt. No. 444-1, Exh. C-2, at 1).  Judge Andrews excluded Dr. Valerdi's opinion because it provided "no basis in fact to conclude that the creation of the infringing network saved Defendant any money over a theoretical alternative."  *Id.* at 7.  He also excluded Mr. Parr's testimony regarding the cost-saving approach because his testimony relating to that approach "depend[ed] entirely on Dr. Valerdi's opinion."  *Id.*

With respect to the revenue-based approach, Mr. Parr's theory depended on two inputs: the "Boeing/Panthesis license" and internal customer surveys conducted by Activision.  The Boeing/Panthesis license is a July 2002 agreement between Boeing Management Company ("Boeing") and Panthesis Inc. that granted Panthesis an exclusive license to the asserted patents in this case and other intellectual property, along with the right to sublicense.[1]  *Id.* at 11–12; Dkt. No. 756-1 at 4.[2]  In return, Panthesis agreed to provide Boeing with five percent of Panthesis's stock, $5.6 million paid over time, and 12 percent of future revenue from the licensed products.  Dkt. No.

---

[1]  Boeing was the assignee of the asserted patents until December 10, 2014.  Dkt. No. 642-1, Exh. A ¶ 19.  Accordingly, the hypothetical negotiation in this case, which Acceleration argues would have taken place in September 2012, is treated as if it were conducted between Boeing and Activision.  Dkt. No. 749 at 1.

[2]  All citations to Dkt. No. 756-1 refer to the page number of the PDF document.

692 at 11; Dkt. No. 756-1 at 16–17. Mr. Parr adopted the 12 percent figure from the Boeing/Panthesis license as the royalty rate for his revenue-based approach to determining a reasonable royalty. Dkt. No. 641 at 16. The royalty base in Mr. Parr's analysis was the "world-wide revenues for the [accused] games." Dkt. No. 641 at 16.

Mr. Parr attempted to further apportion the revenues using Activision's internal surveys regarding the accused video games. Specifically, Mr. Parr relied on survey data indicating that "57 to 62 percent" of purchasers of Call of Duty: Black Ops III, one of the accused games, purchased the game "because of the infringing multiplayer modes." *Id.* at 19. Because that percentage was the lowest among the accused games, Mr. Parr took what he described as a "very conservative approach" and further apportioned the revenues for all the accused games by 57 percent. *Id.* at 19–20. What resulted was a measure of damages that multiplied the total revenues by the 12 percent royalty rate from the Boeing/Panthesis license, then multiplied that product by 57 percent based on the Activision survey information. *Id.* at 20.

Judge Andrews excluded Mr. Parr's revenue-based approach for failure to apportion adequately. In particular, Judge Andrews explained that the Activision surveys did not "attempt to discern what portion of a gamer's decision to buy the game is driven by the multiplayer functionality versus all of the other unpatented features." Dkt. No. 692 at 9. Judge Andrews also rejected Acceleration's suggestion—raised in two sentences in Acceleration's brief relating to the damages proffer—that the Boeing/Panthesis license could provide "built-in apportionment" for the revenue-based approach. *Id.* at 10. The court observed that Mr. Parr "d[id] not even mention the Boeing/Panthesis License in the apportionment section of his expert opinion," and that "Mr. Parr's apportionment opinion cannot survive on an opinion that he d[id] not express." *Id.* Because the Boeing/Panthesis license was a license to the patents-in-suit, Judge Andrews found that the

license was sufficiently technically comparable to the hypothetical license that would be applicable to a reasonable royalty calculation in this case. Moreover, although Judge Andrews noted that there were differences between the Boeing/Panthesis license and the hypothetical license in this case, he rejected Activision's argument that the Boeing/Panthesis license is not economically comparable to the hypothetical license. *Id.* at 12–13. He also ruled that Mr. Parr's reliance on that license did not itself provide a basis for excluding Mr. Parr's opinions at trial. *Id.*

