# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
———
(302) 351-9291
(302) 425-3012 FAX

**Jack B. Blumenfeld**
(302) 351-9291
(302) 425-3012 FAX
jblumenfeld@morrisnichols.com

July 14, 2023

The Honorable William C. Bryson               *VIA ELECTRONIC FILING*
United States District Court
   for the District of Delaware
844 North King Street
Wilmington, DE 19801

      Re:    *Acceleration Bay LLC v. Activision Blizzard Inc.*, C.A. No. 16-453 (WCB)

Dear Judge Bryson:

      We write on behalf of Defendant Activision to request additional briefing to narrow the issues for the April 29, 2024 trial, if not obviate the need for a trial altogether. Specifically, Activision seeks briefing on the following issues: (1) whether and to what extent Judge Andrews' legal rulings in the related *Take-Two* case on the scope of the asserted patent claims should be entered as claim constructions in this case;[1] and (2) whether, under those constructions, a reasonable jury could find that the accused games are literally configured to be both m-regular and incomplete, a requirement of every asserted claim.[2]

      On the first issue, since the last Markman order in this case in 2018 (D.I. 423), Judge Andrews has issued several rulings on the scope of the asserted claims in related cases. Those rulings should be entered as claim constructions in this case, to guide the parties in preparing for trial and to avoid a dispute on claim scope in the middle of trial proceedings. Specifically, all of the asserted claims in this case require a network to be "m-regular," which Judge Andrews construed (in both this case and *Take-Two*) to mean "a state that the network is *configured to maintain*, where each participant is connected to exactly m neighbor participants." (D.I. 275 at 14-15). Judge Andrews explained that this construction was intended to exclude "networks that

---

[1] *See Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*, 612 F. Supp. 3d 408, 420 (D. Del. 2020), *aff'd in part, appeal dismissed in part sub nom. Acceleration Bay LLC v. 2K Sports, Inc.*, 15 F.4th 1069 (Fed. Cir. 2021).

[2] Activision previously requested leave to renew summary judgment on certain targeted non-infringement issues based on the claim constructions in this case and clarifications in the *Take-Two* proceeding. (D.I. 708). To date, these issues have not been addressed on the merits. (D.I. 578 at 23). In the same order staying this case pending appeal in *Take-Two*, Judge Andrews denied Activision's motion "without prejudice to refiling once the … stay is lifted." (D.I. 711).

appear m-regular by chance." *Id*. In the *Take-Two* case, Judge Andrews clarified the legal meaning of that construction. As one example, Judge Andrews clarified that a network is not "configured to maintain" m-regular connections where "the players' actions determine how connections are formed." *Take-Two*, 612 F. Supp. 3d at 420. This is a legal ruling on the scope of claims also asserted in this case, and for correctness and consistency across cases should be entered as a claim construction in this case. Activision believes the parties should brief the issue now rather than take it up just before or in the middle of trial.

On the second issue, since Judge Andrews' original summary judgment order in 2018 (D.I. 578), various rulings have narrowed the case to a single, case-dispositive issue that has not been addressed on the merits: whether there is any genuine issue of material fact as to literal infringement of the requirement that a network be both "m-regular" and "incomplete." Since that time, the Court has provided significant guidance on its constructions requiring networks to be "configured to maintain" m-regularity, as discussed above on the impact of player actions on m-regularity.[3] In addition, during summary judgment briefing in 2018, this issue was not case-dispositive, because at that point not all asserted claims required a network to be both "m-regular" and "incomplete." Now all asserted claims require an m-regular, incomplete network.[4] Further, back in 2018, Plaintiff was asserting infringement of these terms under the doctrine of equivalents, which can be less susceptible to summary judgment.[5] But there is no longer any doctrine of equivalents issue on the "m-regular" term in this case. (D.I. 743, p. 15). Finally, Plaintiff only recently abandoned its infringement theory that the entire gameplay in the accused Call of Duty game infringes, and now focuses only on the specific voice chat features that accompany that gameplay (*see* D.I. 743, p. 9) (referred to by Acceleration as the "connectivity graph network"). With all of these changes since 2018, the literal infringement issue is now ripe for summary judgment.

The ruling from *Take-Two* about the impact of player actions on m-regularity provides a helpful example on why targeted summary judgment briefing is appropriate after the many developments since 2018. For Call of Duty's voice chat network, the evidence shows that Activision configures that network to be **complete**, with every participant directly connected to every other participant (*see* D.I. 731, p. 10). The evidence also shows that the only reason such a

---

[3] Judge Andrews also clarified which participant connections must be counted in assessing m-regularity as construed. *Take-Two*, 612 F. Supp. 3d at 9 ("The server is, however, a participant in the network because it transfers data back and forth between other network participants. These patent claims are directed to network management, so what matters is whether the server is a participant in the network, not whether it is making jump shots or grabbing rebounds.").

