IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ACCELERATION BAY LLC, | § § § § § § § § § § § § § | |
| *Plaintiff*, | | |
| v. | | Civil Action No. 16-453-WCB |
| ACTIVISION BLIZZARD INC., | | |
| *Defendant*. | | |

## SUPPLEMENTAL CLAIM CONSTRUCTION ORDER

On July 19, 2023, I ordered the parties to provide briefing regarding a single claim construction dispute that had come to light in a pair of letters that the parties submitted to the court. Dkt. No. 781. Specifically, I ordered the parties to brief the question whether "there is a distinction, for purposes of determining whether a network is configured to maintain m-regularity, between actions taken by the player during the game and actions taken by the player before the game starts." *Id.* at 5. This order provides my resolution of that question.

**I.   Background**

Plaintiff Acceleration Bay LLC ("Acceleration") alleges that certain multiplayer video games sold by defendant Activision Blizzard Inc. ("Activision") infringe the claims of Acceleration's patents.[1] As relevant here, each of the asserted claims requires a network that is "m-regular" and "incomplete." Dkt. No. 778 at 1. During the claim construction proceedings in this case, Judge Andrews construed "m-regular" to mean "[a] state that the network is configured

---

[1] The patents asserted by Acceleration are U.S. Patent Nos. 6,701,344 ("the '344 patent"); 6,714,966 ("the '966 patent"); 6,829,634 ("the '634 patent"); and 6,910,069 ("the '069 patent").

1

to maintain, where each participant is connected to exactly m neighbor participants." Dkt. No. 275 at 14.

In a related case involving the same patents, Judge Andrews clarified his construction of "m-regular," noting that a network is not "configured to maintain" m-regularity when "the players' actions determine how connections are formed." *Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*, No. 16-455, Dkt. No. 492 at 15 (D. Del. Mar. 23, 2020). In my July 19 order, I agreed with Judge Andrews' construction and concluded that in this case, a network will similarly "not be considered 'm-regular' if the players' actions determine how connections are formed." Dkt. No. 781 at 2.

In a letter filed on July 14, 2023, Activision argued that it should be permitted to file an additional summary judgment motion directed to the "voice chat" feature of one of the accused games, Call of Duty ("CoD"). Dkt. No. 778 at 2–3. In Activision's view, any m-regularity in the CoD voice chat network is determined entirely "by player actions," and thus that network falls outside the scope of the asserted claims. Dkt. No. 731 at 10. The specific player action, Activision contended, would be a player "enter[ing] high enough security settings on their network hardware." Dkt. No. 778 at 3.

My July 19 order was issued in response to Activision's July 14 letter and a responsive letter from Acceleration. In that order, I reiterated that a network is not "m-regular" if "the players' actions determine how connections are formed." Dkt. No. 781 at 2. The point that remained unresolved, however, was whether the "actions" referred to in that statement are limited to the player's in-game actions (as was the case in *Take-Two*, *see* Dkt. No. 743 at 10), or whether they include actions taken by the player both during gameplay and before the game has started. I therefore ordered the parties to brief that issue.

2

**II.    Discussion**

The parties have now filed competing briefs outlining their positions with respect to this claim construction dispute. Dkt. Nos. 784, 785, 787. Activision argues that there is no distinction between pre-game player actions and in-game player actions for purposes of determining m-regularity. Dkt. No. 784 at 1. Acceleration, on the other hand, argues that pre-game player actions may "impact[] how particular connections are formed, so long as the network itself is configured to form an m-regular network as a whole." Dkt. No. 785 at 1.

A close examination of Judge Andrews' order in the *Take-Two* case provides considerable insight on this issue. In that order, Judge Andrews explained that "a network is not m-regular if the participants just happen to connect to the same number of other participants occasionally." *Take-Two*, Dkt. No. 492 at 14. Rather, the network must be "configured (or designed) to have each participant connected to m neighbors." *Id.* Judge Andrews clarified that Acceleration need not show "that the accused networks are m-regular 100 percent of the time," but must show "that if the network falls out of the m-regular state, the network responds by immediately trying to return to that configuration." *Id.* at 15. In a case in which the players' in-game actions determine whether the network is m-regular, Judge Andrews explained, "the network is not 'configured to maintain' any particular state." *Id.*

Judge Andrews' analysis in *Take-Two* is consistent with a disclaimer made by Acceleration during prosecution of the application that became the '344 patent. During prosecution, Acceleration sought to distinguish its claims over a prior art reference, "Alagar," and argued that Alagar did not disclose an m-regular network because the reference "coincidentally show[ed] a 4-regular network" even though that was "not the typical situation" of the configuration described in Alagar. Dkt. No. 784-1 at 10. What the claims required, Acceleration explained, was that "the

3

computer network be m-regular at substantially all times when there are not new nodes entering or leaving the network." *Id.*

In support of its position, Acceleration argues that adopting Acceleration's view would exclude certain preferred embodiments from the claims. For example, the specification of the '069 patent describes an example in which there are an odd number of computers connected to the network. '069 patent, col. 14, line 52, through col. 15, line 6. In that situation, the specification explains that when an odd number of computers are connected, "one of the computers will have less than that odd number of internal connections," and thus "the broadcast network is neither m-regular nor m-connected." *Id.* at col. 14, line 64, through col. 15, line 2. The specification adds, however, that "[w]hen the next computer connects to the broadcast channel, it can again become m-regular and m-connected." *Id.* at col. 15, ll. 2–4. That is, "the broadcast channel toggles between being and not being m-regular." *Id.* at col. 15, ll. 5–6. That embodiment is not inconsistent with Judge Andrews's discussion above, which requires merely that the network "immediately try[] to return" to an m-regular configuration when one no longer exists. *See Take-Two*, Dkt. No. 492 at 15.

In view of Judge Andrews's order in *Take-Two* and the intrinsic record, it is clear that the operative distinction for purposes of determining m-regularity is not whether a player's actions were taken during the game or prior to the start of gameplay. Instead, the operative question is how the network behaves when it falls out of an m-regular state. If the network "responds by immediately trying to return to [an m-regular] configuration," then it is likely configured to maintain m-regularity. *See id.* at 15. If not, the network is not "'configured to maintain' any particular state." *See id.*

4

As noted above, Activision suggests that m-regularity occurs in the CoD voice chat feature only when the players use certain security settings on their network devices. In the situation in which a player does not use those certain settings, presumably the network is not m-regular and makes no effort to become m-regular. But if those settings are used, in Activision's view the network is m-regular. That arrangement suggests a network that is not "configured to maintain" any particular state, and therefore would not be "m-regular" as that term is used in the asserted claims.

In its brief, Acceleration suggests that the factual scenario presented by this case is somewhat more complex than it is characterized by Activision. For example, Acceleration suggests that regardless of the players' actions, "so long as there are a sufficient number of participants, the ultimate network that Call of Duty assembles will be m-regular." Dkt. No. 785 at 6. Accordingly, in Acceleration's view, "Call of Duty is configured to create an m-regular network and does not depend on any specific pre-game actions to do so." *Id.* If Acceleration is able to establish that proposition as a factual matter at trial, my disposition of the present claim construction dispute would not preclude a finding of infringement.

IT IS SO ORDERED.

SIGNED this 20th day of September, 2023.

WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE