IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACCELERATION BAY LLC, | ) |
| Plaintiff, | ) REDACTED - PUBLIC VERSION |
| v. | ) C.A. No. 16-453 (WCB) |
| ACTIVISION BLIZZARD, INC., | ) |
| Defendant. | ) |

**ACTIVISION BLIZZARD, INC.'S MOTION FOR LEAVE TO SUPPLEMENT EXPERT REPORT TO ADDRESS NEW CLAIM CONSTRUCTION RULINGS**

Following the Court's September 20, 2023 Supplemental Claim Construction Order (D.I. 788), Defendant Activision seeks leave to have its technical expert, Dr. Stephen Wicker, supplement his report on non-infringement to address the Court's new rulings. Activision provided a ten-page proposed supplemental report to Plaintiff Acceleration on October 20, 2023 (attached as Exhibit A). Dr. Wicker's supplemental opinions would be helpful to the jury on an important issue for trial. Further, those opinions would not unfairly prejudice Acceleration. Trial is six months away, Plaintiff will have the opportunity to depose Dr. Wicker on these opinions, and the parties will have to exchange new pre-trial disclosures to account for changes since the last trial setting in this case in 2018. Further, it would be highly prejudicial for Activision to go to trial without the ability to have its expert opine on the effect of the new claim construction on infringement. Activision thus respectfully submits that good cause exists to supplement Dr. Wicker's non-infringement report.

**I.   Nature and Stage of Proceedings and Statement of Facts**

Opening expert reports were originally served in 2017. On November 13, 2017, Activision served its initial reports on non-infringement from its then-technical experts Drs. John Kelly and Michael Macedonia. (*See* D.I. 355). But this case was continued until October 29, 2018, and was

then continued again "indefinitely" until the Court issued an Order in October 2022 setting trial for April 29, 2024. (D.I. 613, 744).

When this case was set for trial in 2024, Activision reached out to Acceleration about substituting Activision's technical experts due to intervening events since 2018. On May 23, 2023, the Court entered the parties' Stipulation and Order to Substitute Expert Witnesses, which resulted in Dr. Wicker substituting in as Activision's technical expert on non-infringement. (D.I. 777). Based on the information then available, that stipulation stated the following:

> After clearing objections under the protective order, Activision's substitute expert shall identify, by report and paragraph number, adopted opinions by no later than **August 25, 2023**. Activision's substitute expert shall not offer new opinions, rely on new documents or exhibits, or provide supplemental reports without agreement by the parties.

(D.I. 777, p. 2) (emph. in orig.). That occurred as scheduled. The stipulation also provided: "After the substitute expert provides the identification of adopted opinions, Acceleration Bay will be allowed to take a one-day (7 hour) deposition of the substitute expert by **November 17, 2023**." (*Id.*). That deposition has been scheduled for November 15, 2023.

Since that substitution of Dr. Wicker, a new claim construction issue arose and was resolved by the Court. On July 19, 2023, this Court ordered briefing on: "whether there is a distinction, for purposes of determining whether a network is configured to maintain m-regularity, between actions taken by the player during the game and actions taken by the player before the game starts." (D.I. 781). On September 20, 2023, the Court issued a Supplemental Claim Construction Order resolving that issue, re-iterating "that a network is not 'm-regular' if 'the players' actions determine how connections are formed," and explaining: "the operative distinction for purposes of determining m-regularity is not whether a player's actions were taken during the game or prior to the start of gameplay." (D.I. 788, pp. 2, 4).

Activision now seeks leave to supplement Dr. Wicker's expert opinions to address the Court's new legal rulings. Thirty days after the Court's Supplemental Claim Construction Order, on October 20, 2023, Activision sent Acceleration a ten-page supplemental report from Dr. Wicker explaining how the Court's Order affected his hundreds of pages of adopted opinions on non-infringement on Acceleration's four asserted patents that span three accused game titles. Acceleration counsel took the position that leave was necessary and indicated it would oppose leave. The parties met and conferred on October 27, 2023, and are at an impasse on this issue.

