IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACCELERATION BAY LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. 16-453 (WCB) |
| v. ) | |
| ) | **PUBLIC VERSION** |
| ACTIVISION BLIZZARD, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**ACCELERATION BAY LLC'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO SUPPLEMENT NON-INFRINGEMENT EXPERT REPORT**

OF COUNSEL:

Paul J. Andre
Lisa Kobialka
James Hannah
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
333 Twin Dolphin Dr., Suite 700
Redwood Shores, CA 94065
(650) 752-1700

Aaron M. Frankel
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9100

Dated: November 13, 2023
Public version dated: November 16, 2023

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Plaintiff*
*Acceleration Bay LLC*

## INTRODUCTION

The Court should deny Defendant Activision Blizzard, Inc.'s ("Activision") motion to supplement its non-infringement expert report with new theories that are unrelated to the Court's Supplemental Claim Construction Order (D.I. 788). The Supplemental Claim Construction Order does not introduce any new claim constructions. Instead, the Order confirms Judge Andrews' prior construction of the "m-regular" terms. *Id.* at 4 (citing *Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*, No. 16-455, D.I. No. 492 at 15 (D. Del. Mar. 23, 2020) (the "*Take-Two Order*")).

Activision's motion seeks to use the Supplemental Claim Construction Order as a pretext to add untimely new factual allegations, but Activision does not rely on any change in the controlling claim construction that would necessitate a supplementation of Activision's non-infringement theories. Rather, Activision seeks to reopen expert discovery and bolster its non-infringement case with new expert opinions, long after the close of expert discovery. Indeed, while the Supplemental Claim Construction Order was limited to the impact of ***pre-game*** player actions, Activision's proposed supplementation for two of the three games is about ***in-game*** player action. Activision does not even attempt to link these belated new theories and alleged facts to the Supplemental Claim Construction Order. For the third game, Activision's proposed supplementation says nothing new about claim construction and just seeks to add new factual arguments to bolster the same arguments its experts previously advanced.

Activision's motion violates the parties' stipulation that Activision's substitute expert, Dr. Wicker, would not offer any new theories. Moreover, Activision's argument that there is no prejudice if it is allowed to supplement with trial set for April 2024 cannot be reconciled with

Activision's vehement opposition to expert supplementation by Acceleration Bay eight months ago on grounds of prejudice.

Thus, Activision's motion should be denied. To the extent Activision is permitted to supplement the expert record at this late stage, Acceleration Bay should be permitted to serve a short supplemental expert report on damages to address the Court's order on apportionment.

## BACKGROUND

Trial is set for April 29, 2024. D.I. 774. This date is six months after the trial date the Court originally proposed (October 30, 2023), and was selected as an accommodation due to the availability of Activision's counsel. D.I. 769 (3/20/23 Hearing Tr.) at 42:12-49:12. In connection with the case management process that set this trial date, Activision opposed any supplementation of the expert record by Acceleration Bay, including as to recent damages developments and the Court's Order on apportionment. D.I. 748 at 10 (Activision arguing Acceleration Bay should not be permitted to supplement its damages expert opinions and stating "enough is enough"); D.I. 752 at 9 (Activision arguing that permitting Acceleration Bay to supplement its damages case with new expert reports and depositions would be "highly prejudicial").

Activision served its non-infringement expert reports on November 13, 2017. D.I. 355. The *Take Two* Order issued on March 20, 2020. *Take-Two* Order, D.I. 492 at 1. Activision did not seek to supplement its non-infringement expert report following the *Take-Two* Order. However, after the trial date was set, Activision requested, and Acceleration Bay agreed that Activision could substitute in a new non-infringement expert, on the condition that the new expert would not offer any new positions. D.I. 777 at 2 ("Activision's substitute expert ***shall not offer new opinions***, rely on new documents or exhibits, ***or provide supplemental reports*** without

agreement by the parties.") (emphasis added).  The Court so ordered the parties' stipulation.  D.I. 777.

Following the parties' stipulation, Activision sought permission from the Court to brief a claim construction issue and revisit the denial of summary judgment.  D.I. 778.  During the parties' meet and confer, Activision admitted that nothing had changed other than Activision's in-house and outside counsel.  D.I. 780 at 2.  The Court permitted the parties to submit briefing on the specific question of "whether there is a distinction, for purposes of determining whether a network is configured to maintain m-regularity, between actions taken by the player during the game and actions taken by the player before the game starts."  D.I. 781 at 5.

