IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACCELERATION BAY LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 16-453 (WCB) |
| | ) |
| ACTIVISION BLIZZARD, INC., | ) |
| | ) |
| Defendant. | ) |

**ACTIVISION'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO SUPPLEMENT EXPERT REPORT TO ADDRESS NEW CLAIM CONSTRUCTION RULINGS**

Good cause supports Activision's proposed short supplemental expert report, which would help the jury implement the Court's recent Supplemental Claim Construction Order (D.I. 788). The rulings in that Order were not available and were not part of a live dispute when expert reports were served in 2017. At no time before 2021 did Acceleration raise the issue of pre-game player activities addressed in the Court's recent Order. Nor does Acceleration dispute Activision's position that "Acceleration's own experts did not specifically opine on the role of player activities on m-regularity in 2017." (Open. Br., pp. 6-7). Acceleration also does not distinguish or even address the cases cited by Activision allowing supplements under less compelling circumstances. *See, e.g., Mformation Techs., Inc. v. Rsch. in Motion Ltd.*, 08-04990, 2012 WL 13063633, at *1 (N.D. Cal. May 24, 2012) (allowing supplementation on the "eve of trial" after new constructions). Instead, Acceleration cites two inapplicable cases where the party seeking leave knowingly failed to address a proposed claim construction or an opposing expert opinion that was available before the original deadline for expert reports.

It would be highly prejudicial to prevent Activision from providing expert testimony explaining the effect of the Court's new rulings on claim scope, and there is no unfair prejudice to

Acceleration, which has yet to decide whether to request its own supplement on these issues in the ample time before trial.  The Court should grant leave to supplement.

Rather than address Activision's cases or the *Pennypack* factors that govern this dispute, Acceleration raises four unpersuasive arguments.

**First**, Acceleration argues that portions of Dr. Wicker's proposed supplemental opinions, as to the accused Destiny and World of Warcraft ("WoW") games, are not sufficiently focused on pre-game player activities.  But this is not a basis to exclude the entire supplement, and in any event Acceleration's argument reads the Court's Order too narrowly.  The Court, in dismissing Acceleration's artificial distinction between in-game and pre-game player activities, more broadly analyzed the relationship between pre-game player activities, in-game player activities, and the requirement for infringement that any time a network becomes not m-regular for any reason, it is "*immediately*" restored to m-regularity (D.I. 788, pp. 4-5).

Dr. Wicker's proposed supplement appropriately opines on this same relationship, using his technical expertise to connect the record evidence to the Court's new legal rulings for the benefit of the jury.  For Destiny, the very line Acceleration quotes from Dr. Wicker's supplement quotes and tracks the Court's reasoning in its recent Supplemental Claim Construction Order, explaining how in Destiny a "player's in-game actions" of "movement to a different public bubble" results in a non-infringing network "that Destiny does not '*immediately*' try to revert to regularity, as claimed." *See* Resp. Br., p. 6 (quoting Dr. Wicker's report) (emph. added).  For WoW, given the Court's reasoning Dr. Wicker points to the admissions of Acceleration's own experts and to existing record evidence on the key role of player activities on the formation of the accused networks.  Under the Court's recent reasoning, it is for Acceleration to prove how the WoW

networks allegedly "immediately" return these networks to m-regular when player activities make them not m-regular.[1]

**Second**, Acceleration argues that the Court's recent Order on claim construction resolved nothing and thus does not merit supplemental opinions, despite that this Court expressly identified "an unresolved claim construction dispute" (D.I. 781, p. 4), and that Acceleration hotly contested the issue (D.I. 784) and lost (D.I. 788). Acceleration was silent until 2021 on the issue of player actions affecting the network, then in 2021 Acceleration successfully argued the distinction between pre-game and in-game player activities was *the* reason Acceleration's infringement claims against CoD survive collateral estoppel (D.I. 735, p. 13; D.I. 743, p. 10). Indeed, in 2021 Acceleration admitted that in CoD "every participant attempts to connect to every other participant," and that "Call of Duty's Connectivity Graph Network is formed by Call of Duty software before the game starts, [and] ***does not change during the game*** (unless a player drops out….)." (D.I. 735, p. 13) (emph. added).

