**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ACCELERATION BAY LLC, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 16-453-WCB |
| ACTIVISION BLIZZARD, | § § § | |
| *Defendant*. | § § § | |

**FINAL JURY INSTRUCTIONS**

**1.     Introduction.**

Ladies and gentlemen of the jury, you have heard all the evidence in this case. I will now instruct you on the law that you are to apply. Following my instructions, the lawyers for each side will make their final arguments to you. After that, you will retire to the jury room to begin your deliberations.

These instructions will be a little lengthy, and they may be somewhat difficult to follow at times. That is because the law in this case is complex. To help you, I have made copies of these instructions that you can use during your deliberations. I mention this so you won't feel that you have to take notes right now or try to memorize anything as I speak. In fact, I would suggest that you just listen to these instructions without trying to write anything down. If you miss something, you will be able to check the written copy of these instructions once you return to the jury room.

When you return to the jury room, your job will be to consider the evidence you have heard and to decide the case in light of the legal principles that I will explain now. You will record your

decisions on the various issues in the case by answering the questions on the verdict form that will be waiting for you in the jury room.

The decision you make is yours and yours alone. Please remember that nothing I say now or may have said, or any questions I may have asked during the trial, are intended to suggest or should be taken by you as suggesting what I think your verdict should be.

### 1.1. Burdens of Proof.

I am going to start by returning to the subject of the burden of proof, which we discussed briefly at the beginning of the case.

Acceleration Bay has the burden to prove that Activision infringes its asserted patents by a preponderance of the evidence. The preponderance of the evidence means that Acceleration Bay has the burden of persuading you that its assertion of infringement is more likely to be true than untrue.

If the evidence persuades you that Acceleration Bay's assertion is more likely to be true than untrue, that means Acceleration Bay has satisfied its burden. If that happens, you should find in favor of Acceleration Bay on the issue of infringement on that particular claim. If the evidence does not persuade you that Acceleration Bay's assertion is more likely to be true than untrue, that means Acceleration Bay has failed to satisfy its burden. If that happens, you should find in favor of Activision on the issue of infringement on that particular claim.

If you find that Acceleration Bay has proved that Activision has infringed Acceleration Bay's patent rights, you will need to decide how much money Acceleration Bay should be awarded. On that issue as well, Acceleration has the burden to establish the amount of any money to be awarded to Acceleration Bay.

### 1.2. Evidence in the Case; Credibility of Witnesses.

As the finders of fact, you are responsible for weighing the evidence in this case. That includes the testimony of the witnesses you have heard, the exhibits that have been introduced as evidence, and any facts that the parties have agreed are true. As a reminder, the lawyers' statements and characterizations of the evidence are not evidence. While the opening statements and closing arguments may have been helpful to you, your decision should ultimately depend on your evaluation of the evidence.

As part of your role as jurors, you are entitled to weigh the testimony of the witnesses. That's a job well suited for jurors like yourselves who have heard and seen the witnesses. For example, if two witnesses offer testimony that is in conflict, you should use your common sense in deciding whether the testimony can be reconciled, and, if not, which witness you think is more believable. You can consider, for example, each witness's motive, state of mind, knowledge, and manner while on the witness stand. If there is a question as to the relative expertise of two witnesses, you should again use your common sense to decide which witness you find more knowledgeable and more believable. The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were and how much weight you think their testimony deserves. You are entitled to give the testimony of each witness whatever weight you feel is appropriate. You may choose to believe or disbelieve any witness's testimony, either entirely or in part.

### 1.3. Expert Witnesses

Some of the witnesses have testified as expert witnesses because of their special knowledge in their relevant fields. The fact that a witness has testified as an expert does not mean that you must accept that witness's opinions as true. As with all other witnesses, it is up to you to decide whether you find the witness's testimony convincing.

**1.4.    Depositions – Use as Evidence.**

During the trial, some of the testimony was presented not through a live witness, but through a deposition. The deposition testimony that you heard at trial is entitled to the same consideration as any other evidence in the case, and you should judge its credibility and weight just the same as if the witness had been present and testified in person here in the courtroom.

**1.5.    Demonstratives.**

During the course of the trial, the lawyers and witnesses occasionally presented slides, charts, and animations that were not formally admitted into evidence. Those items are commonly referred to as demonstratives. They are not evidence and were intended only to aid in your understanding of the evidence in the case. It is the underlying testimony of the witnesses and the admitted trial exhibits that are the evidence in this case on which you should base your decisions.