With respect to the user-based approach, Mr. Parr again relied on the Boeing/Panthesis license and the Activision customer surveys. Mr. Parr determined that the average price of the accused games was $57, then multiplied that number by the 12 percent royalty rate from the Boeing/Panthesis license and the 57 percent apportionment factor he derived from the surveys. Dkt. No. 641 at 21. That figure, which represented a "per-user royalty," was then multiplied by the number of users of the infringing games. *Id.* Judge Andrews excluded that approach for the same reason that he excluded the revenue-based approach: because the user-based approach did not properly apportion the value of the patented features. Dkt. No. 692 at 9.

Having excluded Mr. Parr's cost-based, revenue-based, and user-based approaches, Judge Andrews recognized that his decision left Acceleration "with no intact damages theories." *Id.* at 5; *see also id.* at 7 ("As this was Plaintiff's final opportunity to present a damages case, Plaintiff will not have the opportunity to submit revised expert reports . . . .").

Undeterred, Acceleration notified the court a week later that it intended to "present a fact-based damages case based on the already developed fact record and evidence with expert support." Dkt. No. 694 at 1. Specifically, Acceleration proposed that Mr. Parr would testify regarding (1) the *Georgia-Pacific* factors; (2) "the Boeing/Panthesis license as comparable to the hypothetical negotiation in this case"; and (3) financial information regarding the accused games. *Id.*

Acceleration also proposed to introduce "factual evidence to establish the appropriate apportionment to the footprint of the inventions." *Id.* at 1–2. In response to that proposal, Judge Andrews ordered Acceleration to "submit a document explaining how its proposed damages testimony . . . complies with the previous order of the Court (D.I. 619) and, in any event, proffer the factual evidence [it will introduce] to establish the appropriate apportionment to the footprint of the inventions." Dkt. No. 699. Acceleration filed that document on October 18, 2019. Dkt. No. 700. The case was stayed pending the appeal in *Take-Two* before the court ruled on Acceleration's latest damages submission. Dkt. No. 711. The stay has now been lifted and the case has been reassigned to me.

On November 16, 2022, I ordered further briefing from the parties on the issue of damages, with the briefing to address the following questions: "(1) whether Acceleration Bay's damages proffer at Dkt. No. 700 is consistent with the prior orders of the court; (2) whether testimony from a lay witness may be used to demonstrate apportionment; (3) the extent to which intervening events since October 2019 may affect the substance of Acceleration Bay's damages theories; and (4) how resolution of those issues would affect further proceedings in this case." Dkt. No. 747. The parties filed simultaneous opening and responsive briefs regarding damages. Dkt Nos. 748–49, 752–53. On January 18, 2023, I entered an order requesting more information from Acceleration regarding its proposed damages evidence. Dkt. No. 754. Acceleration filed a response to that order, Dkt. No. 756, and Activision filed a statement regarding Acceleration's response, Dkt. No. 758. On March 20, 2023, I conducted a telephonic hearing to further explore the damages issue.

## II.   <u>Discussion</u>

### A.   **Waiver of Reasonable Royalty**

The primary issue before the court is whether Acceleration may be permitted to rely on its proposed fact-based damages theory at trial.  Activision contends that Judge Andrews gave Acceleration a final opportunity to present an admissible damages theory.  Having failed to do so, Activision argues, Acceleration has waived the right to a reasonable royalty.  Acceleration responds that its current proposed damages theory is consistent with the prior orders of the court and that it must be allowed to present a damages case because, in the event of a finding of infringement, the court is required by statute to award damages in an amount no less than a reasonable royalty.  35 U.S.C. § 284.