[4] Both Call of Duty and Destiny are accused of infringing claim 1 of the '147 Patent and claims 1 and 11 of the '069 Patent. D.I. 590, p. 7. World of Warcraft is accused of infringing claim 12 of the '344 Patent and claim 13 of the '966 Patent. *Id*. The '497 Patent has been withdrawn.

[5] *See Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1583 (Fed. Cir. 1996) (noting that "[i]nfringement under the doctrine of equivalents frequently turns on questions of fact," and reversing summary judgment of no infringement under the doctrine of equivalents); *see also Edgewell Pers. Care Brands, LLC v. Munchkin, Inc.*, 998 F.3d 917, 925 (Fed. Cir. 2021).

The Honorable William C. Bryson
July 14, 2023
Page 3

network would be incomplete is if a player entered high security settings on their network hardware, which is something Activision encourages players ***not*** to do. (*Id*).  It also shows that even under Plaintiff's theories any m-regularity would have to result from a very specific combination of such settings by the players in a game. (*Id.*). When Activision argued that the *Take-Two* ruling on player actions collaterally estops Plaintiff's infringement theories against Call of Duty, Plaintiff did not dispute that Activision's chat network functions in this way. (*see* D.I. 735, p. 13).  Instead, Plaintiff argued that the issues were not "identical" as required for collateral estoppel, because in *Take-Two* network connections were decided by player movements ***during*** the game, whereas here network configuration is determined by security settings a player enters ***before*** a game. (*Id.*).  Judge Andrews agreed with Plaintiff on the narrow issue before him. (D.I. 743, p. 10) ("I find that these infringement issues are not the same.").  But the Court has never decided, on the merits, the broader issue of whether on these undisputed facts about Activision's network, any reasonable jury could find that network "configured to maintain" m-regularity, especially in light of the clarified construction of that term.  Activision contends it could not, and respectfully requests briefing on this narrow issue and other comparably narrow issues deciding m-regularity and incompleteness for the remaining games.

Plaintiff will doubtless argue, as it previously has, that there has been enough briefing on summary judgment. But that is not a sufficient reason to mobilize the substantial resources necessary for a jury trial when no genuine fact issues exist.  And although Activision's original summary judgment motion did seek dismissal of certain infringement theories based on Plaintiff's inability to establish m-regularity and incompleteness (*see* D.I. 442, p. 10), the Court did not address these arguments on the merits, noting that the parties had briefed too many issues. (D.I. 578, p. 23). Of the issues the Court addressed on the merits from that briefing, Activision obtained invalidity rulings on two asserted patents, exclusion of Plaintiff's sole damages theory, and dismissal of roughly half of all remaining infringement theories.[6]  The later-decided related cases significantly benefited from these rulings, and have now been dismissed on non-infringement grounds. *See id.* ("Plaintiff does not reargue most of those points in this case").[7]

As described above, important developments in the case since summary judgment was originally briefed in 2018 have now focused the case on the narrow, case-dispositive issues of literal m-regularity and incompleteness, and these developments were not available to shape the

---

[6]   *See Acceleration Bay LLC v. Electronic Arts Inc.,* 16-454-RGA, 2019 WL 1376036, (D. Del. March 27, 2019) (explaining that in this case, the Court "granted summary judgment of invalidity of the asserted claims of the '634 Patent and claims 11, 15, and 16 of the '147 Patent" and "also granted Activision summary judgment of noninfringement of the '344, '966, and '497 Patents as to certain accused games in that case").

[7]   To the extent the Court views this request as a motion for reconsideration, it is more akin to the situation in *Kroy IP Holdings, LLC v. Autozone, Inc.*, No. 2:13-CV-888-WCB, 2015 WL 557123, at *2–3 (E.D. Tex. Feb. 10, 2015), where a party was "not simply requesting that the Court revisit a matter that the Court has already resolved after a full presentation by the parties," but that "[i]n effect, what they are asking for is not reconsideration, but consideration of their arguments in the first instance" and that the court should thus "entertain the defendants' motion for reconsideration without burdening that motion with the need to demonstrate manifest error."

The Honorable William C. Bryson
July 14, 2023
Page 4

parties' arguments in 2018.  Activision now presents a narrow and case-dispositive issue that the Court has never addressed on the merits, and the interests of justice and judicial economy dictate that the issue should be addressed now.

As such, Activision respectfully requests 25 pages of briefing on the claim construction and summary judgment issues described above, or for whatever other relief the Court finds just under the circumstances. We have discussed this issue with counsel for Plaintiff, who has advised us that Plaintiff opposes this request.

Respectfully,

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)

JBB/bac

cc:     All Counsel of Record (via electronic mail)