II.     **Argument**

Dr. Wicker's opinion would help educate the jury on the impact of the Court's recent supplemental claim construction order, which affects the scope of the patents asserted in this case. Indeed, the Court's rulings may dispose of infringement in this case, as they did in the related *Take-Two* case on these same patents.[1] The Court has now entered a supplemental claim construction ruling rejecting Acceleration's argument that the ruling is limited to in-game, rather than pre-game, player actions. (D.I. 788). It would benefit the jury for Dr. Wicker to be able to explain why in his opinion the record evidence shows non-infringement under these rulings. Activision should be given an opportunity to have its expert address the new claim construction in expert reports and at trial.[2]

---

[1] There, Judge Andrews held that the accused Grand Theft Auto Online game did not infringe as a matter of law because, even under Acceleration's theories, the accused networks "might" or "might not" be m-regular depending on where players choose to move their characters in the game. *Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*, 612 F.Supp.3d 408 (D. Del. Mar. 23, 2020), *aff'd in part, dismissed in part,* 15 F.4th 1069 (Fed. Cir. 2021).

[2] Acceleration has indicated that if Activision's motion for leave is granted then Acceleration will likewise seek leave to serve a responsive report on this issue. As discussed below, this wait-and-see approach belies any claim of unfair prejudice.

Courts often grant leave for experts to supplement their opinions when the Court enters a new ruling on claim construction, especially where neither side had requested the adopted construction at the time of opening expert reports. For instance, in *Mformation Techs., Inc. v. Rsch. in Motion Ltd.*, 08-04990, 2012 WL 13063633, at *1 (N.D. Cal. May 24, 2012), the court found "good cause" for expert supplementation "in light of the claim construction presented in the Court's recent May 10 Order," despite "the fact that this case is on the eve of trial." *See also Ultravision Techs., LLC v. Govision*, LLC, No. 18CV00100, 2020 WL 10692708, at *1 (E.D. Tex. Dec. 17, 2020) (granting motion for leave to supplement opinions with an eight-page proposed report where a portion of the Court's construction "was not advocated for by either party" at the time expert reports were due); *Newport Corp. v. Lighthouse Photonics, Inc.*, 12-0719, 2014 WL 12597076, at *2 (C.D. Cal. June 25, 2014) (noting that after the court construed three claims it granted leave for the parties to "submit supplemental expert reports addressing the construed claims") (internal alterations omitted). The reasoning of these cases applies equally here to establish good cause for the proposed supplemental report.

Courts in the Third Circuit analyze the well-known *Pennypack* factors to assess the prejudice of disclosing expert opinions like the one Activision proposes here outside the previously ordered timeframe for doing so:

> Courts in the Third Circuit consider the *Pennypack* factors to determine whether a failure to disclose was harmless or substantially justified: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the possibility of curing the prejudice; (3) the potential disruption of an orderly and efficient trial; (4) the presence of bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the information withheld. The exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence. The determination whether to exclude evidence is within the discretion of the district court.

*TQ Delta, LLC v. 2Wire, Inc.*, 13-1835, 2021 WL 3525234, at *1 (D. Del. Aug. 11, 2021) (applying *Pennypack* factors to grant "leave to serve an expert surreply report on invalidity") (internal citations quotations, and alterations omitted); *see also Vifor Fresenius Medical Care Renal Pharma Ltd. v. Teva Pharms. USA, Inc.*, 20-911, D.I. 276 (D. Del. May 16, 2022) (analyzing the *Pennypack* factors and denying plaintiff's motion to strike where plaintiff did not suffer any unfair prejudice and where plaintiff was able to cure any prejudice in a supplemental reply report) (Ex. B).

Here, each of these factors favors supplementation. On the first factor, Acceleration has no credible claim of prejudice or surprise. There is no way Activision could have directly addressed the Court's recent legal rulings in 2018, years before the Court issued those rulings in 2023. Further, Acceleration should have assessed whether its experts needed to supplement their reports in light of the recent Supplemental Order on Claim Construction in this case. Acceleration cannot claim surprise that Activision did so. Nor is there prejudice—Acceleration received Dr. Wicker's ten-page supplemental report more than three weeks before Dr. Wicker's upcoming deposition scheduled November 15, 2023. Also, trial is about six months away, and it will be months before the parties start re-working pre-trial disclosures such as deposition designations and jury instructions for trial. Thus, there is sufficient time for Acceleration to adjust its trial strategy, if needed, for these proposed supplemental opinions.