The Court issued the Supplemental Claim Construction Order on September 20, 2023.  D.I. 788.  The Court reconfirmed that Judge Andrews' prior construction of m-regular controlled.  *Id.* at 3-5.  The Court rejected Activision's argument that if players' pregame actions can impact the connections formed in the game network, the network cannot be m-regular.  *Id.* at 4.  Instead, the Court confirmed that it was the behavior of the network that controls:

> In view of Judge Andrews's order in *Take-Two* and the intrinsic record, it is clear that the operative distinction for purposes of determining m-regularity is not whether a player's actions were taken during the game or prior to the start of gameplay. Instead, **the operative question is how the network behaves when it falls out of an m-regular state**. If the network "responds by immediately trying to return to [an m-regular] configuration," then it is likely configured to maintain m-regularity.

*Id.* (emphasis added).

The Court did not change the prior claim construction, did not grant Activision's request for yet another round of summary judgment briefing, did not invite further submissions or supplementation, and did not request that the parties submit an implementing order (as none was needed).  D.I. 788.

Undeterred, Activision filed a request for the Court to enter a supplemental claim construction order adopting Activision's proposed modified construction of "m-regular" that the Court had already rejected. D.I. 789 at 2-3. Acceleration Bay opposed this request for the reasons set forth in the parties' joint submission. *Id.* at 2-4.

Less than an hour after the parties' joint submission on claim construction, Activision surprised Acceleration Bay by serving a purported supplemental report from its new non-infringement expert, Dr. Wicker. Activision had not conferred with Acceleration Bay before doing so and had not addressed the issue in the parties' joint submission on claim construction. *See generally id.* at 2-3. Acceleration Bay did not agree that Dr. Wicker could submit a supplemental report. Thus, Activision's service of a supplemental report violated the Court's Order and the parties' agreement, which required Acceleration Bay's consent before the service of any further supplemental expert reports. D.I. 777 at 2. After Acceleration Bay objected, Activision withdrew Dr. Wicker's supplemental report and filed this opposed motion for leave to amend.

## ARGUMENT

**I.   Activision's Proposed Supplemental Expert Report on Non-Infringement is Unwarranted Based on the Supplemental Claim Construction Order**

Activision's proposed supplemental non-infringement expert report is unwarranted because (i) the Supplemental Claim Construction Order did not change the construction of any claim term, and (ii) Dr. Wicker's proposed supplemental opinions are belated factual allegations untethered to the substance of the Supplemental Claim Construction Order.

**A.   The Supplemental Claim Construction Order Did Not Change the Prior Construction of the "M-Regular" Claim Terms**

The Supplemental Claim Construction Order upheld Judge Andrews' construction that Activision's experts addressed in their prior expert reports. Specifically, the Court reiterated the

prior construction of "m-regular" as "a state that the network is configured to maintain, where each participant is connected to exactly m neighbor participants." D.I. 788 at 1-2.

The Court already rejected Activision's request to read into the claims a negative requirement that if players' actions impact how connections are formed "then the network is not configured to maintain an m-regular state." D.I. 784 at 5. As Acceleration Bay argued in opposition to Activision's request, "neither Judge Andrews' prior orders nor anything in the intrinsic record *preclude* pre-game player actions from impacting how *particular connections* are formed, so long as the network itself is configured to form an m-regular network as a whole." D.I. 785 at 1, 4-8.

Activision mischaracterizes the Court's Supplemental Claim Construction Order as somehow rejecting Acceleration Bay's position. To the contrary, the Court agreed with Acceleration Bay and rejected Activision's proposed negative limitation. D.I. 788 at 5 ("[I]n Acceleration [Bay]'s view, 'Call of Duty is configured to create an m-regular network and does not depend on any specific pre-game actions to do so.' If Acceleration [Bay] is able to establish that proposition as a factual matter at trial, my disposition of the present claim construction dispute would not preclude a finding of infringement."). Thus, the prior construction has not changed.