Now that the Court has rejected the distinction between pre-game and in-game player activities as a matter of law (D.I. 788, p. 4), Acceleration pivots again, and these ever-evolving infringement theories merit not only expert supplementation by Activision but also dismissal for lack of a genuine fact issue on infringement. Acceleration *now* claims it is not relying on the rejected distinction between pre-game and in-game player activities, but will show that the accused networks are "configured to form an m-regular network regardless of the player's pre-game and in-game actions." (Opp. Br., p. 5). But because Acceleration's experts did not opine on the effect of player activities on the accused networks, Acceleration has not disclosed (nor could it) any

---

[1] Acceleration also makes much of an Interview of Pat Griffith cited in two places in Dr. Wicker's proposed supplement. Mr. Griffith is expected to be a live trial witness who can speak to these same issues, and Acceleration has taken his deposition.

mechanism by which these accused networks might "immediately" return to m-regularity when player activities make them not m-regular. Given how Acceleration's arguments have evolved since 2017, and the increased importance of the role of player activities under the Court's Supplemental Claim Construction Order, Dr. Wicker should be allowed to provide the short proposed supplement. This supplement explains why Acceleration has not shown, and cannot show, that any "immediate" return to m-regularity occurs for any of the accused games when player activities routinely lead to a network that is not m-regular. Because no reasonable jury could find infringement under the Court's new rulings, the case should be dismissed altogether.

Despite all of the new arguments from Acceleration and new rulings from the Court since 2017, Acceleration would force Activision to go back to 2017 opinions based on ***different*** claim constructions and creatively retrofit them to the Court's recent rulings. But Acceleration cites no legal authority for this suggestion, which would be highly prejudicial to Activision and is unnecessary given the remaining months before trial and the upcoming deposition of Dr. Wicker (which Activision has agreed to reschedule until this motion has been resolved). The jury deserves to have the benefit of expert testimony addressing the recent rulings.

**Third**, Acceleration inexplicably tries to equate Activision's request for leave with Acceleration's unsuccessful request for leave to supplement its damages opinions after Acceleration failed on its "final opportunity" to proffer a submissible damages case. (D.I. 619, p. 2). This argument only highlights why Activision's motion for leave is proper. At the time of Acceleration's request for leave to supplement damages reports, the Court had already issued four separate orders excluding thirteen different Acceleration damages theories from two damages experts. (*See* D.I. 750, p. 2). The last seven of these excluded damages theories were offered after Judge Andrews warned Acceleration that this was its "final opportunity," and allowed

4

Acceleration to substitute a new damages expert and provide a damages proffer of unlimited pages (D.I. 619, p. 2; D.I. 692).  Activision's opposition to Acceleration's motion for leave to supplement damages reports after all of that was not based on a lack of time before trial to correct any prejudice, but on the extraordinary resources Activision and the Court had expended to that point in dealing with Acceleration's increasingly aggressive and unsupportable damages theories, and on the need for courts to make "final" chances truly final.[2]  Here, in sharp contrast, Activision's motion for leave falls squarely within the reasoning of several other courts in granting leave, where the court issues a new order defining claim scope in a way that neither party had requested at the time expert reports were due.

**Fourth**, while Acceleration ignores the cases cited by Activision, it cites two cases that only highlight how far this case comes from cases where the exclusion of important evidence is proper.  Acceleration cites *St. Clair Intell. Prop. Consultants, Inc. v. Matsushita Elec. Indus. Co.*, 04-1436, 2012 WL 1015993, at*8 (D. Del. Mar. 26, 2012), but there the moving party "chose to proceed under its sole infringement theory and not address alternative theories of infringement based on Defendants' proposed constructions."  Here, the claim construction rulings in the Court's recent Order were not proposed by either party when expert reports were due in 2017, and Acceleration did not even raise this issue until 2021, as explained above.  Further, in *St. Clair* the supplemental opinions were not actually excluded: the Court on summary judgment considered "expert declarations and new infringement theories" that the party seeking leave admitted were

---

[2]   In its Opposition, with no explanation, Acceleration argues that if Activision's motion is granted, Acceleration "should be permitted to serve a short supplemental expert report on damages" (Opp. at 2), as though that issue was somehow similar to this one.  Acceleration's request for a supplemental expert report on damages has been denied repeatedly after it missed its "final" chance.

"substantively the same" as in the proposed supplemental report. *Id*. at *7. Here Acceleration asks that Dr. Wicker's supplemental opinions be excluded altogether.