**1.6.    The Parties' Contentions and Questions to Decide.**

Acceleration Bay alleges that Activision's Accused Products infringe the asserted claims of the asserted patents. Activision denies that it has infringed any claims of Acceleration Bay's patents.

I will now summarize the issues that you must decide. I will provide instructions on the issues to guide your deliberations.

First, you must decide whether Acceleration Bay has proved, by a preponderance of the evidence, that Activision has infringed either of the asserted claims of the asserted patents.

Second, if you find that Activision has infringed either asserted claim, you must decide what amount of money Activision should be required to pay Acceleration Bay to compensate Acceleration Bay for the infringement. The legal term for money that one party must pay to another because of a legal wrong is "money damages."

### 2. Patent Claims.

To decide what is covered by a patent, we look at the patent's claims, which are the numbered paragraphs at the end of the patent. The figures and text in the rest of the patent provide a description of the invention or context for the claims, but it is the claims that define what the patent covers. You will be called upon to decide whether Activision infringed two of the claims of Acceleration Bay's patents: claim 12 of the '344 patent and claim 1 of the '147 patent. Those claims are set out at the back of the printed version of my instructions, and they will be listed for you on the verdict form.

There are two types of claims at issue in this case. Claim 1 of the '147 patent is a method claim, meaning that it covers the steps of a process accused of infringement. Claim 12 of the '344 patent is a system claim, meaning that it covers the components of a system accused of infringement.

To find infringement, you must find that each of the requirements of a particular claim is present in the accused product. In patent law, the requirements of a claim are sometimes referred to as elements or limitations. Those terms all mean the same thing. A method claim is infringed if the accused infringer performs every step of the claimed method. A system claim is infringed if the accused product contains every element of the claimed system.

### 2.1. Dependent and Independent Claims.

As you have heard during the trial, an "independent claim" is a claim that sets forth all the requirements that must be met in order for something to be covered by that claim. A "dependent claim" is a claim that refers to an independent claim for some of its requirements. That is, a dependent claim incorporates all the requirements of the independent claim to which it refers and adds one or more additional requirements as well. Claim 1 of the '147 Patent is an independent claim. Claim 12 of the '344 Patent is a dependent claim, so when you consider asserted claim 12

5

of the '344 patent, you need to treat it as containing all the requirements of claim 1 and the additional requirement of claim 12.

Many of the terms used in the claims will be familiar to you, but others might not be. One term that is used a lot in patents, and is used in one of the asserted patents in this case, is the term "comprising." In the patent context, "comprising" means "including" or "containing." So if a claim states that an invention "comprises" a particular feature, that means that a product can infringe that claim if it contains that feature, even if it contains other features in addition to those claimed in the patent.

### 2.2. Claim Constructions

I have defined several of the other terms that are used in the claims. The chart at the end of these instructions sets forth the meanings of the words and groups of words from the patent claims as I defined them. You are to apply these definitions when considering what the claims cover. I will explain some of the more difficult definitions to you now.

The first term I have defined is "participant." A participant is a computer and/or computer process that participates in a network.

The second term I have defined is "neighbor." In this context, a participant's neighbor is another participant that has a connection to the first participant, with no other participants in between.

The third term I have defined is m-regular. M is just a placeholder for a number. An m-regular state refers to a state the network is configured to maintain, where each participant is connected to exactly m number of neighbor participants. For example, in a 3-regular network, each participant would be connected to three other participants.

An important part of being in an m-regular state is that the network is "configured to maintain" that state. To qualify as m-regular, the network must be in an m-regular state nearly all the time. Additionally, the network must be configured to maintain m-regularity for it to infringe the claim, meaning that the network itself, and not the players' actions, make it m-regular.

The fourth term I have defined is "broadcast channel." A broadcast channel is a communications network consisting of interconnected participants where each participant receives all data broadcasted on the communications network.

The fifth term I have defined is "connection port search message." A connection port search message is "a message sent to locate a participant with fewer than m neighbors."

I have defined several of the other terms that are used in the claims. A chart at the back of the written instructions sets forth the meanings of the words and groups of words from the patent claims as I have defined them. You are to apply those definitions when considering what the claims cover. Any terms that I have not defined should be given their ordinary meaning.