Cognizant of that statutory directive, the Federal Circuit has held that "reasonable royalty damages can be awarded even without [expert] testimony" in an amount that "the record evidence will support." *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381–82 (Fed. Cir. 2003).  The Federal Circuit applied that principle in *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014).  The district court in that case excluded the bulk of the parties' expert testimony on damages; based on that ruling, the district court granted summary judgment that neither party was entitled to any damages.  *Apple*, 757 F.3d at 1326.  The Federal Circuit reversed, explaining that "[i]f a patentee's evidence fails to support its specific royalty estimate, the fact finder is still required to determine what royalty is supported by the record." *Id.* at 1327.  The circuit court stated that a district court "may only award a zero royalty for infringement if there is no genuine issue of material fact that zero is the only reasonable royalty." *Id.* at 1328.  Such a factual issue can be presented, the court added, even if the patentee "fails to show that its royalty estimate is correct." *Id.*; *see also Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1371–72 (Fed. Cir. 2015).

Numerous district courts have similarly recognized that even in the absence of expert testimony on the issue of damages the court may not award zero damages unless there is no genuine factual dispute that zero is the only reasonable royalty. *See, e.g.*, *Microsource, LLC v. Eco World Grp., LLC*, 587 F. Supp. 3d 770, 829 (N.D. Iowa 2022); *Vaporstream, Inc. v. Snap Inc.*, No. 2:17-cv-220, 2020 WL 978731, at *5–7 (C.D. Cal. Feb. 28, 2020); *Banhazl v. Am. Ceramic Soc'y*, 602 F. Supp. 3d 198, 229 n.8 (D. Mass. 2022); *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 598 (D. Mass. 2018); *Twin Rivers Eng'g, Inc. v. Fieldpiece Instruments, Inc.*, No. 2:16-cv-4502, 2018 WL 6038277, at *21 (C.D. Cal. Apr. 24, 2018); *Mondis Tech. Ltd. v. LG Elecs., Inc.*, No. 15-4431, 2020 WL 1933979, at *3–5 (D.N.J. Apr. 22, 2020); *Thorne Rsch., Inc. v. Xymogen*, No. 2:13-cv-784, 2018 WL 1136079, at *2–4 (D. Utah Feb. 28, 2018); *Acceleron, LLC v. Dell Inc.*, No. 1:12-cv-4123, 2022 WL 1087683, at *9 (N.D. Ga. Mar. 7, 2022); *RSA Protective Techs., LLC v. Delta Sci. Corp.*, No. 19-6024, 2021 WL 4978462, at *5–6 (C.D. Cal. Oct. 20, 2021).

I am not prepared to conclude in this case that it is clear as a factual matter that Acceleration is entitled to no damages. Although Judge Andrews excluded Mr. Parr's reasonable royalty opinions based on the Boeing/Panthesis license because Mr. Parr did not conduct a proper apportionment analysis, the existence of the Boeing/Panthesis license is strong evidence that a reasonable royalty for infringement of the asserted patents is some amount greater than zero. And Activision has not provided any evidence in support of the proposition that a reasonable royalty for the asserted patents would be zero.[3] *See Microsource*, 587 F. Supp. 3d at 829 ("The moving party itself must provide evidence and argument to support a zero royalty.").

---

[3] In its most recent submission on the damages issue, Activision mentions the existence of another license to the asserted patents, "a 2006 arms-length license agreement to the asserted patents between Boeing and Sony." Dkt. No. 758 at 13 n.2. The existence of that agreement

To be sure, the Federal Circuit has explained that a patentee may waive its right to a reasonable royalty in certain circumstances. *Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 666 (Fed. Cir. 2017) (A patentee may waive the right to a reasonable royalty "when it deliberately abandons valid theories of recovery in a singular pursuit of an ultimately invalid damages theory."); *see also Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1312 (Fed. Cir. 2018) (remanding for a determination of "whether [the plaintiff] has waived the right to establish reasonable royalty damages under a new theory"). The *Promega* and *Finjan* cases, however, are not analogous to this case.