On the second factor, to the extent there were any prejudice, it could be easily cured in the remaining six months before trial. On the parties' meet and confer, Acceleration was unwilling to propose any remedy to cure its alleged prejudice, but conceded that if the Court grants the present motion for leave Acceleration will seek leave to respond in a supplemental report. Acceleration

thus tacitly confirms that there is time for Dr. Wicker's proposed supplement, and for any needed response from Acceleration.

On the third factor, there will be no disruption to the April 2024 trial and pretrial disclosures will have to be re-worked due to all of the changes in the scope of this case since the parties last made these exchanges in 2018.

On the fourth factor, there is no bad faith or willfulness in not providing these opinions earlier. Acceleration's own experts did not specifically opine on the role of player activities on m-regularity in 2017. When the Court resolved the claim construction dispute on this issue (D.I. 788), Activision diligently worked to provide a complete ten-page supplement to Acceleration across the entire scope of this complex case within thirty days of that Order.

Acceleration complains that Activision should have raised the issue of leave with Acceleration in the weeks since September 20 while Dr. Wicker was preparing his supplement. During that period, Dr. Wicker needed to assess the effect of the Court's recent rulings on hundreds of pages on non-infringement opinions spanning four asserted patents across three accused game titles. Within thirty days of the Court's ruling, Acceleration had the ten-page supplement. With that supplement, Acceleration has been unwilling to discuss specific circumstances under which that supplement can be offered at trial.[3]

On the fifth factor, there can be no denying the importance of this issue that Dr. Wicker would be directly addressing for the first time. This "player movement" issue on its own disposed of all infringement claims, as a matter of law, against the Grand Theft Auto Online game in *Take-*

---

[3] Acceleration did suggest that if Activision further reduced Dr. Wicker's ten-page proposed supplement (two pages of which merely summarizes Court orders), then Acceleration would consider withdrawing its opposition. But Activision contends the entire supplement is proper, and neither at the meet-and-confer nor in the week leading up to it did Acceleration point to any portion of Dr. Wicker's proposed supplement as being more allegedly objectionable than any other.

*Two*. 612 F.Supp.3d 408 at 420. When Activision argued here that those same opinions collaterally estopped Acceleration from asserting infringement against the accused Call of Duty game, the sole difference Acceleration pointed to was that in CoD connections are formed by pre-game player activities, whereas in Grand Theft Auto Online they are formed by in-game player activities. (D.I. 735, p. 13). As Dr. Wicker explains, the Court's recent legal rulings on player activities also should dispose of Acceleration's infringement claims against the other two accused game titles. (*See* Ex. A, pp. 7-10). Now that the Court has resolved that recently arising issue against Acceleration, it is important that Dr. Wicker be allowed to provide to specifically address this issue as to all accused game titles to aid the jury in deciding this potentially dispositive point.

### III.     Conclusion

Because Dr. Wicker's proposed supplement non-infringement opinions would help the jury on a newly decided and potentially dispositive issue, and because Dr. Wicker's ten-page proposed supplement would not unfairly prejudice Acceleration, Activision respectfully requests leave for Dr. Wicker to provide the proposed supplement attached as Exhibit A.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

OF COUNSEL:

B. Trent Webb
Aaron E. Hankel
John Garretson
Jordan T. Bergsten
Maxwell C. McGraw
SHOOK HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, MO  64108
(816) 474-6550

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendant*

October 30, 2023

7

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 30, 2023, upon the following in the manner indicated:

| | |
|---|---|
| Philip A. Rovner, Esquire<br>Jonathan A. Choa, Esquire<br>POTTER ANDERSON & CORROON LLP<br>1313 North Market Street, 6th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Paul J. Andre, Esquire<br>Lisa Kobialka, Esquire<br>James R. Hannah, Esquire<br>Hannah Lee, Esquire<br>Michael H. Lee, Esquire<br>KRAMER LEVIN NAFTALIS & FRANKEL LLP<br>333 Twin Dolphin Drive, Suite 700<br>Redwood Shores, CA  94065<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Aaron M. Frankel, Esquire<br>Marcus A. Colucci, Esquire<br>Cristina Martinez, Esquire<br>Shannon H. Hedvat, Esquire<br>KRAMER LEVIN NAFTALIS & FRANKEL LLP<br>1177 Avenue of the Americas<br>New York, NY  10036<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

/s/ *Jack B. Blumenfeld*

_____
Jack B. Blumenfeld (#1014)