Activision's reliance on the Court's finding that there is no distinction between player actions before or during the game for purposes of this limitation is a red herring. Acceleration Bay is not relying on such a distinction for purposes of infringement. D.I. 778 at 3-4. Acceleration Bay's infringement position as to Call of Duty is that the network is configured to form an m-regular network regardless of the player's pre-game and in-game actions. D.I. 785 at 5-6. Thus, there is nothing new for Activision's expert to respond to.

**B.     Activision's New Expert Opinions are Untethered to the Supplemental Claim Construction Order**

Activision's motion should be denied because Dr. Wicker's proposed supplemental opinions are not based on anything new in the Supplemental Claim Construction Order. The premise of Activision's motion is that the Supplemental Claim Construction Order said something new about the relevance of players' actions ***before the start of the game***. Yet Dr. Wicker's supplemental opinions for the accused Destiny and World of Warcraft games are limited to "***in-game*** player activities." D.I. 790-1, Exhibit A, Wicker Rpt. at 7-10 (emphasis added).

For example, Dr. Wicker offers opinions regarding how "



." *Id.* at ¶¶ 26-27 (emphasis added). Dr. Wicker's new opinions regarding World of Warcraft are similarly directed to in-game player activity. *Id.* at ¶ 34 ("

.")) (emphasis added).

These supplemental opinions have nothing to do with any alleged pre-game player activities, which is the substance of the Supplemental Claim Construction Order. Rather, they are an improper attempt to provide new non-infringement opinions in violation of the parties' stipulation.

Even as to Call of Duty, Dr. Wicker does not provide a new explanation of any issues based on the Supplemental Claim Construction Order. Activision's prior technical experts argued that the Call of Duty network was not m-regular because its m-regularity

- 6 -

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████."); *id.* at ¶¶ 13-24 (Dr. Wicker citing opinions proffered by Activision's prior technical experts, Drs. Kelly and Macedonia). Dr. Wicker already adopted these opinions from Activision's prior experts. *Id.*

Dr. Wicker's purported supplementation says nothing new about claim construction—both Dr. Kelly and Dr. Macedonia previously argued the same theory that networks were not m-regular due to the pre-game player actions. *Id.* Instead, Dr. Wicker provides new ***factual allegations*** about the specifics of how the Call of Duty networks are configured in relation to the players NAT settings. *Id.* There is no reason Activision's prior experts could not have made these factual allegations when they gave their non-infringement opinions based on the exact same theory Dr. Wicker is offering. Thus, the claim construction and legal issues are the same, and Dr. Wicker's proposed supplementation is an attempt to offer untimely factual allegations rather than address any new claim construction issue.

Dr. Wicker also relies on an "Interview of Pat Griffith," an Activision fact witness, as further purported new evidence. *Id.* at ¶ 17. Acceleration Bay has not had an opportunity to test the allegations through fact discovery and Activision should not be permitted to inject them into the case at this late stage.

**II.     The *Pennypack* Factors Support Denial of Activision's Request For Leave**

As explained above, Activision's proposed supplemental non-infringement expert report is improper because it is not based on any change in claim construction in the Supplemental Claim Construction Order, which is the only possible basis for Activision's untimely request, and violates

the parties' stipulation that Activision's substitute expert would not offer any new opinions. This alone is a basis for the Court to exercise its discretion to deny Activision's motion. *St. Clair Intell. Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*, No. CA 04-1436-LPS, 2012 WL 1015993, at *8 (D. Del. Mar. 26, 2012), *aff'd*, 522 F. App'x 915 (Fed. Cir. 2013) (denying motion to supplement expert report with new infringement theories based on application of the *Pennypack* factors where claim construction ruling came after parties exchanged opening expert reports and party made tactical decision not to include infringement theories on the disputed claim term).

Activision's analysis of the *Pennypack* factors attempts to side-step this fundamental flaw by presuming that the supplemental report is proper, which it is not. However, when viewed in the proper context–namely, that this case is meant to be trial ready without further expert discovery and that Activision's proposed supplementation is not tied to anything new in the Supplemental Claim Construction Order and is, in reality, an attempt to supplement the record long after it closed—the *Pennypack* factors weigh heavily against permitting Activision's request for leave to supplement.

The fact that the Supplemental Claim Construction Order did not change the operative claim construction in this case negates Activision's arguments regarding prejudice, surprise, good faith and importance (*Pennypack* factors 1, 4 and 5). D.I. 790 at 5-6. In particular, Activision asserts that there is "no way" it could have addressed the Court's Supplemental Claim Construction ruling when it served its expert reports in 2018. *Id.* at 5. But Activision did exactly that.