Acceleration also cites *BearBox LLC v. Lancium LLC*, 21-534, 2022 WL 17403466, at *2 (D. Del. Nov. 23, 2022), which is no more helpful to Acceleration. There, the expert's original opinion "acknowledged that he and [the opposing party's] expert disagreed on the plain and ordinary meaning of the disputed terms, yet failed to apply or analyze what [the opposing party's] expert considered to be the 'plain and ordinary meaning.'" *Id.* at *2 (internal cites omitted). Here, however, Acceleration does not deny that "Acceleration's own experts did not specifically opine on the role of player activities on m-regularity in 2017." (Open. Br., pp. 6-7). Further, in *BearBox* the three weeks between supplementation and trial meant the opposing party had "no meaningful opportunity to conduct rebuttal discovery, prepare a supplemental report, or prepare for an additional deposition." *Id.* at *3. Here, trial is over five months away, and a deposition of Dr. Wicker will later be scheduled at Acceleration's convenience. This case too only underscores why leave should be granted here.[3]

Finally, since Activision filed its opening brief, Acceleration requested that the previously scheduled deposition of Dr. Wicker be postponed until after the Court rules on this motion, and Activision agreed. Thus, Acceleration will have ample time to prepare additional questions for Dr. Wicker on the ten-page proposed supplement that Acceleration has already had for a month. Further, on the parties' meet-and-confer, Acceleration said that it will likely seek leave for its

---

[3] Acceleration is incorrect when it argues that Activision "violate[d] the parties' stipulation" by sending a copy of Dr. Wicker's proposed supplement to Acceleration Bay on September 20, 2023 (Resp. Br., p. 1). The portion of that stipulation relied on by Acceleration dealt with the opinion adoption process for August 24, 2023, not what could be done if a claim construction dispute later arose and was resolved. (D.I. 777, p. 2). In any event, that stipulation dealt with when a supplement could be "provide[d]," which is what the parties conferred on and are now briefing. (*Id.*).

experts to respond if Activision's motion is granted. But Acceleration declined to engage at that time on discussing a schedule for mutual supplementation, which would have saved weeks of time and obviated the need for this motion. All of this severely undercuts Acceleration's claims of prejudice. Acceleration has plenty of time to adjust to this Court's Supplemental Claim Construction Order, but has nothing to say that can create a genuine fact issue under those rulings. This is not *unfair* prejudice to Acceleration, but is instead a reason why this case should not proceed to a jury trial.

Activision respectfully requests leave for Dr. Wicker to provide the ten-page proposed supplement attached as Exhibit A to Activision's opening brief, for the benefit of the jury and to avoid unfair prejudice to Activision.

|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|---|---|
|  | */s/ Jack B. Blumenfeld* |
|  |  |
| OF COUNSEL: | Jack B. Blumenfeld (#1014) |
|  | Jeremy A. Tigan (#5239) |
| B. Trent Webb | Cameron P. Clark (#6647) |
| Aaron E. Hankel | 1201 North Market Street |
| John Garretson | P.O. Box 1347 |
| Jordan T. Bergsten | Wilmington, DE 19899 |
| Maxwell C. McGraw | (302) 658-9200 |
| SHOOK HARDY & BACON LLP | jblumenfeld@morrisnichols.com |
| 2555 Grand Boulevard | jtigan@morrisnichols.com |
| Kansas City, MO 64108 | cclark@morrisnichols.com |
| (816) 474-6550 |  |
|  | *Attorneys for Defendant* |
|  | *Activision Blizzard, Inc.* |

November 20, 2023

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on November 20, 2023, upon the following in the manner indicated:

| | |
|---|---|
| Philip A. Rovner, Esquire<br>Jonathan A. Choa, Esquire<br>POTTER ANDERSON & CORROON LLP<br>1313 North Market Street, 6th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Paul J. Andre, Esquire<br>Lisa Kobialka, Esquire<br>James R. Hannah, Esquire<br>Hannah Lee, Esquire<br>Michael H. Lee, Esquire<br>KRAMER LEVIN NAFTALIS & FRANKEL LLP<br>333 Twin Dolphin Drive, Suite 700<br>Redwood Shores, CA  94065<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Aaron M. Frankel, Esquire<br>Marcus A. Colucci, Esquire<br>Cristina Martinez, Esquire<br>Shannon H. Hedvat, Esquire<br>KRAMER LEVIN NAFTALIS & FRANKEL LLP<br>1177 Avenue of the Americas<br>New York, NY  10036<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

*/s/ Jack B. Blumenfeld*

_____
Jack B. Blumenfeld (#1014)