### 3.      Infringement

Acceleration Bay asserts that Activision has directly infringed Acceleration Bay's asserted patents. Activision is liable for directly infringing Acceleration Bay's asserted patents if you find that Acceleration Bay has proved that it is more likely than not that Activision made, used, offered to sell, or sold a product that was covered by at least one claim of Acceleration Bay's asserted patents.

A product directly infringes a claim if the product includes each and every element of that claim. You are to make a separate determination of direct infringement for each of the two asserted claims of the asserted patents. Direct infringement does not require proof that the accused infringer

intended to infringe the patent in question. Someone can directly infringe a patent without knowing that what they were doing constituted infringement.

### 3.1 Infringement of Claim 12 of the '344 Patent

Activision can be liable for direct infringement of claim 12 of the '344 patent if it uses the claimed network within the United States, even if some of the elements of an accused system are located abroad. Activision uses an accused system in the United States if it puts the invention into service by controlling the system as a whole and obtaining the benefit from its use in the United States.

### 3.2 Infringement of Claim 1 of the '147 Patent

Activision can be liable for direct infringement of claim 1 of the '147 patent, but only if Acceleration Bay proves that Activision performed each and every step of the claimed method in the United States.

Claim 1 of the '147 patent is referred to as a "method" claim because it is directed to a method—in this case, a method of disconnecting a first computer from a second computer. Activision asserts that it has not infringed that claim because it did not perform each step of the claimed method, and that others performed one or more of the steps necessary to infringe.

You may find that Activision infringes an asserted claim if you find: (1) that Activision performed all the steps of the method necessary to infringe; or (2) that the steps performed by other persons are attributable to Activision. You may find that the steps are attributable to Activision if you find that Activision exercised direction or control over the other persons when those persons performed those acts.

### 4. Money Damages.

If you find that either asserted claim is infringed, Acceleration Bay is entitled to money damages for that infringement, beginning no earlier than March 11, 2015, and ending upon the

expiration of each of the asserted patents.  The '344 patent expired on September 21, 2021 and the '147 patent expired on July 20, 2022.

If you find that neither of the asserted claims is infringed, then Acceleration Bay is not entitled to money damages, and you need not address damages in your deliberations.  I will now instruct you about the measure of damages.  By instructing you on damages, I am not suggesting which party should win this case, or which should prevail on any issue.

Any award of money damages must be adequate to compensate Acceleration Bay for the infringement.  An award of money damages is not meant to punish an infringer.  Your damages award, if you reach this issue, should put Acceleration Bay in approximately the same financial position it would have been in if the parties had agreed to license the patents at the appropriate time.

The amount you decide to award as money damages must be based on the value attributable to the infringing features of the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing, advertising, or the parties' size or market positions.  The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment.  When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, as distinguished from non-patented elements such as the graphics, marketing, gameplay or story.

Acceleration Bay has the burden to establish the amount of money damages to which it is entitled by a preponderance of the evidence.  In other words, you should award only those damages that Acceleration Bay establishes it is more likely than not to be entitled to.  While Acceleration Bay is not required to prove the amount of its damages with mathematical precision, it must prove

them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

### 4.1 Reasonable Royalty.

As a measure of damages, Acceleration Bay is seeking what is referred to as a reasonable royalty. A royalty is a payment made to a patent owner in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is defined as the amount of money that two parties who were willing to enter a license to use the patents would have agreed upon as a fee for the use of the inventions at the time just prior to when the alleged infringement began. That amount is considered to be an appropriate way to determine the value of a patented invention.

It does not matter if there were no actual negotiations for permission to use the claimed inventions. The question you must ask is, if there had been such a negotiation between parties willing to reach an agreement, what amount of money would the parties have agreed to as the price for allowing the use of the inventions.

This kind of imaginary negotiation is referred to as a hypothetical negotiation, as you have heard during the trial. In this case, the hypothetical negotiation would have occurred in September 2012, which is the date Activision's sales of the Accused Products began. The hypothetical negotiation at that time would have been between Boeing and Activision.

You should focus on what amount Boeing and Activision would have agreed to at the time the infringement began if both sides had been reasonably and voluntarily trying to reach an agreement. That is, the amount that a prudent licensee would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable to a patentee who was willing to grant a license.

In answering that question, you must assume that both parties would have believed the patent was valid and infringed and that both parties would have been willing to enter into such an agreement. The reasonable royalty you determine must be the royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. You are required to determine the proper amount of damages based on the evidence.