In *Promega*, the patentee presented evidence at trial regarding the worldwide sales of the accused products, and the jury awarded damages based on the worldwide sales figures. *Promega*, 875 F.3d at 655–57. After the trial, the defendant moved for judgment as a matter of law. The court granted that motion, holding that no reasonable jury could have found "that all of the [worldwide] accused products infringed." *Id.* at 657. Because the patentee did not dispute the defendant's "separate argument that [the patentee] presented insufficient evidence to support a lesser damages award," the district court concluded that the patentee had "waived any argument that the evidence at trial could support a damages calculation based on any subset of total sales." *Id.* at 657–58. Thus, the patentee explicitly abandoned the theory that a lesser damages award could be supported by the evidence at trial. The Federal Circuit recognized that point and held that when a patentee, after having its damages theory challenged, "does not dispute that it failed to present an alternative case for damages, a district court does not abuse its discretion by declining to give that plaintiff multiple chances to correct deficiencies in its arguments or the record." *Id.* at

---

provides further support for the proposition that Acceleration would be entitled to a reasonable royalty in an amount greater than zero.

666.  In this case, although Acceleration's damages theories have been excluded on multiple occasions, Acceleration has never conceded that it lacks an alternative case for damages, nor has it expressly waived any damages theory in response to a challenge from Activision.

In *Finjan*, neither the Federal Circuit nor the district court determined whether the patentee had waived its right to a reasonable royalty.  Rather, the court of appeals held that the evidence presented at trial was insufficient to support the jury's damages award.  *Finjan*, 879 F.3d at 1312. The court recognized that "the district court must award damages in an amount no less than a reasonable royalty . . . unless the patent holder has waived the right to damages based on alternate theories."  *Id.* (citing *Promega*, 875 F.3d at 666).  The court then remanded the case to the district court to determine whether such a waiver had occurred or whether to order a new trial on damages. *Id.*  The district court never had to make that determination, as the parties agreed to dismiss the case following the issuance of the Federal Circuit's opinion.  *See Finjan, Inc. v. Blue Coat Sys.*, No. 5:13-cv-3999, Dkt. No. 595 (N.D. Cal. Mar. 5, 2018).

In view of the unique circumstances present in the *Promega* case and the absence of an actual waiver determination in *Finjan*, I am not persuaded that Acceleration's failure to introduce admissible expert testimony on the issue of damages is sufficient to effect a waiver of Acceleration's right to a reasonable royalty.  A more appropriate conclusion, in view of Judge Andrews' prior orders, is that Acceleration has waived the right to present an expert opinion regarding the reasonable royalty to be awarded in this case.  Judge Andrews' most recent order on this issue strongly suggests that the "final opportunity" provided to Acceleration to present a damages case was meant to provide Acceleration a final opportunity to present an admissible expert opinion regarding a reasonable royalty.  *See* Dkt. No. 619 at 2; Dkt. No. 692 at 7 ("As this was Plaintiff's final opportunity to present a damages case, Plaintiff will not have an opportunity

to submit revised expert reports . . . .").  As noted, however, the absence of an expert opinion regarding a reasonable royalty amount is not itself a sufficient basis to award no damages in the event of a finding of infringement.

The remaining question is what evidence Acceleration will be permitted to introduce at trial regarding damages.  Acceleration has indicated that it intends to present the following evidence on the issue of damages:

- Factual testimony from Fred Holt, the inventor and founder of Panthesis, regarding the negotiation of the Boeing/Panthesis license, Dkt. No. 756 at 2;

- Testimony from Acceleration's experts, including "technical opinions regarding the benefits of the patented technology to the accused products" and "a tutorial on the technology at issue and the problems it addresses," *id.* at 3;

- Factual testimony from the inventors about "how they intended to use the technology under the Boeing/Panthesis license," *id.*;

- Testimony from Mr. Parr regarding "the key terms and economic comparability of the Boeing/Panthesis license, including his general application of the *Georgia-Pacific* factors, and both qualitative and quantitative assessments of the extent of the use of the infringing technology by the accused products," *id.* at 4; and

- Documents and testimony from Activision's witnesses "regarding the extent of use and importance of the infringing multiplayer functionality, including Activision's survey evidence," *id.*

Activision opposes Acceleration's proposal to rely on those items of evidence on two grounds.  First, Activision argues that the evidence on which Acceleration seeks to rely is not

legally sufficient to support a reasonable royalty award.   Second, Activision argues that Acceleration's proposal fails to comply with the prior orders of the court.