Regarding Call of Duty, Dr. Wicker explicitly cites the opinions proffered by Activision's prior experts, Drs. Kelly and Dr. Macedonia, that rely on the same theory that the networks were not m-regular due to players' pre-game actions. D.I. 790-1, Exhibit A, Wicker Rpt. at ¶¶ 13-24. Dr. Wicker only offers new factual allegations about the specifics of how the Call of Duty networks

are configured and relies on a new interview of an Activision fact witness. *Id.* And Dr. Wicker's opinions regarding World of Warcraft and Destiny relate to players ***in-game*** actions, while the Supplemental Claim Construction Order addresses the impact of ***pre-game*** conduct on the existing claim construction. D.I. 788 at 4.

Thus, Activision's attempt to spring new expert opinions that are untethered to the Supplemental Claim Construction Order and premised on interviews with fact witnesses that Acceleration Bay was unable to depose is precisely the type of prejudice and surprise that warrants denial under *Pennypack*. For example, in *BearBox LLC v. Lancium LLC*, No. CV 21-534-GBW, 2022 WL 17403466, at *2 (D. Del. Nov. 23, 2022), the Court denied leave to supplement an expert report based on the Court's recent adoption of a proposed "plain and ordinary" meaning of the disputed terms because the parties "were equipped with [defendant's] proposed constructions six months prior to supplementing [the expert's] reports." Here too, there is nothing new that necessitates Activision's untimely request to inject new expert opinions at this late stage in the case.

Activision argues that the April trial date allows enough time to mitigate against unfair prejudice and disruption to the case schedule (*Pennypack* factors 2 and 3). D.I. 790 at 6-7. This, again, ignores the history of how the parties arrived at this juncture and Activision's prior efforts to block Acceleration Bay from submitting supplemental expert opinions. Specifically, eight months ago Activision strenuously opposed as "highly prejudicial" Acceleration Bay's request to supplement its damages expert report to address the Court's order on apportionment. D.I. 748 at 10 (arguing Acceleration Bay should not be permitted to supplement its damages expert opinions and stating "enough is enough"); D.I. 752 at 9 (arguing that permitting Acceleration Bay to supplement its damages case with new expert reports and depositions would be "highly

prejudicial"). *St. Clair Intell. Prop. Consultants, Inc.*, 2012 WL 1015993 at *8 (denying leave to supplement expert reports even when no trial date was set because supplementation would prejudice defendants with, *inter alia*, "additional time and money to refute [] new theories" and the cases would suffer "further delay and prolonged disruption" as a result of additional expert reports and discovery).

Activision should not now be heard to argue that there is plenty of time now to address supplemental expert reports before trial, but there was not enough time to do so eight months ago. Thus, Activision's motion should be denied. But to the extent Activision is permitted to add new supplemental expert opinions under the theory that there is still ample time before trial to do so, then Acceleration Bay should have an equal opportunity for its damages expert to provide a short (10 pages or less) supplemental opinion to address the Court's orders on apportionment.

## CONCLUSION

For the reasons set forth above, Activision's motion should be denied.

|  |  |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| Paul J. Andre<br>Lisa Kobialka<br>James Hannah<br>KRAMER LEVIN NAFTALIS<br>  & FRANKEL LLP<br>333 Twin Dolphin Dr., Suite 700<br>Redwood Shores, CA 94065<br>(650) 752-1700<br><br>Aaron M. Frankel<br>KRAMER LEVIN NAFTALIS<br>  & FRANKEL LLP<br>1177 Avenue of the Americas<br>New York, NY 10036<br>(212) 715-9100 | By: */s/ Philip A. Rovner*<br>    Philip A. Rovner (#3215)<br>    Jonathan A. Choa (#5319)<br>    Hercules Plaza<br>    P.O. Box 951<br>    Wilmington, DE  19899<br>    (302) 984-6000<br>    provner@potteranderson.com<br>    jchoa@potteranderson.com<br><br>*Attorneys for Plaintiff*<br>*Acceleration Bay LLC* |

Dated:  November 13, 2023
Public version dated: November 16, 2023

- 11 -