### 4.2    Factors To Consider in Determining a Reasonable Royalty.

You may consider evidence such as the following factors, in addition to any other evidence presented by the parties that would shed light on the economic value of the asserted patents:

1. The extent to which use has been made of the inventions and any evidence that shows the value of that use.
2. The opinion testimony of qualified experts.
3. The value of the invention to Activision as a generator of sales of its non-patented items.
4. The duration of the asserted patents and the term of the license.
5. The utility and benefits of the patented invention.
6. The anticipated commercial success of the accused products.
7. Any other economic factor that a normally prudent business person, under similar circumstances, would take into consideration in negotiating the hypothetical license.

In determining the amount of a reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Damages are not to be based on a hindsight evaluation of what happened, but on what would have been agreed to at the time of the hypothetical negotiation. However, you may consider information the parties would have anticipated or foreseen during the hypothetical negotiation. In so doing, you can consider what

happened after the date of the hypothetical negotiation, but only to the limited extent that it sheds light on the core question of what the parties would have anticipated. No one factor is dispositive, and you can and should consider all the evidence that has been presented to you in this case that would have increased or decreased the royalty the parties would have agreed upon, acting as normally prudent businesspeople.

### 4.3   Reasonable Royalty – Use of Comparable License Agreements.

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the asserted patents, or for comparable rights to similar technologies. A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between the parties to a hypothetical negotiation in order for you to consider it. But if a license is not sufficiently comparable to provide a reliable indicator of the amount that the parties would agree to, you should not consider it.

### 5. Jury Deliberations

#### 5.1 Election of a Foreperson.

Before sending you to begin your deliberations, I first need to appoint a foreperson. As juror number 1, Ms. Ross, you will be designated the foreperson of the jury. You will be responsible for communicating with the court as needed.

#### 5.2 Verdict – Unanimous – Duty to Deliberate.

Your verdict on each issue must be unanimous. There will be a verdict form in the jury room waiting for you when you retire for your deliberations. You will note that the verdict form has a series of questions to be answered during the course of your deliberations. The questions on the form correspond to the jury instructions that I have just given you. When you reach a unanimous verdict as to each question on the verdict form, the foreperson is to fill in the answers on the verdict form, and then sign and date the verdict form.

Please make sure to read the questions carefully, and note that some of the questions may not require answers, depending on how you answer other questions.

Do not reveal your answers to any of the questions to anyone outside of the jury until you finish your deliberations and return to the courtroom to deliver your verdict. If there is a divided vote on any of the issues at some point during your deliberations, you should not reveal how the vote is divided on any issue, even to me. It frequently happens that there is disagreement among jurors when they begin deliberating. But part of your responsibility as jurors is to continue to deliberate in order to attempt to reach a unanimous verdict on each of the questions you are being asked to answer. In the course of respectful discussion among the jurors, it almost always happens that the jurors can reach a unanimous verdict, even if they are divided at the outset.

When you return to the courtroom to announce your verdict, please bring the completed verdict form with you. You will give the completed and signed verdict form to the court security

officer, who will give it to me.  I will then examine the verdict form to be sure everything it filled out that needs to be filled out, and I will read the verdict aloud.

At that point, I may do what is called "polling the jury," which means asking each of you if the verdict I just read is your verdict.  That is not because there is a problem or because I am skeptical of what you have reported. It is just a standard procedure to ensure that each juror agrees to the verdict. I will then ask you to return to the jury room where you can gather your things. I will then come to the jury room to thank you for your service and to discharge you.

### 5.3   Outside Communication.

During your deliberations you must not communicate with or obtain any information relating to this case from any source other than your fellow jurors.  This means that you may not consult any outside sources, such as the Internet, during your deliberations.  Of course, you can have contact with the court security officer or other court staff as necessary to deal with any needs you may have, but you should not discuss the case itself with anyone outside the jury.

### 5.4   Jury's Responsibility.

I expect that when you get to the jury room to begin your deliberations, you may feel a little overwhelmed.  That is not uncommon.  This has been a complicated case, and there will be a lot of evidence and argument to think about.  But I think you will be pleasantly surprised that as you start working methodically through the case, things will begin to seem more manageable.

I hope and expect that you will listen to one another's views respectfully, even if initially you disagree on some issues.  Discussing the issues from different perspectives can often help in formulating your own ideas about how particular issues should be decided.