### 1.   Apportionment

With respect to Activision's first point, I agree that the jury's damages award must satisfy the typical requirements for apportionment that have been set forth by the Federal Circuit.   That court has made clear that the reasonable royalty award in each case must be carefully tied "to the claimed invention's footprint in the market place."   *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010).   That is, when the accused product is a multi-component product, the patentee "must apportion or separate the damages between the patented improvement and the conventional components of the multi[-]component product."   *Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*, 879 F.3d 1332, 1338 (Fed. Cir. 2018).   In the context of this case, those rules mean that the reasonable royalty awarded to Acceleration, if infringement is found, must compensate Acceleration for only the value that the patented invention adds to the accused video games, and not any other features associated with those games.   *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.").

Acceleration Bay asserts that its factual evidence will satisfy the legal requirements for apportionment because the Boeing/Panthesis license contains "built-in apportionment."   Dkt. No. 756 at 2.   To the contrary, I conclude as a matter of law that the Boeing/Panthesis license does not provide built-in apportionment.   In order for a license to provide built-in apportionment, it must be "highly comparable . . . such that principles of apportionment are effectively baked into the license."   *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452, 2022 WL 2800861, at *23 (D.

Del. June 15, 2022) (cleaned up).  That is, the license must "plainly reflect[] the value that the contracting parties settled on for the patent*."  Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, 35 F.4th 1367, 1380 (Fed. Cir. 2022).

Although it is true that the Boeing/Panthesis agreement contained a license to the asserted patents in this case, it differed from the license that would result from a hypothetical negotiation between Boeing and Activision in several respects.  First, the Boeing/Panthesis license also contained licenses to other forms of intellectual property, including copyrights, trade secrets, and trademarks.  *See* Dkt. No. 756-1 at 6–7.  Second, the Boeing/Panthesis license was broader than the license that would be the subject of the hypothetical negotiation in this case because, as Acceleration acknowledged, it was an exclusive license, and it included the right to sublicense.[4] Dkt. No. 641 at 10.  Finally, the Boeing/Panthesis license contained significant consideration beyond the 12 percent royalty rate; it also required Panthesis to pay a flat $5.6 million fee to Boeing and to grant 5% of Panthesis' stock to Boeing.  Dkt. No. 756-1 at 16–17.  Thus, it is evident that the 12 percent royalty rate does not "plainly reflect[]" the value that Boeing and Panthesis placed on a non-exclusive license to the asserted patents in particular.  *See Pavo Sols.*, 35 F.4th at 1380.

That conclusion is reinforced by the fact that Acceleration's current proposed damages theory would result in a higher damages award than Mr. Parr's revenue-based approach that was described in Acceleration's February 2019 proffer and ultimately excluded by the court.  In fact, the two theories are essentially the same, except that the current proposed theory does not apply the 57 percent apportionment rate that Mr. Parr derived from Activision's consumer surveys.  Mr. Parr's decision to further apportion the 12 percent royalty rate applied to the total revenues from

---

[4]  Mr. Parr acknowledged that the exclusive nature of the Boeing/Panthesis license distinguished it from the non-exclusive license that would have been the product of the hypothetical negotiation in this case.  Dkt. No. 642-1, Exh. A ¶¶ 110–11.

the accused games indicates that Mr. Parr (and Acceleration) believed that the Boeing/Panthesis license required further apportionment.  If Mr. Parr and Acceleration had believed that the Boeing/Panthesis license provided built-in apportionment, presumably they would have offered that theory instead of a theory that resulted in a damages award that was 43 percent lower than Acceleration's current proposal.