### 5.5   Communications Between Court and Jury During Deliberations.

If you wish to see any of the exhibits, you are free to see them.  All you need to do is have your foreperson sign a note asking for the exhibit and provide that note to the court security officer

who is taking care of you during your deliberations. You can ask to see all the exhibits or you can just ask for some of them, if you like. Just let us know what you want, and we will get those exhibits for you.

If you have a question or otherwise want to communicate with me at any time, please follow the same procedure by providing a written message or question to the court security officer, who will then bring it to me. You probably will not get a reply right away, as I will usually need to summon all the lawyers and get their input before I can respond to the question. That just means I usually cannot get back to you right away, but we will do our best to get you an answer to your question as soon as we can.

If you do have a question that is hanging you up, you are entitled to ask. I have to tell you, however, that once the case is submitted to you, as it will be in a moment, we will not be able to take any additional evidence, and I may just have to tell you to rely on your collective recollection of what the evidence was and tell you that you have to decide the case based on the evidence you have heard. I think you will find in most instances, if you put your heads together, you will recall the evidence that you need to get over the problem. That's one of the reasons there are seven of you. Seven memories are better than one.

Finally, and most importantly, trust your common sense throughout. One of the strongest traditions of our justice system is the confidence we place in the sound common sense of an American jury. The parties in this case have confidence in you. And so do I. You may now retire for your deliberations.

# APPENDIX

# CLAIMS AT ISSUE

### U.S. Patent No. 6,701,344 – Dependent Claim 12

1.    A computer network for providing a game environment for a plurality of participants, each participant having connections to at least three neighbor participants, wherein an originating participant sends data to the other participants by sending the data through each of its connections to its neighbor participants and wherein each participant sends data that it receives from a neighbor participant to its other neighbor participants, further wherein the network is m-regular, where m is the exact number of neighbor participants of each participant and further wherein the number of participants is at least two greater than m thus resulting in a non-complete graph.

12.    The computer network of claim 1 wherein the interconnections of participants form a broadcast channel for a game of interest.

### U.S. Patent No. 6,732,147 – Independent Claim 1

1.    A method of disconnecting a first computer from a second computer, the first computer and the second computer being connected to a broadcast channel, said broadcast channel forming an m-regular graph where m is at least 3, the method comprising:

when the first computer decides to disconnect from the second computer, the first computer sends a disconnect message to the second computer, said disconnect message including a list of neighbors of the first computer; and

when the second computer receives the disconnect message from the first computer, the second computer broadcasts a connection port search message on the broadcast channel to find a third computer to which it can connect in order to maintain an m-regular graph, said third computer being one of the neighbors on said list of neighbors.

**CHART OF MEANINGS OF CLAIM TERMS**

| Term | Definition |
|---|---|
| "m-regular" <br><br> "m-regular network" | For the '344 patent: "a state that the network is configured to maintain, where each participant is connected to exactly m neighbor participants" <br><br> For the '147 patent: "a state that the network is configured to maintain, where each computer is connected to exactly m neighbor computers. <br><br> To qualify as m-regular, the network must be in an m-regular state nearly all the time. Additionally, the network must be configured to maintain m-regularity for it to infringe the claim, meaning that the network itself, and not the players' actions, make it m-regular. |
| "connection" | For the '344 patent: <br><br> "connection between two participants, with no other participants in between, through which data can be sent and received" <br><br> For the '147 patent: <br><br> "connection between two computers, with no other computers in between, through which data can be sent and received" |
| "computer network" ('344 patent only) | "group of connected computers or group of connected computer processes" |
| "wherein an originating participant sends data to the other participants by sending the data through each of its connections to its neighbor participants" ('344 patent only) | "data is sent from an originating participant to the other participants by broadcasting data through each of its connections to its neighbor participants" |
| "wherein each participant sends data that it receives from a neighbor participant to its other neighbor participants" ('344 patent only) | "each participant receives data from a neighboring participant and rebroadcasts the received data to its other neighbor participants" |