For those reasons, I conclude that the Boeing/Panthesis license does not contain built-in apportionment.  Thus, any damages award that reflects the 12 percent royalty rate from that license without any additional apportionment is highly unlikely to be supported by the record evidence.

Because the Boeing/Panthesis license does not contain built-in apportionment, it is difficult to predict exactly what level of apportionment might be established by the evidence that Acceleration seeks to introduce at trial.  However, that lack of clarity is insufficient to justify an award of no damages at this stage of the case, as the evidence strongly suggests that Acceleration would be entitled to some non-zero amount of damages in the event of an infringement finding.  It is true that the jury may not ultimately arrive at an award that is supported by the record, but it is "entirely speculative" to reach that conclusion before the trial has even begun and to foreclose Acceleration from even attempting to present a persuasive damages case.  *See Vaporstream*, 2020 WL 978731, at *7.  In the event that an award of damages by the jury is not supported by the record evidence, the court can resolve that issue after the close of the evidence or after the verdict, if necessary.  And if the court concludes that Acceleration has failed to present a legally sufficient damages case, it will be entitled, at least, to nominal damages.  *See AOS Holding Co. v. Bradford White Corp.*, No. 18-412, 2021 WL 5411103, at *38 (D. Del. Mar. 31, 2021), *aff'd sub nom. A.O. Smith Corp. v. Bradford White Corp.*, No. 2021-2022, 2022 WL 3053891 (Fed. Cir. Aug. 3, 2022).

### 2.   Prior Orders of the Court

With respect to Activision's second point, it is true that Judge Andrews required Acceleration to submit a "fulsome explanation" of the evidence on which it would seek to rely. Dkt. No. 619 at 2.  However, Acceleration's submission in response to that directive did mention, at least in general terms, the factual evidence on which it now seeks to rely.  *See* Dkt. No. 641 at 23–26.  To clarify the precise nature of the evidence that Acceleration will introduce, I discussed this issue during a teleconference with the parties.

As for Mr. Parr's testimony, Acceleration is correct that Judge Andrews did not exclude his testimony in its entirety.  For example, Judge Andrews did not exclude Mr. Parr's testimony on the ground that the Boeing/Panthesis license was not at least minimally comparable to the hypothetical negotiation in this case.  Dkt. No. 692 at 11–13.  And there is no indication that Judge Andrews excluded other aspects of Mr. Parr's testimony, such as his general framing of the hypothetical negotiation and the *Georgia-Pacific* factors.  To the extent Mr. Parr seeks to offer testimony that is within the scope of his report and has not been excluded, he will be permitted to do so.  *See Vaporstream*, 2020 WL 978731, at *5 (excluding the royalty rate opinion and "final reasonable royalty calculation" of the plaintiff's expert but explaining that "[b]ecause the Court did not exclude all of [the expert's] opinions, [the plaintiff] may present a damages case at trial containing [the expert's] remaining opinions, such as his analysis of the *Georgia-Pacific* factors and his analysis of the apportioned reasonable royalty base").  Regarding the other expert testimony that Acceleration seeks to introduce, those experts will of course not be permitted to offer testimony that is outside the scope of their respective reports.

To be clear, Acceleration will not be permitted to rely on damages theories that have already been excluded by the court.  For example, Acceleration will not be permitted to rely on

Activision's consumer survey evidence, which Judge Andrews held was not sufficient to demonstrate apportionment. Dkt. No. 692 at 8–9. Nor will Acceleration's counsel be permitted to argue that the jury should adopt a reasonable royalty based on the putative built-in apportionment of the Boeing/Panthesis license.