| Term | Definition |
|---|---|
| [1] "neighbor"; [2] "neighbors"; [3] "neighboring" | For the '344 patent: [1] "a neighbor of a participant is another participant that has a connection to the first participant, with no other participants in between" [2] "the neighbors of a participant are additional participants that each have a connection to the first participant, with no other participants in between the first participant and each additional participant" [3] "being a neighbor of" For the '147 patent: [1] "a neighbor of a computer is another computer that has a connection to the first computer, with no other computers in between" [2] "the neighbors of a computer are additional computers that each have a connection to the first computer, with no other computers in between the first computer and each additional computer" [3] "being a neighbor of |
| "broadcast channel(s)" | For the '344 patent: "communications network consisting of interconnected participants where each participant receives all data broadcasted on that communications network" For the '147 patent: "communications network consisting of interconnected computers where each computer receives all data broadcasted on the communications network" |
| "in order to maintain an m-regular graph" ('147 Patent only) | "in order to maintain the broadcast channel as m-regular following the disconnection" |
| "thus resulting in a non-complete graph" ('344 Patent only) | "thus the graph is configured to maintain a non-complete state" |
| "connection port search message" | "A message sent to locate a computer with fewer than m neighbors" |

| "computer" | "a device capable of processing information to produce a desired result" |
|---|---|
| "participant" or "participants" | "a computer and/or computer process that participates in a network" |

## GLOSSARY OF PATENT-RELATED TERMS

Some of the terms in this glossary are defined in more detail in the legal instructions you are given.

**Abstract**: A brief summary of the technical disclosure in a patent to enable the U.S. Patent and Trademark Office and the public to determine quickly the nature and gist of the technical disclosure in the patent.

**Claim**: Each claim of a patent is a concise, formal definition of an invention and appears at the end of the specification in a separately numbered paragraph. In concept, a patent claim marks the boundaries of the patent in the same way that a legal description in a deed specifies the boundaries of land, i.e., similar to a landowner who can prevent others from trespassing on the bounded property, the inventor can prevent others from using what is claimed. Claims may be independent or dependent. An independent claim stands alone. A dependent claim does not stand alone and refers to one or more other claims. A dependent claim incorporates whatever the other referenced claim or claims say.

**Drawings**: The drawings are visual representations of the claimed invention contained in a patent application and issued patent, and usually include several figures illustrating various aspects of the claimed invention.

**Elements**: The required parts of a patent claim, sometimes referred to as "limitations" or "requirements." A device infringes a patent if it contains each and every requirement of a patent claim.

**Embodiment**: A product that contains the claimed invention.

**Examination**: Procedure before the U.S. Patent and Trademark Office whereby an Examiner reviews the filed patent application to determine if the claimed invention is patentable.

**Filing Date**: Date that a patent application, with all the required sections, has been submitted to the U.S. Patent and Trademark Office.

**Infringement**: Violation of a patent occurring when someone makes, uses, or sells a patented invention, without permission of the patent holder, within the United States during the term of the patent.  Infringement may be direct, by inducement, or contributory, as described to you in the final instructions.

**License**: Permission to make, use, or sell a patented invention, which may be granted by a patent owner (or a prior licensee) in exchange for a fee called a "royalty" or other compensation.

**Limitation**: A required part of an invention set forth in a patent claim. A limitation is a requirement of the invention. The word "limitation" is often used interchangeably with the words "requirement" or "element." The phrase "claim limitation" is often used interchangeably with the phrase "claim element."

**Patent**: A patent is an exclusive right granted by the U.S. Patent and Trademark Office to an inventor to prevent others from making, using, or selling an invention for a term of 20 years from the date the patent application was filed. The patent has three parts, which are a specification, drawings and claims. The patent is granted after examination by the U.S. Patent and Trademark Office of a patent application filed by the inventor which has these parts, and this examination is called the prosecution history.

**Patent Application**: The initial papers filed in the United States Patent and Trademark Office (Patent Office or PTO) by an applicant. These typically include a specification, drawings and the oath (Declaration) of applicant.

**Patent Examiners**: Persons employed by the Patent Office having expertise in various technical areas who review (examine) patent applications to determine whether the claims of a patent application are patentable and the disclosure adequately describes the Invention.

**United States Patent and Trademark Office (USPTO, or PTO, or Patent Office)**: An administrative branch of the U.S. Department of Commerce that is charged with overseeing and implementing the federal laws of patents and trademarks. It is responsible for examining all patent applications and issuing all patents in the United States.

**Requirement**: A required part or step of an invention set forth in a patent claim. The word "requirement" is often used interchangeably with the word "limitation" or "element."

**Royalty**: A royalty is a payment made to the owner of a patent by a non-owner in exchange for rights to make, use, or sell the claimed invention.

**Specification**: The specification is a required part of a patent application and an issued patent. It includes a written description of the invention and the process of making and using it, together with the claims of the patent.