### B.   Additional Discovery

Acceleration has argued in its recent submissions to the court that additional discovery is required with respect to two issues. First, Acceleration argues that it is entitled to additional expert discovery regarding a recent litigation settlement agreement between Acceleration and [REDACTED] that covers the asserted patents. Dkt. No. 753 at 5–6. Second, Acceleration argues that it is entitled to additional expert discovery regarding Activision's recent acquisition by Microsoft, which occurred after the parties served their expert reports in this case. *Id.*

As a general matter, the Federal Rules of Civil Procedure make clear that discovery is limited to matters that are "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Given that discovery has long since closed in this case, I am particularly mindful of whether "the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* I find that neither of Acceleration's requests is proportional to the needs of the case; there will therefore be no additional discovery on those issues.

With regard to the Acceleration/[REDACTED] agreement, litigation settlement agreements generally "lack the probative value of licenses entered outside the framework of litigation," particularly when the agreement is "entered long after the date of the hypothetical negotiation." *IOENGINE*, 2022 WL 2800861, at *27. Here, the Acceleration/[REDACTED] agreement was executed in April 2020, more than seven years after the hypothetical negotiation in this case would have taken place. Dkt. No. 756-1 at 152. And the license itself is unlikely to be

particularly helpful to the jury, given that it also contains a cross-license to [REDACTED] patent portfolio.[5]  *Id.* at 139.  Beyond that, Judge Andrews made clear that no additional expert reports would be permitted on the issue of damages.  Dkt. No. 692 at 7.  Under these circumstances, I do not find that the likely benefit of additional discovery regarding the Acceleration/[REDACTED] agreement outweighs the significant burden of re-opening discovery at this late stage of the case.

With regard to Activision's acquisition by Microsoft, Acceleration has not articulated a persuasive basis to conclude that information about that acquisition is relevant.  Acceleration has suggested that "a significant portion of the value attributed to Activision is tied to the accused products," but it has not explained how that fact would impact the reasonable royalty analysis in the case, particularly in the absence of an expert opinion on the reasonable royalty to be awarded.  *See* Dkt. No. 756 at 5–6.  Thus, as in the case of the Acceleration/[REDACTED] agreement, the probative value of discovery regarding the acquisition does not outweigh the burden of re-opening discovery in this case.  *See Qualcomm Inc. v. Broadcom Corp.*, No. 05-1662, 2007 WL 9776716, at *3–4 (S.D. Cal. Jan. 13, 2007) (declining to allow discovery on a corporate acquisition made by the alleged infringer due to a lack of relevance).

### III.   Conclusion

In summary, Activision's request to dismiss the case for lack of admissible proof of damages is DENIED.  Acceleration's requests for additional discovery are also DENIED.  During the teleconference I discussed scheduling issues with the parties.  The week beginning October 30,

---

[5] Acceleration stated in the Acceleration/[REDACTED] agreement that it valued the cross-license from [REDACTED], Dkt. No. 756-1 at 137, which presumably represents a large portion of the value that Acceleration intends to attribute to the asserted patents through that agreement. However, self-serving statements in a settlement agreement about what the settlement's value is cannot "be the basis of a reliable calculation."  *Brandeis Univ. v. Keebler Co.*, No. 1:12-cv-01508, 2013 WL 5911233, at *8 (N.D. Ill. Jan. 18, 2013).

17

2023, was tentatively set for the five-day trial in this case, subject to the parties' determination that their witnesses are available during that period.  By no later than March 29, 2023, the parties should notify the court by letter whether that week will be suitable for the trial in this case.  If the week of October 30 is not suitable, the parties should confer and propose at least three alternative trial dates in their letter.

In an abundance of caution, this order has been filed under seal because many of the parties' submissions regarding issues discussed in this order were filed under seal.  Within three business days of the issuance of this order, the parties are directed to advise the court by letter whether they wish any portions of the order to remain under seal.  Any request that portions of the order should remain under seal must be supported by a particularized showing of need to limit public access to those portions of the order.

IT IS SO ORDERED.

SIGNED this 22nd day of March, 2023.


_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE